**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOGGY BOTTOM ASSOCIATION,     ) | |
|         ) | |
|       Plaintiff,     ) | |
|         ) | |
|       vs.     ) | |
|         )   Court No. 06 Civ. 0746 (RJL) | |
| DISTRICT OF COLUMBIA OFFICE OF   ) | |
| PLANNING, *et al.*,     ) | |
|         ) | |
|       Defendants.     ) | |
|         ) | |

## AFFIDAVIT OF JOY HOWELL

I, Joy Howell, declare as follows:

1.       I am the President of the Foggy Bottom Association ("FBA").  I am submitting this affidavit on behalf of the FBA in support of its motion for a preliminary injunction. On February 16, 2006, the George Washington University ("GW") submitted "an application to the District of Columbia Zoning Commission for first stage review and approval of a planned unit development and zoning map amendment for the Foggy Bottom Campus" and "the Foggy Bottom Campus Plan:  2006-2025."  (hereinafter referred to as "application and new campus plan").  The FBA strongly opposes GW's application and new campus plan.

2.       The FBA is a homeowner's and tenant's association comprised of owners and renters of residential property in the Washington, D.C. neighborhood known as "Foggy Bottom."  Foggy Bottom is south of the District's Washington Circle, bounded by 19th Street, E Street, Rock Creek Park, and N Street, N.W.  Foggy Bottom is largely subject to R-3, R-5-D, and R-5-E zoning applicable to low/medium density residential areas.

3.     Over the past two decades, GW has expanded its presence in Foggy Bottom in an unprecedented scale.  GW's aggressive expansion in Foggy Bottom threatens to transform this neighborhood from a predominantly residential area to an extensively commercially zoned university campus.

4.     In a report dated April 21, 2000, the District of Columbia Office of Planning ("Office of Planning") found that "if the University continues to purchase land outside the campus plan boundaries and the number of students living in the small, constrained Foggy Bottom community continues to increase, the residential community will reach a 'tipping point' where the Foggy Bottom community simply transforms into a 'University area.' "

5.     Similarly, in its January 23, 2002 Corrected Final Order On Remand, the District of Columbia Board of Zoning Adjustment ("BZA") found that GW's "aggressive expansion into Foggy Bottom and the West End area has brought those neighborhoods to the 'tipping point,' if not beyond.  Large swaths of Foggy Bottom / West End have effectively been transformed into an expanded campus at the expense of the prior variety of uses."

6.     In the administrative proceeding pertaining to GW's 2000-2010 campus plan, the BZA credited the testimony of Foggy Bottom residents that undergraduate students residing in Foggy Bottom conducted themselves in a boisterous manner and disturbed the residential character of the neighborhood.

7.     Specifically, the BZA found that the influx of GW students to certain Foggy Bottom residential buildings had made them "much noisier, seriously disturbing long-

term residents, many of whom are elderly," and that "the quality of life in [these buildings] has diminished as the student population has grown."

8.    The BZA further found that the presence of a large number of undergraduate students in off-campus dormitories in Foggy Bottom and excessive university expansion has subjected Foggy Bottom to population pressure, student malfeasance, and resident displacement, which collectively have a deleterious impact on this neighborhood.

9.    In hearings pertaining to GW's 2000-2010 campus plan, the Office of Planning and the Advisory Neighborhood Council both concluded that, "if the University failed to provide more on-campus housing for its undergraduates, *the [Foggy Bottom-West End] neighborhood would irreparably suffer.*" 831 A.2d 933. (emphasis added).

10.    The FBA strongly objects to GW's application and new campus plan, through which GW intends to significantly expand its presence in Foggy Bottom over the next 19 years. This expansion undermines the Comprehensive Plan, a detailed planning document proposed by the Mayor and enacted by the Council of the District of Columbia. Specifically, Ward 2 of the Comprehensive Plan identifies Foggy Bottom as an area suffering from diminishing housing stock as a result of the expanded presence of GW and its students in Foggy Bottom. 10 DCMR § 1327.1(b). The Comprehensive Plan notes the "negative effect" of student pressure on Foggy Bottom, associating the deterioration of this neighborhood with acceleration of GW's activities in the area, increased university generated traffic, and the recent influx of students residing in off-campus housing acquired by GW. 10 DCMR § 1358.1. Not only has GW failed to limit its unwanted expansion into Foggy Bottom, GW has repeatedly violated the District's zoning laws which it now seeks to change in order to convert six additional square blocks of Foggy

Bottom into a commercially zoned area housing GW's retail outlets, mixed use town center, high-rise office buildings, and new medical facilities.

