UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                 )
FOGGY BOTTOM ASSOCIATION         )
                                 )
          Plaintiff,             )
                                 )
      v.                         )      Civil Action No. 06-746 (PLF)
                                 )
DISTRICT OF COLUMBIA OFFICE OF   )
      PLANNING, et al.,          )
                                 )
          Defendants.            )
_____ )
```

DEFENDANTS' MOTION TO DISMISS AND
<u>OPPOSITION TO PRELIMINARY INJUNCTION</u>

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 65, and LCvR 7 and 65.1, the defendants (collectively, "the District" or "the government"), by and through counsel, respectfully move to dismiss plaintiff's Complaint herein. The grounds and the reasons are set forth in the accompanying Memorandum of Points and Authorities, which also serves as the defendants' Opposition to plaintiff's Motion for a Preliminary Injunction. A proposed Order has also been provided.

DATE: May 19, 2006          Respectfully submitted,

                            ROBERT J. SPAGNOLETTI
                            Attorney General for the District of Columbia

                            GEORGE C. VALENTINE
                            Deputy Attorney General
                            Civil Litigation Division

                            _____/s/ Richard S. Love_____
                            RICHARD S. LOVE, D.C. Bar No. 340455
                            Chief, Equity I Section
                            Office of the Attorney General for the District of Columbia
                            441 Fourth Street, N.W., 6th Floor South

Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431

_____/s/ John D. Dodge_____
JOHN D. DODGE, D.C. Bar No. 451305
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6627
Facsimile: (202) 727-0431

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
FOGGY BOTTOM ASSOCIATION            )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    Civil Action No. 06-746 (PLF)
                                    )
DISTRICT OF COLUMBIA OFFICE OF      )
      PLANNING, et al.,             )
                                    )
            Defendants.             )
_____ )
```

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND
IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants herein, by and through undersigned counsel, hereby submit this

Memorandum of Points and Authorities in Support of their Motion to Dismiss and in Opposition

to Plaintiff's Motion for Preliminary Injunction, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6)

and 65, and LCvR 7 and 65.1.[1]

## I. <u>Introduction and Summary of Argument</u>

Plaintiff's allegations derive from a quintessentially local matter—zoning. As the District

will demonstrate below, the Complaint must be dismissed.

---

[1] Plaintiff has named as defendants in this case the following District of Columbia offices/agencies: Office of Planning ("DCOP"), Zoning Commission ("ZC"), Department of Health ("DOH"), Department of Consumer and Regulatory Affairs ("DCRA"), Historic Preservation Review Board ("HPRB"), and the District of Columbia Public Schools ("DCPS"). This Motion is brought on behalf of all defendants (collectively "the District").

One can scarcely think of a power exercised by government that is more local in nature than zoning. *See, e.g., Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 44 (1994) ("Regulation of land use [is] a function traditionally performed by local governments"); *FERC v. Mississippi*, 456 U.S. 742, 768 & n. 30 (1982) ("Regulation of land use is perhaps the quintessential state activity"); *Warth v. Seldin*, 442 U.S. 490, 508 & n. 18 ("[Z]oning laws and their provisions . . . are peculiarly within the province of state and local legislative authorities."); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting) ("I am in full agreement with the majority that zoning . . . may indeed be the most essential function performed by local government").

Plaintiff challenges the District's land-use regulation of George Washington University ("GWU"). The Court should dismiss the Complaint and deny plaintiff's request for emergency injunctive relief, because plaintiff lacks standing and its predominantly local claims are premature.[2]

Moreover, plaintiff's motion for preliminary injunction must be denied because it is defective as a matter of law; plaintiff does not provide any competent evidence of the "imminent, irreparable harm" necessary for the grant of emergency injunctive relief.

Plaintiff has utterly failed to meet its high burden for the extraordinary remedy demanded here; an injunction here will *not* preserve the *status quo*, but will seek to force the District to halt the regular administrative process at work—the process, incidentally, that will provide the review plaintiff apparently seeks.

---

[2]     While the District does not explicitly plead this defense, it is also clear that plaintiff has failed to name an indispensable party here—GWU itself. *See* Fed. R. Civ. P. 19.

Although this appears to be an extremely complex matter based on the volume of plaintiff's filings, this case is simple.

Apparently, the plaintiff is an association of residents of the Foggy Bottom area who want this Court to order the District of Columbia to take (or not take) various actions under local land-use law regarding GWU's future plans.

This is merely the latest chapter in a long-running dispute between the residents of the Foggy Bottom neighborhood and GWU. *See, e.g., Levy v. District of Columbia Bd. of Zoning Adjustment,* 570 A.2d 739, 742–43 (D.C. 1990) (challenge to GWU's 1985 campus plan, discussing neighborhood opposition dating at least to GWU's 1970 plan). The Court should reject this latest attempt to federalize a local land-use dispute. Plaintiff's claims should meet the same success as other District property holders who have tried to conflate run-of-the-mill land-use disputes into federal lawsuits. *See, e.g., JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004); *3883 Connecticut LLP v. District of Columbia*, 191 F. Supp. 2d 90, 95 (D.D.C. 2002), *aff'd*, 336 F.3d 1068 (D.C. Cir. 2003); *American Tower v. Williams*, 146 F. Supp. 2d 27, (D.D.C. 2001), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002). *See also Bannum, Inc. v. District of Columbia*, ___ F.Supp.2d ___, 2006 WL 832466 (D.D.C. Mar. 30, 2006); *Id.*, 2005 WL 1076179 (D.D.C. May 6, 2005).


## II. <u>Factual and Procedural Background</u>

Plaintiff asks the Court for emergency injunctive relief, preventing the District from considering or approving GWU's recent Planned Unit Development ("PUD") and campus plan applications, until (1) GWU "becomes compliant" with its current campus plan, (2) GWU

submits "a plan for developing the campus as a whole,"[3] and (3) an environmental impact statement ("EIS") is prepared regarding GWU's recent applications and a public hearing is held on that EIS. P.Mem. at 2.[4]

Additionally, in its Complaint, plaintiff alleges that the District's failure to enforce its zoning laws and regulations against GWU is an unconstitutional "taking" of plaintiff's members' property rights. Complaint ¶¶ 91–102. Plaintiff also alleges that the District violated (or will violate) the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470 *et seq.*, and local historic-preservation law, through its actions involving the "School Without Walls." Complaint ¶¶ 104–115. Plaintiff also alleges that the District is violating the D.C. Environmental Policy Act ("DCEPA"), D.C. Official Code § 8-109.01 *et seq.* (2005 Supp.). Complaint ¶¶ 126–134. Plaintiff also appears to allege a federal "private right of action to seek injunctive relief against [GWU] for its violations of [District] zoning laws" pursuant to a provision of local law, D.C. Official Code § 6-641.09 (2005 Supp.). Complaint ¶¶ 126–134.