11.     GW's application seeks to amend section 210.3 of the District of Columbia Municipal Regulations which was designed specifically to "prevent unreasonable campus expansion into improved low-density areas." 11 DCMR § 210.3.

12.     As more fully described below, the FBA requests the Court to issue a preliminary injunction prohibiting the District of Columbia Zoning Commission ("Zoning Commission") and the Office of Planning from considering or approving GW's application and new campus plan until the following have occurred:

(1) GW becomes compliant with Conditions 8 and 9(a)-(c) of the existing campus plan pursuant to the Board of Zoning Adjustment's Corrected Final Order On Remand dated January 23, 2002 and DC ST. § 6-641.09 empowering the FBA to seek injunctive relief for GW's violation of the zoning laws;

(2) GW submits "a plan for developing the campus as a whole" pursuant to 11 DCMR §§ 210.4 and 507.3; and

(3) the District of Columbia complies with DC ST. § 8-109.03 requiring the issuance of environmental impact statements ("EIS") at least 60 days prior to implementation of major actions.

13.     On January 23, 2002, the BZA issued its Corrected Final Order On Remand ("Final Order") imposing a number of conditions on GW's 2000-2010 campus plan. These conditions were based on the BZA's conclusion that GW's expansion into Foggy Bottom threatened the "livability and residential character" of this neighborhood. The conditions in the Final Order were sustained by the U.S. Court of Appeals for the District

of Columbia Circuit and the District of Columbia Court of Appeals. *George Washington Univ. v. District of Columbia*, 318 F.3d 203 (D.C. Cir. 2003); *George Washington Univ. v. District of Columbia Board of Zoning Adjustment*, 831 A.2d 921 (2003).

14.    Condition 9 of the Final Order required GW to provide on-campus housing (or non-Foggy Bottom beds) for 5,600 of its first 8,000 undergraduate students, plus one on-campus (or non-Foggy Bottom) bed for every full-time undergraduate student over 8,000. After August 31, 2006, the 5,600 beds were to be entirely located on campus. Final Order, Conditions 9(a)-(c). Condition 8 of the Final Order placed caps on student enrollment and the employment of faculty and staff at GW. Specifically, student enrollment was capped at 20,000 and the student full-time equivalent capped at 16,553. Headcounts for faculty and staff were capped at 2,236 and 10,293, respectively, and full-time faculty was not to exceed 1550. Final Order, Condition 8.

15.    The Final Order prohibited the issuance of special exceptions or permits to GW if it were not in compliance with Condition 9. Final Order, Condition 9(e). The Final Order further prohibited the granting of new special exceptions to GW unless it remained in substantial compliance with the order. Final Order, Condition 20.

16.    GW has been in violation of the Final Order for several years. According to GW's Office of Institutional Research, the GW office responsible for compiling statistics regarding student enrollment, GW's total student headcount was 20,355 for the Fall 2004 semester and 20,318 for the Fall 2005 semester. GW was thus in violation of Condition 8 during the Fall 2004 and Fall 2005 semesters because it enrolled between 318 and 335 students over the 20,000 cap set forth by the Final Order. GW's student headcount for Spring 2006 likely exceeds 20,000 in violation of Condition 8 of the Final Order.

17.    GW is also in violation of Condition 8 of the Final Order by employing 4,478 faculty (as of Fall 2005), when the Final Order capped GW's faculty headcount to 2,236. Significantly, GW continues to employ 2,242 faculty over the 2,236 cap set forth in the Final Order.