By order dated January 23, 2002, the Board of Zoning Adjustment ("BZA") conditionally approved GWU's campus plan for the years 2000 through 2010. BZA Corrected Final Order on Remand, Application No. 16553F ("BZA Order") (copy provided as Plaintiff's Exhibit "PEx." C to Plaintiff's Motion for Preliminary Injunction). The BZA Order imposed a number of conditions on GWU.[5]

---

[3]    Specifically, plaintiff alleges that GWU's current applications do not comply with local law because they "specifically exclude significant development that is to occur . . . ." Complaint ¶¶ 136–138 (citing 11 DCMR §§ 210.4 and 507.3).

[4]    The District does not admit the allegations of the Complaint or the Motion for Preliminary Injunction except for the purposes of this motion.

[5]    For instance, the BZA Order requires GW to house at least 70% of its undergraduate students on campus by August 2006, plus one bed for each additional undergraduate

GWU sued the District, raising a number of constitutional and federal statutory challenges to the BZA Order. The courts (both local and federal) ultimately concluded that the BZA Order was not unconstitutional. *See George Washington Univ. v. District of Columbia*, 318 F.3d 203 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 824, (2003); *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment*, 831 A.2d 921 (D.C. 2003); *George Washington Univ. v. District of Columbia*, 391 F.Supp.2d 109 (D.D.C. Sep 16, 2005) (on remand).

On February 16, 2006, GWU submitted to defendant ZC for review and approval an application for a planned unit development ("PUD") on a portion of its property, and a proposed campus plan for 2006–2025. P.Mem. at 3. At its April 20, 2006, public meeting, the ZC "set down" GWU's PUD application for a public hearing. P.Mem. at 3.[6]

Defendant HPRB has scheduled a public hearing May 25, 2006, to consider applications to designate the Ulysses S. Grant School (a.k.a the "School Without Walls") as a historic landmark. 53 D.C. Reg. 3219 (Apr. 21, 2006).

---

over a base enrollment of 8,000. BZA Order Condition 9c. The BZA Order also prohibits the grant of any permits for construction or occupation of any buildings for non-residential use on campus while GW is not in compliance with the housing requirements of Condition 9c. BZA Order Condition 9e. The BZA Order also requires GWU to house all of its freshmen and sophomores on campus "to the extent such housing is available." BZA Order Condition 10. The BZA Order also set caps on student enrollment and faculty and staff size. BZA Order Condition 8.

[6]    Technically, the ZC only set down GWU's contemporaneous PUD application for a public hearing. 11 DCMR §§ 3011–13, 3022. Public hearings on campus plan applications are governed by the BZA rules of procedure, under which hearings are automatically scheduled. *Id.* at § 3113. *See, generally,* PEx. H (Apr. 10, 2006, memorandum from OP to ZC recommending public hearing). The date for the hearing on GWU's applications has not yet been set, but cannot be set less than 40 days from the date of publication of the ZC's decision in the D.C. Register. *See* 11 DCMR § 3014.1(a).

### III. <u>Argument</u>

Plaintiff's claims are based on an incorrect understanding of the law, and, even assuming the facts as alleged to be true, there is no imminent threat of irreparable harm, much less any current or imminent violation of District law. Plaintiff has submitted *no evidence whatever* of any alleged, imminent injury. Plaintiff's hopelessly muddled argument ignores decades of zoning law, and would turn the administrative process on its head, allowing dissatisfied neighbors to run into federal court any time they fear an unfavorable agency decision.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept the allegations in the complaint as true. *See, e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999). All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*. (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)); *see also Price v. Crestar Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).

However, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept the legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court also need not accept as true the Complaint's factual allegations insofar as they contradict "matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (public records are subject to judicial notice on a motion to dismiss) (citations omitted); *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624–25 (D.C. Cir. 1997). *See also*

Fed. R. Evid. 201(b)(2) (judicial notice may be taken of a fact that is "not subject to reasonable dispute" and is "generally known within the territorial jurisdiction of the trial court" or is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

The allegations in the Complaint fail as a matter of law. No factual development can resuscitate them. Plaintiff's allegations fail to state a claim on which relief may be granted, and are little more than a transparent attempt to influence the outcome of the District's administration of its land-use laws, a purely local matter. This Court should not exercise its jurisdiction as there are no colorable federal claims here.

**A. The Court Should Dismiss the Complaint.**

This Circuit, in a similar, local land-use matter, upheld the district court's dismissal of all claims below, except a claim for monetary damages, which was stayed pending resolution of the local proceedings. *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004).

Here, plaintiff requests *only* declaratory and injunctive relief, hence dismissal of the Complaint is mandated by *JMM*:

> The ongoing District of Columbia proceedings are judicial in nature and implicate important District interests; those proceedings afford [plaintiff] an adequate opportunity to litigate its federal claims; and there are no extraordinary circumstances warranting equitable relief. Accordingly, the criteria for application of the *Younger* doctrine have been satisfied, and the district court's dismissal of [plaintiff]'s complaint was appropriate.

*Id*. at 1128 (citing *Younger v. Harris*, 401 U.S. 37 (1971)).[7]

---

[7]    *See also Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996) (federal district court may dismiss federal claim under *Younger* where (1) there are ongoing local proceedings that are judicial in nature; (2) the local proceedings implicate important local interests; and (3) the proceedings afford an adequate opportunity in which to raise the federal claims).

Identically here, the ongoing local proceedings are judicial in nature and implicate important District interests in land-use regulation; the proceedings will afford property owners an adequate opportunity to litigate all of their claims.

In light of *JMM*, the Court should dismiss the Complaint. *See also American Tower v. Williams*, 146 F. Supp. 2d 27, 31 (D.D.C. 2001) ("Such a question is not one of constitutional import; it is a question of state law and its resolution is best left to the local courts."), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002).[8] *See also Bannum, Inc.*, 2005 WL 1076179 at *1 ("This Court cannot and will not cast aside these important rules of comity and federalism, and therefore declines plaintiff's invitation to insert itself into ongoing District of Columbia proceedings on issues of paradigmatically local concern.") (citing *Warth v. Seldin*, 422 U.S. 490, 508 (1975) (zoning laws and their application are "peculiarly within the province of state and local legislative authorities.")); *Id.*, ___ F.Supp.2d at ___, 2006 WL 832466 at *1 ("Granting the [emergency injunctive] relief sought would be squarely at odds with fundamental principles underlying this nation's system of federalism and also with statutory limitations on this Court's jurisdiction.") (citing *JMM* and *Younger*).

*The Court Should Not Exercise Jurisdiction.*

Plaintiff's primary claim—the one on which the remainder rest—is that GWU is not currently in compliance with local zoning law, and that the District should not approve proposed actions until GWU comes into compliance. Complaint ¶¶ 2–4. But that claim, even if ripe, is

---

[8]     This Court in *American Tower* dismissed plaintiff's federal claims "with prejudice" and dismissed plaintiff's local claims "without prejudice to their being refiled in a more appropriate forum . . . ." *American Tower*, 146 F. Supp. 2d at 36. The District avers that the identical outcome is warranted here.

insufficient, as a matter of law, for this Court to exercise jurisdiction here, even ignoring the clear mandate of *JMM*.