18.    Nor has GW been able to provide sufficient on-campus housing for its undergraduate students. Pursuant to Conditions 9(a)-(b) of the Final Order, GW was required to provide 5,600 on-campus (or non-Foggy Bottom) beds for its first 8,000 undergraduate students, plus one on-campus bed for every full-time undergraduate student over 8,000. According to GW's Office of Institutional Research, GW enrolled 9,590 full-time undergraduate students in the Fall 2005 semester. GW was thus obligated to provide at least 7,190 beds on campus (or outside of Foggy Bottom) for its full-time undergraduate students. However, according to GW's February 28, 2006 submission to the Zoning Commission, GW currently provides only 5,580 on-campus beds (and no non-Foggy Bottom beds) to its undergraduate students. This is well below the 7,190 minimum on-campus beds required by the Final Order.

19.    GW has similarly violated Conditions 9(a)-(b) of the Final Order from Fall 2002 through Fall 2004. According to GW's Office of Institutional Research, GW enrolled 8,883 full-time undergraduate students in the Fall 2002 semester, 9,206 in the Fall 2003 semester, and 9,687 in the Fall 2004 semester. GW was thus obligated to provide between 6,483 and 7,287 on campus (or non-Foggy Bottom) beds for its full-time undergraduate students during this period. GW has completely failed to provide the requisite number of on-campus beds since Fall 2002.

20.     Recognizing its failure, GW now requests the Zoning Commission to amend its Final Order by redefining what constitutes a "full-time undergraduate student" (through exclusion of three categories of students), by averaging the number of students between Fall and Spring semesters, and by combining the faculty and staff headcount so as to cure GW's continuous violations of the District's zoning laws. The Final Order, however, was not ambiguous. The student and faculty headcounts determined by GW's Office of Institutional Research unambiguously indicate that GW has been in violation of Conditions 8 and 9(a)-(b) of the Final Order for several years.

21.     Pursuant to Conditions 9(e) and 20 of the Final Order, GW's violations of Conditions 8, 9(a) and 9(b) of the Final Order should prohibit the Office of Planning and the Zoning Commission from granting new special exceptions or issuing new permits to GW to construct or occupy buildings for nonresidential use.

22.     Nonetheless, on April 10, 2006, the Office of Planning recommended approval of GW's February 16, 2006 application and new campus plan. The District of Columbia has ignored the FBA's demands to take remedial action in response to GW's violations of the zoning laws. *See* Letter Dated March 9, 2006 from William Bode to Ellen McCarthy. The FBA is therefore compelled to seek injunctive relief in this Court to end GW's continuous violations of the District's zoning laws because the District of Columbia agencies have failed to enforce their own regulations.

23.     The FBA's request for injunctive relief is pursuant to DC ST. § 6-641.09, which provides that in the event of a zoning violation, "any neighboring property owner or occupant who would be specially damaged by any such violation may, in addition to all other remedies provided by law, institute injunction, mandamus, or other appropriate

action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use, or to correct or abate such violation or to prevent the occupancy of such building, structure, or land." The FBA has suffered special damages arising from GW's violations of the zoning laws and the Final Order including, but not limited to, shortage of parking spaces, excessive population density, and increased pollution, noise, and traffic in Foggy Bottom.

24.    GW's application and new campus plan seek consolidated review and approval of significant zoning amendments and university use of 7,346,577 square feet of floor area-- compared to the 5,613,986 square feet approved in the existing Campus Plan--in Foggy Bottom for the next 19 years. They also specifically exclude Squares 54 and 80, which are to be "the subject of separate consolidated PUD and rezoning applications," even though these squares are within the official campus boundaries and contemplated sites for major construction. Indeed, Square 54 is to be converted to a mixed use town center containing 500,000 square feet of office space, 330,000 square feet of residential space, and 100,000 square feet of retail space. It confides reason how GW's application and new campus plan could purport to "present a plan for developing the campus as a whole" as required by 11 DCMR §§ 210.4 and 507.3 when they specifically exclude Squares 54 and 80.