Given plaintiff's failure to state a constitutional claim, the Court should *not* exercise supplemental jurisdiction over the local-law claim, which is the basis of plaintiff's suit. *Barwood v. District of Columbia*, 202 F.3d 290, 296 (D.C. Cir. 2000) (a federal court abuses its discretion when it exercises supplemental jurisdiction over local-law claims which "substantially predominate" over federal claims); *Grano v. Barry*, 733 F.2d 164, 169 (D.C. Cir. 1984) (Circuit dissolved injunction; "the district court should not retain jurisdiction because this case directly implicates the processes by which a locality governs itself. Appellees' remedy, if any, lies in the courts of the District of Columbia."); *cf. Women Prisoners of the District of Columbia Dept. of Corrections v. District of Columbia*, 93 F.3d 910, 921 (D.C. Cir. 1996) (district court may consider local-law claims because federal claims "were substantial enough to confer subject matter jurisdiction on the court . . . ."), *cert. denied*, 520 U.S. 1196 (1997).

Plaintiff fails to state a federal claim, and even if it had, it is not substantial enough to confer subject matter jurisdiction on the Court, because it is derived wholly from its local law claims, which directly implicate the processes by which the District governs itself. *Grano*, 733 F.2d at 169. Moreover, if this Court should dismiss the federal claims, it should dismiss the local-law claims as well. *See, e.g., United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (footnote omitted).

**B. Defendants are Non *Sui-Juris*.**

Notwithstanding the above, all of the named defendants are public bodies within the government of the District of Columbia. Public bodies, however, have only such powers as are conferred on them by statute, and *none* of the defendants are authorized to sue or be sued in their own name.

The overwhelming weight of case law dictates that subordinate agencies within the District of Columbia government are not subject to suit. *Blackmar v. Guerre*, 342 U.S. 512 (1952); *Community Housing Trust v. Dept. of Consumer and Regulatory Affairs*, 257 F.Supp.2d 208 (D.D.C. 2003):

> The law is clear that "agencies and departments within the District of Columbia government are not suable as separate entities." *Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 222 (D.D.C. 2002) (quoting *Gales v. District of Columbia*, 47 F. Supp. 2d 43, 48 (D.D.C. 1999) (*in turn* citing *Fields v. District of Columbia Dep't of Corr.*, 789 F. Supp. 20, 22 (D.D.C. 1992)); *see also Arnold v. Moore*, 980 F. Supp. 28, 33 (D.D.C. 1997) ("governmental agencies of the District of Columbia are not suable entities") (citing *Roberson v. District of Columbia Bd. of Higher Educ.*, 359 A.2d 28, 31 n.4 (D.C. 1976); *Miller v. Spencer*, 330 A.2d 250, 251 n.1 (D.C. 1974)); *Jenkins v. District of Columbia*, 1996 U.S. App. LEXIS 34431, 1996 WL 440551, *1 n.2 (D.D.C. 1996). Accordingly, plaintiff's charges against the Department of Consumer and Regulatory Affairs, the Office of the Chief Financial Officer, and the Office of Tax and Revenue shall be dismissed.

*Id*. at 217 (footnote omitted). *See also Kundrat v. District of Columbia*, 106 F. Supp. 2d 1 (D.D.C. 2000) ("overwhelming weight of precedent" in this Circuit holds that, absent explicit statutory authority, agencies within the District government are not suable as separate entities); *Hinton v. Metropolitan Police Department*, 726 F. Supp. 875 (D.D.C. 1989).[9]

---

[9]     Although plaintiff alleges that almost all the defendants are "independent," Complaint ¶¶ 11–15, it has failed to cite (and cannot cite) any statutory provisions granting the authority it apparently assumes.

Consequently, because plaintiff failed to name the District of Columbia itself, the named defendants do not possess the legal authority to sue and be sued in their own name and plaintiff's claims against them must be dismissed.[10]

### C. Plaintiff Fails to Meet Any of the Elements Necessary for Emergency Injunctive Relief.

Notwithstanding the above, in order to obtain emergency injunctive relief, plaintiff must satisfy *each* prong of the following four-part test, by demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) less injury to the non-moving party than the moving party if an injunction is ordered; and (4) that a preliminary injunction is consistent with the public interest. *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (emergency injunctive relief "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.") (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs.*, 158 F.3d at 1318, a particularly weak showing on one factor may be more than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995).

---

[10]    To the extent plaintiff challenges the *final decisions* of District agencies, those challenges belong in the D.C. Court of Appeals ("DCCA"), which can hear all of plaintiff's purported constitutional claims. *See* D.C. Official Code §§ 2-510(a)(1), 11-722 (DCCA has jurisdiction over appeals from final agency decisions, and is empowered to interpret the Constitution).

Plaintiff's feared injuries are entirely speculative. Plaintiff's "evidence" does not show that it faces the *imminent* threat of *irreparable* harm, or that it satisfies the other standards necessary for the grant of emergency relief. An injunction would injure District residents, the administrative process, and the public interest, and therefore the balance of interests favors rejecting plaintiff's motion.

### 1. Plaintiff Fails to Establish A Substantial Likelihood of Success On the Merits.

#### a. Plaintiff Lacks Standing.

Plaintiff's feared injuries are too speculative to support standing. Plaintiff has asked for declaratory and injunctive relief, as it fears the District may approve GWU's proposed land-use actions. However, the District has not completed (in fact has barely begun) the administrative review process.

Moreover, plaintiff lacks standing because it has not demonstrated any concrete harm— the type of vague, "social interest" injuries alleged cannot satisfy Article III's "case or controversy" requirement. *Kurtz v. Baker*, 829 F.2d 1133, 1138 (D.C. Cir. 1987), *cert. denied*, 486 U.S. 1059 (1988). These alleged harms are insufficient because they are "the type of abstract concern that does not impart standing." *National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995).

To have standing, a plaintiff must allege a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972); *Field v. Brown*, 610 F.2d 981, 990 (D.C. Cir. 1980); s*ee also, Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) ("The Constitution requires a concrete and particularized injury.").

"Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (citations and internal quotation marks omitted); s*ee also Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (quoting *Babbitt v.Farm Workers*, 442 U.S. 289, 298 (1979)).

Here, plaintiff has not shown and cannot show any "certainly impending" injury, because the District has not completed its administrative review of either of GWU's pending applications or the application for historic designation for the School Without Walls. Consequently, plaintiff's assertion of injuries are, at best, entirely speculative.

Similarly, plaintiff's members' mere residence in Foggy Bottom is insufficient to confer constitutional standing on them to challenge the District's regulation of GWU, notwithstanding plaintiff's citation of D.C. Official Code § 6-641.09 (2005 Supp.).