25.    GW's application and new campus plan, if approved, would substantially alter the residential character of Foggy Bottom by:  (1) converting to university use nearly 1.74 million square feet of land, (2) proposing eighteen development sites, including the creation of a new cancer center on Square 39 and redevelopment of the 1482-space parking garage on Square 54, (3) creating an "I Street retail corridor to serve the Foggy

Bottom and West End neighborhoods," (4) rezoning five blocks of residential property bordered by the District's 23rd, I, G, and 20th Streets into high-density commercial land, (5) rezoning from C-3-C to C-4 a block on Pennsylvania Avenue admittedly resulting in increased height up to 130 feet, (6) erecting a building on 2425 L Street containing 28,000 square feet of office space and 200 luxury condominiums, and (7) intending to convert Squares 54 and 80 under separate rezoning applications, all of which are to take place in Foggy Bottom and remain in effect for the next 19 years.

26.    The FBA believes that GW's application and new campus plan seek university use of Foggy Bottom "likely to become objectionable to neighboring property because of noise, traffic, number of students, or other objectionable conditions" in contravention of 11 DCMR § 210.2.

27.    The FBA further believes that GW's application and new campus plan constitute major actions likely to have substantial negative impact upon the environment of Foggy Bottom by increasing beyond the tipping point population density, noise, traffic, pollution, and parking congestion.

28.    The FBA thus demands that the District of Columbia prepare or cause to be prepared an environmental impact statement, and to hold a public hearing thereon, prior to considering GW's application and new campus plan pursuant to the District of Columbia Environmental Policy Act, DC ST. § 8-109.03.

29.    From April 20 to April 24, 2006, I obtained the signatures of 29 FBA members– all of whom are "registered voters in an affected single member district" under the meaning of DC ST. § 8-109.03(b)—demanding a public hearing on the requisite

environmental impact statement relating to GW's February 16, 2006 application and new

campus plan.  These signatures are attached as Exhibit A to this affidavit.


      I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.


Dated:  April 24, 2006

                                      Joy Howell
                                      1050 Connecticut Avenue, NW, 10th Fl.
                                      Washington, DC 20036

## EXHIBIT A

We are members of the Foggy Bottom Association and "registered voters in an affected single member district" under the meaning of DC ST. § 8-109.03(b).  We hereby demand a public hearing on the requisite environmental impact statement relating to the George Washington University's February 16, 2006 rezoning application and new campus plan.

Signature:                                Printed Name:

1.    _[signature]_                        JOY HOWELL

2.    _[signature]_                        Elizabeth B. Elliott

3.    _[signature]_                        Michael Thomas

4.    _[signature]_                        DONALD W. KREUZER DMD

5.    _[signature]_                        Sarah Shapiro

6.    _[signature]_                        EDWARD B. GABLE, JR.

7.    _[signature]_                        RUSSELL S. Conlon

8.    _[signature]_                        Thalia W. Johnson

9. *[signature]* Douglas E. Hansen

10. *[signature]* Dorothy MILLER

11. *[signature]* ELEANOR M. BECKER

12. *[signature]* MARIA VONETES

13. *[signature]* RITA E. AID

14. *[signature]* HARRY AID

15. *[signature]* NORRENE VOGT

16. *[signature]* SANDRA VONETES

17. *[signature]* RONALD COCOME

18. *[signature]* Abby L. Gilbert

19. *[signature]* R. Virginia Rogers

20. *[signature]*     Marvin H. Segel

21. *[signature]*     MARILYN J. RUBIN

22. *[signature]* Henrietta H. O'Shea     HENRIETTA H. O'SHEA

23. *[signature]*     JOYCELYN C. VIGOR

24. *[signature]* Jessie Mackenzie     JESSIE MACKENZIE

25. *[signature]*     MARIJA HUGHES

26. *[signature]* Robert Vogt     ROBERT VOGT

27. *[signature]* Jacqueline G. Lemire     JACQUELINE G. LEMIRE

28. *[signature]*     Joseph Chaplick

29. *[signature]* Barbara Spillinger     Barbara Spillinger

30. _____     _____

31. _____     _____