Contrary to the implications of plaintiff, that provision does *not* give them standing to sue in federal court. That section of the code merely gives standing to "any neighboring property owner or occupant who would be specially damaged" to file suit *in Superior Court*. Even if proven, such special damage only "gives standing to such parties to bring suit, but no right to relief without a showing of irreparable harm." *President & Dir. of Georgetown College v. Diavatis*, 470 A.2d 1248, 1251–52 (D.C. 1983).[11] Moreover, to assert standing under that code

---

[11]    Plaintiff affirmatively misrepresents case law when it states that *Diavatis* stands for the proposition that a zoning violation "is sufficient as a matter of law to establish irreparable injury." P.Mem. at 19. That conclusion is incorrect as a matter of law—the DCCA did not so

section, a plaintiff must demonstrate that he or she would be "specially damaged" by the alleged

zoning violation, over and above the general damages suffered by the public at large. *Lund v.*

*Watergate Investors Ltd. Partnership*, 728 A.2d 77, 83 (D.C. 1999).

> [The statute] does not require the issuance of an injunction on a showing of
> special damage, but merely authorizes "any neighboring property owner or
> occupant" who can make such a showing to sue for an injunction. [I]n other
> words, the statute enables affected neighboring property owners (unlike other
> ordinary citizens) to enter the courthouse, but it does not guarantee them victory
> in the courtroom."

*Diavatis*, 470 A.2d at 1250–51.[12]

The District asserts that plaintiff does not have standing under that code section;

notwithstanding that it has alleged that its members are "owners and renters" in the

neighborhood. Complaint ¶ 9. Although it uses the "magic words" enshrined in common law and

District law, plaintiff has failed to plead any "special damage" distinct from that common to the

public generally.

For instance, plaintiff alleges that its members are "distinctly," "specifically," and

"particularly" damaged by, *inter alia*, GWU's students' "malfeasance, boisterous manner,

---

hold; it noted only an apparent conflict between Supreme Court precedent and a Tenth Circuit
opinion, but expressly *declined* to decide whether a zoning violation, if proven, is *per se*
irreparable injury. *See also Lund*, 728 A.2d at 83 & n.9 ("We have never held that a showing of a
violation of a zoning order *per se* is sufficient as a matter of law to establish special damage
under [D.C. Code § 6-641.09].") (citing *Diavatis*). Plaintiff's seemingly casual misrepresentation
here should cast considerable doubt on its entire analysis.

[12]    The use of the "special damage" language to confer standing to enjoin alleged
zoning violations arose from the common law concept of nuisances. *B & W Management, Inc. v.
Tasea Investment Co.*, 451 A.2d 879, 881 (D.C. 1982). A public nuisance is an unreasonable
interference with a right common to the general public, which generally only may be challenged
by governmental authorities (absent statutory authorization). *Id.* at 882. However, one traditional
exception to the general rule is that a private party may sustain an action to enjoin or recover
damages for a public nuisance if that party can prove "special damage, distinct from that
common to the public." *Id. (*quoting *Holloway v. Bristol-Myers Corp.*, 327 F.Supp. 17, 24
(D.D.C. 1971), *aff'd.*, 485 F.2d 986 (1973)).

population pressure, displacement of long-time residents, [d]isturbance of the residential character of the neighborhood[,] the increased traffic, pollution, and noise[, and] increased university generated traffic, reduced availability of parking, and the influx of students residing in off-campus housing." P.Mem. at 18–19.

But all those "injuries" are suffered, if at all, by *everyone* in the neighborhood—residents, tourists, office workers, and GWU staff and students themselves. The alleged damages are not specific to plaintiff or its members, hence plaintiff lacks standing here.

Additionally, plaintiff has not alleged any injury in fact regarding the School Without Walls. Because the application for its designation as a historic landmark is currently pending, that property is *already* subject to historic-preservation protection, by law, until its application is decided. *See* D.C. Official Code § 6-1102(6)(B); 10A DCMR § 208.2. As such, plaintiff cannot show that there is any "imminent injury" concerning the School Without Walls' historic status. Until (and if) the HPRB rejects such application, plaintiff cannot show any injury or threat of injury that is "both real and immediate."

Here, the administrative process has just begun, to say nothing of reaching a binding conclusion. Where the ultimate question depends on contingencies which may not come about, as here, that question is not ripe for judicial resolution. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985)). Plaintiff has suffered no current or imminent injury, and in fact is attempting to get relief from agency decision(s) that have not yet occurred.

*b. Plaintiff Has Not Suffered a "Taking."*

Plaintiff claims that this case "arises under the Takings Clause of the Fifth Amendment . . . ." Complaint ¶ 5. Plaintiff apparently alleges that the District's "failure to enforce" zoning regulations and the conditions in GWU's current campus plan is an unconstitutional "taking" of plaintiff's members' "legitimate interests to enjoy residential use of their property" directly, and by "detrimentally impacting the economic value of their property . . . ." Complaint ¶¶ 91–102.

Plaintiff's claim borders on the specious, and reflects a fundamental misunderstanding of the law. Plaintiff cannot cite to a single case supporting its theory here; indeed, were plaintiff to be correct, federal courts would be clogged with any number of lawsuits by "aggrieved" citizens complaining about local zoning decisions affecting their neighbors' property. Indeed, the paucity of case law in this area reflects the illegitimacy of plaintiff's claim.

A party challenging government action as an unconstitutional taking bears a "substantial burden." *District Intown Properties v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) (quoting *Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998)), *cert. denied*, 531 U.S. 812 (2000). *See also United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126 (1985) (government action will effect a regulatory taking in "extreme circumstances," *i.e.*, *only* if it denies an owner economically viable use of his land) (quoting *Agins v. Tiburon*, 447 U.S. 255, 260 (1980)). Here plaintiff cannot meet this burden because its feared injuries are attenuated to the point of nonexistence.

Plaintiff's claim fails at the outset. The overwhelming weight of case law holds that "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 645 (1993) (loss of 46% of shareholder equity not a taking) (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 384

(1926) (approximately 75% diminution in value)); *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (92.5% diminution)).[13]

Indeed, the Supreme Court in those cases refused to find a taking where the *claimant itself* was being regulated; plaintiff cannot point to any case law which suggests that the *indirect* effects of such regulation on neighboring residents may also constitute a taking.

Moreover, the District's regulation (or lack of regulation) of GWU only arguably affects a portion of plaintiff's members' "property rights" in their residential properties. When "an owner possess a 'full bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard*, 444 U.S. 51, 65 (1979). *See also Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 499 n.27 (1987) ("The question here is whether there has been any taking at all when no [property] has been physically appropriated, and the regulatory program places a burden on the use of only a small fraction of *the property that is subjected to regulation*.") (emphasis added).[14]

Plaintiff cannot succeed on its claim here. Federal courts have already found that the District's *direct* regulation of GWU's property did not constitute a "taking" of GWU's property; it is an insupportable stretch for plaintiff to claim that the *results* of that regulation now constitute a "taking" of the neighbors' property.

The Supreme Court, in two recent cases, has detailed the dramatic showing necessary for a plaintiff to prevail on a regulatory takings claim. Such a plaintiff must demonstrate that it faces

---

[13]    *See also Nat'l Telephone Coop. Ass'n v. Exxon Corp.*, 38 F.Supp.2d 1, 14 (D.D.C. 1998) ("Diminution of market value alone, buttressed by no accompanying personal or property damage, does not constitute an unreasonable interference with the "use and enjoyment" of the land.").

[14]    "[T]he property that is subjected to regulation" here, of course, is GWU's.

a "severe" burden. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. ___, 125 S.Ct. 2074, 2085 (May 25, 2005); *Kelo v. City of New London, Connecticut*, 545 U.S. ___, 125 S.Ct. 2655, 2667 (June 23, 2005) (citing *Lingle*). If the directly regulated claimants in those cases could not meet that test, the District avers that plaintiff cannot meet it here as a matter of law.

Simply put, what little case law exists is unanimous in holding that the vague, conclusory allegations of the deprivation of "NIMBY" property "rights" asserted by plaintiff here is insufficient as a matter of law to state a claim under the Constitution.[15] *See, e.g., Mehta v. Surles*, 905 F.2d 595, 598 (2nd Cir. 1990) ("A person cannot claim a constitutionally-protected property interest in uses of neighboring property on the ground that those uses may affect the market value of his own property.") (citing *Fusco v. Connecticut*, 815 F.2d 201, 206 (2nd Cir. 1987) (plaintiffs' claim of reduced property values because of zoning decision on adjacent neighbors' property "failed to allege a deprivation cognizable under the [Constitution].")", *cert. denied*, 484 U.S. 849 (1987)); *BAM Historic Dist. Ass'n v. Koch*, 723 F.2d 233, 237 (2nd Cir. 1983) (community residents' claim that city's operation of homeless shelter will cause a decline in neighborhood property values "has never been held to "deprive" a person of property within the meaning of the [Constitution]."); *id.* (liberty interest protected by Constitution "does not include the maintenance of transient levels of the quality of neighborhood life."); *Rogin v. Bensalem Township*, 616 F.2d 680, 691 (3rd Cir. 1980) (zoning restriction which may reduce the value of some properties more than others, is not a "taking" under the Constitution); *Ancarrow v. City of Richmond*, 600 F.2d 443, 447 (4th Cir. 1979) ([The Constitution] "does not protect the owner from fluctuations in the value of his property resulting from governmental decisions to put

---

[15]    "NIMBY" means "Not in my backyard." *See, e.g., Hazardous Waste Treatment Council v. Reilly*, 938 F.2d 1390, 1395 (D.C. Cir. 1991).

neighboring property to a lawful, albeit unattractive, use.") (citing *Reichelderfer v. Quinn*, 287 U.S. 315, 178–79 (1932) ("But the existence of value alone does not generate interests protected by the Constitution against diminution by the government, however unreasonable its action may be.")).[16]

> There is, however, no fundamental right in modern society to be free from increased traffic, noise or an incursion on open space. One does not have a protected property interest in the use of neighboring property because that use may adversely affect the value of his property. A decline in property value which results from an ordinary land use decision by local government is not a deprivation of property within the meaning of the Fourteenth Amendment.

*Stop-Save Township Open Places, Inc. v. Board of Supervisors*, 1996 WL 663875, *4 (E.D. Pa. 1996) (citations and footnote omitted).

---

[16]    District court decisions based on these Circuit cases are similarly instructive. *See, e.g., Scott v. Town of Monroe*, 306 F.Supp.2d 191, 195–96 (D. Conn. 2004) ("the reduction in value of plaintiff's home as a consequence of the town boundary change" fails to allege a property deprivation cognizable under the Constitution); *Ramapo Homeowners' Ass'n v. New York State Off. of Mental Retardation*, 180 F.Supp.2d 519, 527 (S.D.N.Y. 2002) (dismissing claim that state's decision to locate a community residence in town reduced property values because plaintiff "has failed to allege a cognizable deprivation of property."); *Township of West Orange v. Whitman*, 8 F.Supp.2d 408, 416–18 (D.N.J. 1998) (preliminary injunction denied and defendants' motion to dismiss granted, where plaintiffs alleged state's decision to locate group homes for the mentally ill in residential areas would cause a decline in property values and "reduce the quality of life"); *Woodward & Lothrop, Inc. v. Neall*, 813 F.Supp. 1158, 1160 (D. Md. 1993) (plaintiff, "merely a resident in a geographical area in which another property owner is seeking regulatory approvals for development of its property[,] does not have a constitutionally cognizable property interest in another person's land use merely because that use may adversely affect the market value of his own property."); *Fulilar v. City of Irwindale*, 760 F.Supp. 164, 165–166 (C.D. Cal. 1991) (dismissing claim that city's issuance of building permit to adjacent property owner, in alleged violation of zoning ordinance, damaged plaintiffs by diminishing the value of their properties) ; *MacNamara v. County Council of Sussex County*, 738 F.Supp. 134, 143 (D. Del. 1990) ("[T]he court is unaware of any cases in which persons who merely own property in the neighborhood of a rezoned parcel have successfully claimed the deprivation of a constitutionally protected interest.").

*c. Plaintiff's NHPA Claims Must be Dismissed.*

Plaintiff makes a number of vague, muddled allegations regarding the NHPA, without citing or discussing any case law on the topic. Complaint ¶¶ 79–89, 104–115. This claim is emblematic of plaintiff's claims as a whole—poorly reasoned, and incorrect both as to the law and facts.

The NHPA, *codified at* 16 U.S.C. § 470 *et seq.*, has no application here whatever, as even a cursory review of the law and cases reveals. The NHPA only applies to "federal undertakings," *i.e.*, those projects that are licensed or funded by a federal agency. *Id*. at § 470f; *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 916 (D.C. Cir. 2003); *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 759 (D.C. Cir. 2003). *See also Techworld Development Corp. v. District of Columbia Preservation League*, 648 F.Supp. 106, 119 (D.D.C. 1986) (Under the NHPA, "[a] federal undertaking is where a federal agency has direct or indirect jurisdiction over a project involving the expenditure of federal funds, or the issuance of a federal license.").

Here, plaintiff has not alleged (and cannot show) that the project regarding the School Without Walls, Complaint ¶¶ 79–88, is either federally funded or licensed, hence the NHPA does not apply. Consequently, plaintiff's NHPA claims must be dismissed, as it cannot point to any "federal undertaking," much less any final action by a federal agency which would constitute an "injury" sufficient for standing here. *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 196 (D.C. Cir. 2003) (affirming trial court's dismissal, *inter alia*, of NHPA claims on APA standing grounds because plaintiff "has identified no *federal* agency action at all. The complaint alleges the [disputed project] will be constructed by two *local* governmental bodies . . . . To date there has been *no* involvement with the [project] by any federal agency.") (emphasis in original);

Identically here, the disputed proposed project is apparently the joint work of two local entities, defendant DCPS and GWU, hence the NHPA is not implicated.[17]

Plaintiff is similarly mistaken when it makes the conclusory assertion that the NHPA provides for a "private right of action." Complaint ¶ 105. *See Nat'l Trust for Historic Preservation v. Blanck*, 938 F.Supp. 908, 914–15 (D.D.C. 1996) (standard of review under NHPA is governed by the APA; "The Court is not persuaded that Congress intended to create a private right of action against the federal government under the NHPA."). If there is no private right of action against the *federal* government under the NHPA, there certainly cannot be one against the District here.

Plaintiff's local historic-preservation claims are similarly misguided. Plaintiff, for instance, claims that defendant HPRB has "failed to hold the requisite public hearing" concerning an application for designation of the School Without Walls as a historic property. Complaint ¶ 81.[18] But this claim—in addition to being entirely local in character—is unripe. Public notice of that hearing was published *before* plaintiff filed suit. *See* 53 D.C. Reg. 3219 (Apr. 21, 2006) (public hearing scheduled for May 25, 2006). Needless to say, because the hearing has not yet occurred, plaintiff has not exhausted its administrative remedies (as discussed more fully below), and its claim must be dismissed.

---

[17]    Even *had* there been federal agency involvement here, the NHPA is merely a "procedural statute," which "imposes no substantive standards on [federal] agencies, but it does require them to solicit the [Advisory Council on Historic Preservation's] comments and to 'take into account the effect of [their] undertaking.'" *Nat'l Mining*, 324 F.3d at 755 (quoting *City of Alexandria v. Slater*, 198 F.3d 862, 871 (D.C. Cir. 1999)).

[18]    Plaintiff did not file the referenced application, so would not have had standing to raise that claim locally, but any person concerned with the pace of local agency action may, of course, file suit in local court for relief. *See, e.g.*, D.C. Official Code § 2-510(a)(2) (D.C. Court of Appeals may "compel agency action unlawfully withheld or unreasonably delayed").

*d. Plaintiff's DCEPA Claims Must be Dismissed.*

Plaintiff's claims under the DCEPA, D.C. Official Code § 8-109.01 *et seq.* (2005 Supp.), similarly reflect either a profound misunderstanding of that law, or a willful misreading of it. Complaint ¶¶ 117–124. The Court should countenance neither.

Notwithstanding that these claims—like all the others—are entirely dependent on local law, plaintiff's invocation of the DCEPA here is premature, at best, and may be precluded by the very case it cites.

The DCCA, in *Foggy Bottom Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 791 A.2d 64 (D.C. 2002), affirmed the BZA's grant to GWU of a special exception to build a new hospital, despite plaintiff FBA's claims that GWU had failed to prepare an EIS before applying for the special exception. *Id.* at 66, 69.

The BZA there concluded that an EIS was not necessary at the time it ruled on the special exception, "because the 'environmental review [would] occur as part of the building review process'" and that "[t]he necessary environmental assessment will be carried out as part of the permitting process for construction of the new hospital." *Id.* at 70 (quoting BZA order).[19]

An even more tenuous situation obtains here: the ZC, in its April 20, 2006, public meeting, "set down" GWU's application for a public hearing, a process which plaintiff seeks to

---

[19]     Plaintiff fails to reveal that that case also completely undermines its central thesis here—that the District cannot even consider GWU's campus plan application until GWU is in compliance with the conditions set forth in its previous campus plan. *See id.* at 76 ("[T]he conditions attached to the approval are binding, and [s]ubsequent approval of the building permit or certificate of occupancy depends on compliance with them. Furthermore, such permits or certificates, once issued, can also be revoked if those conditions are not met."). Here, plaintiff seeks to enjoin the very process (campus plan application review) that would determine whether or not GWU is in compliance with its existing campus plan. By law, then, the District cannot grant a building permit (or approve a new campus plan application) until GWU demonstrates that it is in compliance with conditions in the BZA Order. *Id.*

enjoin. Unlike in the *FBA* case, however, here there is *no specific construction* imminent; any future development will require GWU to go through the DCEPA process for *each* project. Plaintiff's current complaint is thus premature.

As plaintiff correctly notes, an EIS is required for any "major action" that "may have a significant impact on the environment." D.C. Official Code § 8-109.02(2) (2005 Supp.).[20]

> "The key requirement, therefore, is that the EIS review occur before the major action is actually 'implemented[.]' Under the DCEPA, the environment can be harmed only if a proposed major action violates environmental standards *and* that major action is 'implemented.' The [D.C.] Department of Health determined, before any implementation of the hospital project occurred—*i.e.*, *before construction actually began*—that the proposed hospital would not violate any environmental standard. Consequently, even if the BZA had been armed with this information, it could have had no effect on the decision to grant the special exception."

*FBA*, 791 A.2d at 73 (emphasis added) (quoting D.C. Official Code § 8-109.03(a)).

Here, the campus plan under consideration is a general overview of current and planned development, *not* a "major action" requiring environmental review. *If* the campus plan and first-stage PUD is approved, *then* GWU would have to go through the process of applying for a second-stage PUD and "further processing" reviews for *each* project and then apply for building permits and certificates of occupancy (for the individual projects identified therein), *before construction actually began*, which is the proper time for the review process contemplated by the DCEPA. *Id*. Even if it wanted to, the District could not *now* evaluate the potential environmental impact of the future projects embodied in the campus plan at issue, because the individual details of the projects are—by definition—not fixed. Only when the specific details of proposed projects are revealed would the District be able to determine the potential environmental impacts of those

---

[20]    Plaintiff makes the nonsensical claim that "GW's application and new campus plan constitute 'major actions' as that term in defined in [the DCEPA]." Complaint ¶ 121. Plaintiff's conclusory *non sequitur* aside, it is incorrect as a matter of law, as shown *infra*.

projects. Needless to say, plaintiff has not identified any case law (because there is none) which supports its argument that GWU's campus plan application is a "major action" under the DCEPA.[21]

Plaintiff's claims under the DCEPA must be dismissed as entirely local in nature and premature.

### e. Plaintiff Has Failed to Exhaust Its Administrative Remedies.

In evaluating whether it has subject matter jurisdiction, a court must construe the complaint liberally, and give the plaintiff the benefit of all reasonable inferences. *Tozzi v. EPA*, 148 F. Supp. 2d 35, 41 (D.D.C. 2001) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). The court must view the allegations as a whole, and a conclusory averment of subject matter jurisdiction, negated by other allegations in the pleading, should result in dismissal. *See id*. at 35, 41 (citation omitted). In *Convertino v. United Stated Department of Justice*, 393 F. Supp. 2d 42 (D.D.C. 2005), the Court held that, pursuant to Fed. R. Civ. P. 12(b)(1), it must dismiss claims over which it has no subject matter jurisdiction. "It is a 'long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed

---

[21]    In its DCEPA arguments, plaintiff—as it did in discussing its alleged irreparable injury—affirmatively misrepresents case law. Plaintiff asserts that the Circuit, in *Citizens Ass'n of Georgetown, Inc. v. Zoning Comm'n*, 477 F.2d 402 (D.C. Cir. 1973), granted preliminary injunctive relief because the ZC "failed to require the preparation of an environmental impact statement concerning proposed down-zoning in Georgetown." P.Mem. at 34. But the Circuit in that case did no such thing. In *dicta*, the Circuit expressly noted that the "environmental impact" issue was *not* then before the court and not even raised by the parties. *Citizens Ass'n*, 477 F.2d at 410. The Circuit there simply let stand an injunction imposed by the trial court while the matter was remanded so that the ZC could issue a "statement of the reasons for its challenged decision." *Id*. Plaintiff similarly failed to note that that case's holding was subsequently abrogated by statute. *See Tenley and Cleveland Park Emergency Committee v. District of Columbia Bd. of Zoning Adjustment*, 550 A.2d 331, 335 (D.C. 1988). Plaintiff's cavalier treatment of this supposed authority is symbolic of its slipshod approach throughout its papers.

administrative remedy has been exhausted.'" *Id.* at 45 (quoting *Myers v. Bethlehem Shipbuilding Corp.,*303 U.S. 41 (1938)); *see also id.* at 51 n. 9 (collecting cases); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986); *Utah Power & Light Co. v. ICC,* 747 F.2d 721 (D.C. Cir. 1984).

Available administrative remedies must be exhausted before a party may resort to judicial relief. *See, e.g., McKart v. United States*, 395 U.S. 185, 195 (1969); *Coalition for the Preservation of Hispanic Broadcasting v. F.C.C.*, 931 F.2d 73 (1991); *Ticor Title Ins. Co. v. F.T.C.*, 814 F.2d 731, 738–743 (1987).

This exhaustion doctrine is premised on several policy considerations, including the promotion of judicial economy by allowing an administrative forum with specialized knowledge to resolve issues and thereby possibly eliminate the need for further judicial action on those issues. *See New York Ophthalmological Society v. Bowen*, 854 F.2d 1379, 1387 (1988). A vigorous exhaustion requirement "also promotes effective and efficient judicial review by ensuring that such review is of a fully developed factual record, and undertaken with the benefit of the agency's exercise of discretion or application of expertise." *Weinberger,* 795 F.2d at 105 (citing *McKart,* 395 U.S. at 194; *Athlone Indus. v. Consumer Prod. Safety Comm'n,* 707 F.2d 1485, 1488 (D.C. Cir. 1983)).

Congress delegated to the Zoning Commission all power to "regulate the location, height" and other physical attributes of buildings; the percent of ground area that may be occupied; "the density of population, and the uses of buildings, structures, and land for trade, industry, residence, recreation, public activities, or other purposes." Zoning Act of 1938, 52 Stat. 797 § 1, *codified as amended at* D.C. Official Code §§ 6-641.01 *et seq.* (2005 Supp.).

The zoning regulations set forth a comprehensive administrative process for all aspects of zoning, and specifically provide a two-stage process to evaluate future development of

campuses. In the first stage, universities must periodically present general plans describing present and proposed improvements and the activities for which they are or will be used. 11 DCMR §§ 210.4, 302.2, 322.2, 332.2, 352.2, 507.3, 615.3, 3104.[22] The regulations do not specify how frequently universities must provide this information, but past practice has allowed plans to remain in place for ten to fifteen years. As the DCCA has explained, the plan stage is designed to provide an outline of future development without simultaneously requiring details and specifications concerning individual projects. *Levy v. D.C. Bd. of Zoning Adjustment*, 570 A.2d 739, 749 (D.C. 1990). Approval of a plan "establishes limitations within which all future construction must occur . . . and in that sense impose[s] requirements independent of the building-by-building review expected to occur later." *Id*. That later review of individual projects is the second stage referenced. *Id*. The regulations do not prevent a university from combining a campus plan application with applications for special exceptions for individual projects, as GWU has done here, allowing simultaneous review. *See* Complaint ¶ 69. *See also, e.g.*, Zoning Commission Order No. 949, Case No. 00-36CP/16638 (American University Campus Plan and Further Processing), 49 D.C. Register 302–343 (Jan. 11, 2002).

As noted, once a final order is issued by the ZC, plaintiff would be able to appeal such an order under the D.C. Administrative Procedure Act to the DCCA and have that court hear its constitutional as well as local law claims. Plaintiff has not exhausted its administrative remedies, because the administrative process has barely begun.

> Where the proceedings begin at the administrative level, the defendant can appeal to and make its constitutional challenges in the D.C. Court of Appeals, and again

---

[22]    For decades the Board of Zoning Adjustment ("BZA") was authorized to approve campus plans. However, effective December 8, 2000, the ZC adopted amendments to the zoning regulations to assume responsibility for campus plan review. *See* 47 D.C. Reg. 9725 (Dec. 8, 2000).

seek further review in the Supreme Court. Whether or not the defendant can also raise its constitutional defenses at the administrative level, "it is sufficient under [*Younger*] that constitutional claims may be raised in state-court judicial review of the administrative proceeding."

*JMM Corp.*, 378 F.3d at 1121 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 629 (1986) (internal quotes omitted)).

Here, the plaintiff has several administrative processes available to it, including both zoning and historic-preservation, which have the ability to provide it with all the relief it seeks.

### f. The Court Should Abstain Under the Younger Doctrine.

Even if the Court finds that it is not compelled to dismiss under any of the above-pleaded grounds, the Court should abstain from exercising its jurisdiction over this matter under the *Younger* abstention doctrine.

Despite abstention being a narrow exception to a court taking jurisdiction, *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 431 (1982); *JMM Corp.*, 378 F.3d at 1120 (enforcement of zoning laws is an important local interest); *Worldwide Moving & Storage, Inc. v. District of Columbia*, ___ F.3d ___, 2006 WL 954458 (D.C. Cir. April 14, 2006) (the District has an important interest in enforcing its consumer-protection laws).

Under *Younger*, the question whether a federal district court should abstain is threefold: "first, . . . [is there] an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 457 U.S. at 432; *JMM Corp.*, 378 F.3d at 1120.

In *JMM Corp.*, a dispute implicating local land-use laws, the Circuit upheld the district court's dismissal of all claims below, except a claim for monetary damages, which was stayed pending resolution of the local proceedings.

Here, plaintiff requests *only* declaratory and injunctive relief, hence this case is eminently appropriate for dismissal.

Plaintiff sued here because it fears the District *might* approve GWU's new land-use applications and *might not* designate the School Without Walls as a historical landmark. Because there is a more-than-adequate opportunity to bring these claims in the local administrative processes, which involve matters of preeminent local concern (*i.e.*, land-use regulation), dismissal of the Complaint (and the request for emergency injunctive relief) is mandated by *JMM*: "The ongoing District of Columbia proceedings are judicial in nature and implicate important District interests; those proceedings afford [plaintiff] an adequate opportunity to litigate its federal claims; and there are no extraordinary circumstances warranting equitable relief." *Id*. at 1128 (citing *Younger*).


*2. Plaintiff Has Failed to Establish Irreparable Harm As A Matter of Law.*

Plaintiff has failed to make any showing of irreparable harm and therefore its motion for emergency injunctive relief must fail.

An essential prerequisite to injunctive relief is a sufficient showing by plaintiff that it will suffer irreparable harm if the injunctive relief is not granted. *See*, *e.g.*, *Davenport v. International Brotherhood of Teamsters,* 166 F.3d 356, 360 (D.C. Cir. 1999). *See also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974).

"Despite this flexibility, we require the moving party to demonstrate at least 'some injury . . . .'" *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (citing, *inter alia, Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) (preliminary injunction properly denied "where moving party may have been 'likely to succeed' but did not carry burden of showing irreparable harm, since 'the basis of injunctive relief in the federal courts has always been irreparable harm.'") (quoting *Sampson*, 415 U.S. at 88 and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959))).

In other words, if plaintiff makes no showing of irreparable injury, a court may deny its motion without considering any other factors. *CityFed*, 58 F.3d at 747. *See also PhRMA v. Walsh*, 538 U.S. 644, 671 (2003) (plaintiff "cannot obtain a preliminary injunction simply by showing minimal or quite 'modest' harm") (*Breyer, J., concurring*).

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), sets forth the guiding principles for determining whether irreparable harm exists: (1) the injury must be both *certain* and *great*, not something merely feared as likely to occur at some indefinite time; (2) the injury must be of such imminence that there is a "clear and present" need for relief to prevent it; and (3) economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened. *See also Sampson*, 415 U.S. at 88–90.

All of the threatened harms alleged by plaintiff are entirely speculative and, even if proven, could be remedied financially. No factual support was presented by plaintiff, only self-serving "affidavits" setting forth in conclusory fashion what might happen in the future. These declarations do little but assert generalized harms, with no concrete support whatever for the conjectural "injuries" the District's actions will allegedly entail. Such a showing is insufficient to support the grant of emergency injunctive relief. *See, e.g.*, *Nat'l Assn. of Psychiatric Health Sys.*

- 29 -

*v. Shalala*, 120 F.Supp.2d 33, 44 & n.9 (D.D.C. 2000) (preliminary injunction denied to association and others where plaintiffs "offer[ed] no concrete, reliable evidence to support their contentions of irreparable harm.").

Moreover, a preliminary injunction here will *not* preserve the status quo, but will require the District to take *affirmative steps* to prevent the mandated administrative processes from going forward. As such, a preliminary injunction would be a "mandatory injunction" requiring plaintiff to meet a higher standard than the typical four-part test for the usual "prohibitory" injunction. *Veitch v. Danzig*, 135 F.Supp.2d 32, 35 & n.2 (D.D.C. 2001) (citing, *inter alia, University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) and *Dorfmann v. Boozer*, 134 U.S. App. D.C. 272, 414 F.2d 1168, 1173 (D.C. Cir. 1969)).

Plaintiff must therefore show "clearly" that it is entitled to immediate relief or that "extreme or very serious damage" will result from the denial of the emergency injunction. *Veitch*, 135 F.Supp.2d at 35 n.2 (quoting *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2nd Cir. 1997)).

Plaintiff has failed to show that it is clearly entitled to immediate relief and has not shown any "extreme or very serious damage" (or, in fact, any damage at all) in the absence of emergency injunctive relief.

Plaintiff's handful of conclusory, self-serving "affidavits" do not even explain the purported "harm" to be caused by the District's future action here. The "affidavit" of Joy Howell, for instance, merely parrots conclusions reached by the District in the previous round of litigation, with no *specific* assertions of "harm" aside from those suffered, if at all, by everyone in the neighborhood. Similarly, the "affidavit" of Scott D. Heiser does not detail any specific

- 30 -

environmental harm caused by the District's actions, but appears to be an interpretation by Mr. Heiser (an engineer) of what District environmental law "requires."[23]

To the extent plaintiff claims its member's constitutional rights are now (or will be) violated, it has similarly failed to meet its burden. *See, e.g., Wagner v. Taylor*, 836 F.2d 566, 577 n. 76 (D.C.Cir.1987) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, . . . the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant."); *Veitch*, 135 F.Supp.2d at 37 (violation of constitutional rights is not itself an irreparable harm) (citing *Elrod v. Burns*, 427 U.S. 347 (1976)); *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C. 1976) ("[T]he required showing of irreparable injury is not eliminated simply by virtue of a claim alleging violation of statutory or constitutional rights."), *aff'd*, 548 F.2d 977 (D.C.Cir.1976).

There is nothing remotely "imminent" here in the broad sense of the word; nothing has happened yet or in the immediate future requiring *emergency* injunctive relief. Perversely, plaintiff apparently seeks to stop the administrative process from going forward, which process can give plaintiff precisely the relief it seeks.

Plaintiff fails to make a showing of irreparable harm and therefore its motion for a preliminary injunction must fail.

### 3. The Balance of Equities Favors Denying Injunctive Relief.

Plaintiff here seeks to enjoin the District from proceeding with the administrative process, and to require a pre-determined outcome for that process. The balance of equities tips

---

[23]     These "affidavits," because they are not notarized, must be considered as declarations. *See* 28 U.S.C. § 1746.

decidedly in favor of defendants where plaintiff essentially is asking this Court to issue a mandatory injunction before the District has issued *any* final administrative decision. In other words, plaintiff seeks the ultimate relief at the beginning of the litigation.

An injunction would substantially injure the District, its citizens, and the administrative process. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). *See also Greene*, 806 A.2d at 223 (quoting *New Motor Vehicle Bd.*).

If plaintiff's relief were to be granted, the door would be opened to allow every person unhappy with (potential) agency regulatory actions to bypass the administrative process. To allow this type of challenge would undermine the very nature of administrative litigation—to settle disputes at the agency level. Any "aggrieved party" would be able to ignore preliminary local agency decisions with which it disagreed, to go straight into federal court.

In these circumstances, the District of Columbia enjoys the balance of the equities in its favor.


*4. The Public Interest Favors the District.*

It is plaintiff's members' self-interest, not the public interest, which is at the root of the Complaint. The public interest favors denying the motion for a preliminary injunction.

In essence, plaintiff asserts that it is not bound by the same process that applies to everyone else who plans to contest an expected agency decision. The District has in place comprehensive, long-standing statutory and regulatory schemes regarding zoning and other land-use decisions. Allowing plaintiff to avoid those mandated processes would turn the statutory

scheme on it head. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd*, 434 U.S. at 1351.

The public interest demands more than plaintiff's members' self-interest.

## IV. <u>Conclusion</u>

For the foregoing reasons, the District moves to dismiss the Complaint and to deny plaintiff's Motion for a Preliminary Injunction. A proposed Order is attached hereto.

DATE: May 19, 2006   Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

   /s/ Richard S. Love
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I Section
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431

   /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431

      _____/s/ John D. Dodge_____
JOHN D. DODGE, D.C. Bar No. 451305
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6627
Facsimile: (202) 727-0431