**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

FOGGY BOTTOM ASSOCIATION,          )
                                                            )
                  Plaintiff,                           )
                                                            )
                  vs.                                      )
                                                            )  Court No. 06 Civ. 0746 (RJL)
DISTRICT OF COLUMBIA OFFICE OF   )
PLANNING, *et al.*,                               )
                                                            )
                  Defendants.                       )
_____)

## <u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>


Dated: May 26, 2006                               /s/ William Bode
                                                            William H. Bode (Bar No. 113308)
                                                            Peter Grenier (Bar No. 418570)
                                                            Stefan Shaibani (Bar No. 490024)
                                                            BODE & GRENIER, LLP
                                                            1150 Connecticut Ave, NW, 9th Fl.
                                                            Washington, DC 20036
                                                            Tel:  (202) 862-4300

                                                            *Attorneys for Foggy Bottom Ass'n*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………………  ii

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT…………………1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
 PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT…………………...2

STATEMENT OF FACTS………………………………………………………………..2

ARGUMENT……………………………………………………………………………...4

   A. Undue Delay……………………………………………………...4

   B. Bad Faith……………………………………………………...………......5

   C. Repeated Failure to Cure Deficiencies……………………………5

   D. Undue Prejudice to the Opposing Party…………………….............5

   E. Futility of Amendment…………………………………….………6

    1. The Locality of This Dispute Does Not Justify Abstention....6

    2. Plaintiff Asserts A Viable Claim For A Regulatory
     Takings……………………………………..............................10

    3. Plaintiff Possesses Associational Standing…………..….......14

CONCLUSION……………………………………………………..…………....17

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*American Towers, Inc. v. Williams*, 146 F. Supp.2d 27 (D.D.C. 2001)……………………………...9

*Bannum, Inc. v. District of Columbia Board of Zoning Adjustment*,
2005 WL 1076179 (D.D.C. 2005)…… ……………………………………………………...……9

*Bridges v. Kelly*, 84 F.3d 470 (D.C. Cir. 1996)……………………………………………6,8

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999)…………………..8

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)………………..6

*Community Housing Trust v. Dep't of Consumer and Regulatory Affairs*,
257 F. Supp.2d 208 (D.D.C. 2003)…………………………..…………… …………………..5

*DaimlerChrysler Corp. v. Cuno*, -- S. Ct. -- 2006 WL 1310731 (May 15, 2006)………………16

*District Properties Assocs. v. District of Columbia*, 743 F.2d 21 (D.C. Cir. 1984)………………7

*Dooley v. United Technologies Corp.*, 152 F.R.D. 419 (D.D.C. 1993)…………………………...5

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998)……………………………………………10

*Family Div. Trial Lawyers of the Superior Court v. Muoultrie*, 725 F.2d 695 (D.C. Cir. 1984)…8

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)…………………………………………4

*First English Evangelical Lutheran Church of Glendale v. Los Angeles*,
482 U.S. 304 (1987)...........................................................................................................................14

*Forman v. Davis*, 371 U.S. 178 (1962)…………………………………………………………4

*Hornstein v. Barry*, 560 A.2d 530 (D.C. 1989)………………………………………………11

*Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973)……………………………………......4

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977)…………………...15

*JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004)……………………………8

*LaShawn v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993)……………………………………………8

*Lerner v. Fleet Bank,* 318 F.3d 113 (2nd Cir. 2003)……………………………………………14

*Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419 (1982) )………..………3,5,12,14

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)………………………...10,12,13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)…………………………………………15

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979)…………………………………………10,13

*Mekuria v. Washington Metropolitan Area Transit Auth.*, 975 F. Supp. 1 (D.D.C. 1997)………11

*National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428 (D.C. Cir. 1995)………………15

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989)……6,7

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001)…………………………………………...12

*Penn Central Transportation co. v. New York City*, 438 U.S. 104 (1978)………………3,5,12,14

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)…………………………………………8

*Re:  Vitamins Antitrust Litigation*, 271 F.R.D. 30 (D.D.C. 2003)……………………………4,5,6

*Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56 (1st Cir. 2005)……………8

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 126 S. Ct. 1297 (2006) ……... 15

*Silverman v. Barry*, 727 F.2d 1121 (D.C. Cir. 1984)………………………………………7,11,14

*Thompson v. New York Life Ins. Co.*, 644 F.2d 439 (5th Cir. 1981)………………………4

*United States v. Causby*, 328 U.S. 256 (1946)…………………………………………...13

*United States v. Students Challenging Regulatory Agency Procedures*,
412 U.S. 669 (1973)………………………………………………………………...16

*Warth v. Seldin*, 422 U.S. 490 (1975)……………………………………………16

*Washington Legal Clinic for the Homeless v. Kelly*, 1994 WL 823564 (D.D.C. 1994)…………..8

*Younger v. Harris*, 401 U.S. 37 (1971)……………………………………….……………6,7,8,14

**STATUTES AND REGULATIONS**

16 U.S.C. § 470……………………………………………………….……3,4

28 U.S.C. § 1367(a)……………………………………… ……………………..14

DC ST. § 6-641.09…………………………………………………………..3,14

DC ST. § 8-109………………………………………………………...............3

11 DCMR § 210.2……………………………………………………….........3

11 DCMR § 210.4………………………………………………..…………..3

11 DCMR § 507.3……………………………………………………………3

**COURT RULES**

FRCP § 15(a)…………………………………………………………………2,4,6

LCivR 7 (i)………………………………………… …………………………...2

LCivR 15.1……………………………………………………...........................2

**OTHER**

*Moore's Federal Practice*, (3d ed. 1997)  § 15.08 …....................................................5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| FOGGY BOTTOM ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Court No. 06 Civ. 0746 (RJL) |
| DISTRICT OF COLUMBIA OFFICE OF | ) |
| PLANNING, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

### PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure ("FRCP") and Local Civil

Rules 7(i) and 15.1, plaintiff, the Foggy Bottom Association ("FBA"), through its counsel, Bode

& Grenier, LLP, respectfully requests leave of Court to amend its complaint filed on April 25,

2006.  On May 23, 2006, Andrew J. Saindon, counsel for the District of Columbia, declined to

consent to this motion.  In support of this motion, plaintiff relies upon the attached memorandum

of points and authorities.  Plaintiff's First Amended Complaint is attached to this motion.

ORAL ARGUMENT REQUESTED.

Respectfully submitted,

Dated: May 26, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Ave, NW, 9th Fl.
Washington, DC 20036
Tel:  (202) 862-4300

*Attorneys for Foggy Bottom Ass'n*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

FOGGY BOTTOM ASSOCIATION,    )
    )
       Plaintiff,    )
    )
       vs.    )
    )  Court No. 06 Civ. 0746 (RJL)
DISTRICT OF COLUMBIA OFFICE OF  )
PLANNING, *et al.*,    )
    )
       Defendants.    )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure and Local Civil Rules 7(i) and 15.1, plaintiff, the Foggy Bottom Association respectfully requests leave of Court to amend its complaint filed on April 25, 2006.  As discussed below, plaintiff's motion for leave to amend should be granted because (1) plaintiff seeks to add the District of Columbia as a party to this action and to allege monetary damages in connection with its takings claim, (2) plaintiff's motion is being filed less than a month after commencement of this action, (3) amendment of plaintiff's complaint will not prejudice defendants, (4) amendment of plaintiff's complaint will not be futile, and (5) the District of Columbia Circuit and this Court have adopted a liberal policy toward granting motions for leave to amend, particularly when there is no prejudice to the opposing parties, as is the case here.

**STATEMENT OF FACTS**

This action arises from the District's failure to enforce the zoning laws and its own regulations in connection with GW's violations of the Corrected Final Order on Remand dated January 23, 2002 ("Final Order") of the District of Columbia Board of Zoning Adjustment and

2

GW's February 16, 2006 submission of "an application to the District of Columbia Zoning Commission for first stage review and approval of a planned unit development and zoning map amendment for the Foggy Bottom Campus" and "the Foggy Bottom Campus Plan:  2006-2025." ("application and new campus plan").

Plaintiff's complaint alleged (1) a regulatory taking arising from the District's failure to enforce the Final Order despite GW's continuing violations of the same, cognizable under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), (2) the National Historic Preservation Act, 16 U.S.C. § 470 (requiring observance of laws when substantially altering historic properties), (3) violation of DC ST. 8-109.03(a) (setting forth environmental guidelines for implementing major actions), (4) violation of DC ST. § 6-641.09 (giving rise to a private right of action to enjoin violations of the zoning laws), (5) 11 DCMR § 210.2 (prohibiting universities from seeking land use "objectionable to neighboring property"), and (6) 11 DCMR §§ 210.4, 507.3 (requiring universities to submit a plan for developing the campus as a whole).

Plaintiff's complaint sought a permanent injunction "prohibiting the Office of Planning and the Zoning Commission from approving GW's application and new campus plan until the District of Columbia provides just compensation . . . to the members of the Foggy Bottom Association for the regulatory taking of their property" (Comp., prayer, ¶ (b)), but did not directly allege damages against the District in the regulatory takings count.  Nor did plaintiff's complaint allege a physical invasion of property amounting to a taking cognizable under *Loretto v. Teleprompter Manhattan CATV*, 458 U.S. 419 (1982).  Plaintiff thus seeks leave to amend its complaint to assert two distinct bases for its takings claim and to assert monetary damages against the District.  Plaintiff further seeks to add the District of Columbia as a defendant in this

action.  The First Amended Complaint does not contain a count for violation of the National Historic Preservation Act, 16 U.S.C. § 470.

## ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that a plaintiff may amend his complaint "by leave of court or by written permission of the adverse party" but that "leave shall be freely given when justice so requires."  It is axiomatic that leave to amend should be liberally granted, particularly when the amendment would not prejudice the opposing party.  *See Forman v. Davis*, 371 U.S. 178, 182 (1962); *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981).  The District of Columbia Circuit and this Court have both endorsed the liberal policy toward granting leave to amend pleadings.  *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of amendment"); *In re Vitamins Antitrust Litigation*, 271 F.R.D. 30, 32 (D.D.C. 2003).  The purpose of Rule 15(a) is to facilitate a decision on the merits.  *Forman*, 371 U.S. 182.

As discussed below, analysis of the Rule 15(a) factors leads to the inescapable conclusion that plaintiff's motion for leave to amend should be granted.

### A.    UNDUE DELAY

Plaintiff filed this action on April 25, 2006.  Plaintiff now seeks leave to amend its complaint to add the District of Columbia as a party and to allege monetary damages against the District in its regulatory takings count.  Clearly, there is no undue delay because plaintiff's motion for leave to amend is being filed less than a month after commencement of this action.  *See, e.g.*, *Howey v. United States*, 481 F.2d 1187, 1190-92 (9th Cir. 1973) (reversing denial of

motion for leave to amend five years after filing of complaint and in the midst of trial); *see also* 3 MOORE'S FEDERAL PRACTICE § 15.08 ("The mere fact that an amendment is offered late in the case is, however, not enough to bar it; amendments may be offered at the trial, or even after reversal and remand").

### B.    BAD FAITH

Nor is there bad faith or dilatory motive in plaintiff's request to amend its complaint less than a month after commencement of this action.  Amendment of plaintiff's complaint is necessary because plaintiff could not pursue this action against the District's agencies but must name the District itself as a defendant.  *See Community Housing Trust v. Dep't of Consumer and Regulatory Affairs*, 257 F. Supp.2d 208, 217 (D.D.C. 2003).  Further, plaintiff's First Amended Complaint asserts monetary damages against the District and alleges two distinct bases for its takings claim: a *Penn Central* regulatory taking and a partial physical invasion amounting to a taking under *Loretto*.  These modifications require plaintiff to amend its complaint.

### C.    REPEATED FAILURE TO CURE DEFICIENCIES

This is the first time that plaintiff has sought leave to amend its complaint.  This factor thus favors granting leave to amend.

### D.    UNDUE PREJUDICE TO THE OPPOSING PARTY

"Undue prejudice is the touchstone for the denial of leave to amend."  *Vitamins Antitrust Litigation*, 271 F.R.D. 32.  In order to show prejudice, "the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding."  *Id.*  The party opposing the motion "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."  *Dooley v. United Technologies Corp.*, 152 F.R.D. 419, 425 (D.D.C. 1993).

Amendment of plaintiff's complaint in this case will not prejudice defendants because discovery has not even begun, and defendants will have the opportunity to present facts and evidence to defend the claims raised in plaintiff's First Amendment Complaint. Indeed, these counts were alleged in plaintiff's original complaint and should be no surprise to defendants. The substantial difference between the two pleadings is the addition of the District as a defendant and the assertion of damages in connection with plaintiff's takings count. At best, defendants' claim of "prejudice," if any, would amount to their having to re-file a response to plaintiff's complaint. However, the mere incurring of time and expense to defend new or revived claims is not the type of prejudice cognizable under Rule 15(a). *See Vitamins Antitrust Litigation*, 271 F.R.D. 33.

### E.    FUTILITY OF AMENDMENT

#### 1.    The Locality Of This Dispute Does Not Justify Abstention

Defendants have opposed this motion on the basis that amendment of plaintiff's complaint would be futile. Defendants' contention of futility is essentially based on the spurious claim that the "local" nature of this case requires *Younger* abstention over plaintiff's constitutional claim. This contention, however, has been repeatedly rejected by the Supreme Court and the District of Columbia Circuit. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 364 (1989) (the *Younger* doctrine must be applied with "the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."); *Bridges v. Kelly*, 84 F.3d 470, 475 (D.C. Cir. 1996) ("Because of the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them, the appropriateness of refraining 'from the exercise of federal jurisdiction is the exception, not the rule.' ") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

(1976)); *Silverman v. Barry*, 727 F.2d 1121, 1124 n. 4 (D.C. Cir. 1984) (declining to exercise abstention in condominium conversion dispute and stating that "sensitivity and the notion of localism alone do not provide a principled rationale for abstention where federal jurisdiction admittedly exists.  Federal courts routinely decide local matters of great sensitivity"); *District Properties Assocs. v. District of Columbia*, 743 F.2d 21, 29 & n.5 (D.C. Cir. 1984) (declining to exercise abstention in action involving District rent control laws and stating that "[t]he mere sensitivity or importance of the state law questions in a case have never been sufficient in themselves to require a federal court to abstain").

Defendants' motion to dismiss thus centers around the tenuous contention that *Younger* abstention requires the Court not to exercise jurisdiction in this case.  Def.s' Mot. to Dismiss, at 7.  However, *Younger* abstention is entirely inappropriate here because (1) there are no state court or administrative *enforcement* proceedings pending against the Foggy Bottom Association (or GW), (2) plaintiff is not a party to the administrative agency proceedings involving GW's application and new campus plan, and (3) plaintiff's First Amended Complaint asserts monetary damages against the District in connection with the takings count.

Courts have repeatedly held that *Younger* abstention is inappropriate where there are no state criminal prosecution, civil litigation, or administrative enforcement proceedings pending against the party that seeks to enjoin those proceedings in federal court.  *See Younger v. Harris*, 401 U.S. 37 (1971) (federal suit seeking to enjoin an ongoing state criminal prosecution against the plaintiff); *NOPSI*, 491 U.S. 368 ("Although our concern for comity and federalism have led us to expand the protection of *Younger* beyond state criminal prosecutions, to civil enforcement proceedings, . . . it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action.  Such a broad abstention

would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."); *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 69-70 (1st Cir. 2005) (declining to exercise *Younger* abstention in hospital's action seeking injunction requiring Puerto Rico to provide Medicaid payments to hospital, despite hospital's pending state court action seeking Medicaid reimbursements from Puerto Rico because "[t]his is not an enforcement proceeding brought by the state or an agency against [the plaintiff]").[1]  Further, the Supreme Court has held that abstention is inappropriate in suits seeking monetary damages, such as the instant case.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721, 731 (1996) ("Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief sought is equitable or discretionary"); *See also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) ("Damages for a constitutional violation are a legal remedy").

Defendants' reliance upon *JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004) is wholly misguided.  JMM involved an administrative enforcement proceeding against an adult video store that had violated the zoning laws by operating a sexually-oriented business in a zone not designated for such use.  378 F.3d 1119.  Even though JMM's certificate of occupancy

---

[1] *Accord Bridges*, 84 F.3d 476 ("For the *Younger* doctrine to apply, a rigid three-prong test must be satisfied: first, a federal court may dismiss a federal claim only when there are ongoing state proceedings that are judicial in nature; second, the state proceedings must implicate important state interests; third, the proceedings must afford an adequate opportunity in which to raise the federal claims"); *LaShawn v. Kelly*, 990 F.2d 1319, 1323 (D.C. Cir. 1993) (*Younger* abstention did not apply to class action by children in foster care under supervision of the District even though they were parties to ongoing judicial proceedings in the Family Division of the Superior Court); *Washington Legal Clinic for the Homeless v. Kelly*, 1994 WL 823564, at *8, n. 8 (D.D.C. 1994) ("The need or wisdom of extending *Younger* to all constitutional claims that *might* be adjudicated in state as well as federal courts . . . is far more problematical.  This extension would make federal courts cinderellas to their sister state courts in adjudicating federal constitutional rights, their natural area of competence and jurisdiction.") (quoting *Family Div. Trial Lawyers of the Superior Court v. Muoultrie*, 725 F.2d 695, 702 (D.C. Cir. 1984)).

had been revoked by the District and an administrative law judge had issued a cease and desist

order against it, JMM refused to cease its operation.  *Id.* at 1120.  The District thus sued JMM at

the Superior Court to enforce the ALJ's cease and desist order.  *Id.*  When JMM sought to enjoin

the state court and administrative enforcement proceedings against it by filing suit in federal

court, the court denied JMM's motion for a preliminary injunction and dismissed its complaint

on abstention grounds.  The court stated that the "Supreme Court has extended *Younger* to

pending administrative enforcement actions where the state proceedings are judicial in nature

and the state interests are important."  *Id.* at 1126.

The instant case is entirely distinguishable.  Unlike *JMM*, there are no state court or

administrative enforcement proceedings pending against plaintiff that it seeks to enjoin in federal

court.  Indeed, plaintiff is not even a party to the non-judicial agency proceedings involving

GW's application and new campus plan.  Further, plaintiff's First Amended Complaint seeks

monetary damages against the District.  Consequently, abstention is wholly improper in this

case.[2]

---

[2] Defendants' reliance on *American Towers, Inc. v. Williams*, 146 F. Supp.2d 27 (D.D.C. 2001), and *Bannum, Inc. v. District of Columbia Board of Zoning Adjustment*, 2005 WL 1076179 (D.D.C. 2005), is similarly to no avail.  Abstention was not an issue in *American Towers*.  The passage quoted in defendants' brief (Mot. to Dismiss, at 8) from *American Towers* is from the court's dismissal of the plaintiff's equal protection claim because rational basis supported the District's revocation of a permit issued to the builder of a tower.  *Bannum* is distinguishable from the instant case.  *Bannum* involved a federal suit seeking to enjoin administrative enforcement proceedings against the plaintiff arising from the District's revocation of a building permit and certificate of occupancy.  Unlike *Bannum*, the Foggy Bottom Association is not seeking to enjoin administrative enforcement proceedings pending against it.  Indeed, plaintiff is not even a party to the non-adjudicatory agency proceedings concerning GW's application and new campus plan.

## 2.     Plaintiff Asserts A Viable Claim For A Regulatory Takings

Amendment of this complaint would not be futile because plaintiff can pursue a viable

action against the District for plaintiff's regulatory takings claim and the other counts set forth in

the First Amended Complaint.  Disposition of plaintiff's regulatory takings count requires a fact-

specific and individualized inquiry that simply cannot be resolved "as a matter of law" (Def.'s

Mot. to Dismiss, at 18).  Defendants' contention to the contrary was rejected by the Supreme

Court in *City of Monterey*, 526 U.S. at 720-21:

> Almost from the inception of our regulatory takings doctrine, we have held that
> whether a regulation of property goes so far that there must be an exercise of
> eminent domain and compensation to sustain the act depends upon the particular
> facts.  Consistent with this understanding, we have described determinations of
> liability in regulatory takings cases as essentially "ad hoc, factual inquiries,"
> requiring complex factual assessments of the purposes and economic effects of
> government actions. . . .  [W]e hold that the issue whether a landowner has been
> deprived of all economically viable use of his property is a predominantly factual
> question. . . .  [I]n actions at law . . . this question is for the jury.
> (internal marks and citations omitted)

*See Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998) (the taking "inquiry, by its nature,

does not lend itself to any set formula, and the determination whether justice and fairness require

the economic injuries caused by public action must be compensated by the government, rather

than remain disproportionately concentrated on a few persons, is essentially ad hoc and fact

intensive"); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) ("In 70-odd

years of succeeding regulatory takings jurisprudence, we have generally eschewed any set

formula for determining how far is too far, preferring to engage in essentially ad hoc, factual

inquiries"); *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979) (the Supreme Court "has

examined the 'taking' question by engaging in essentially ad hoc, factual inquiries that have

identified several factors—such as the economic impact of the regulation, its interference with

reasonable investment backed expectations, and the character of the governmental action").

This Court cannot resolve plaintiff's takings claim without the benefit of discovery, the consideration of expert reports, and an individualized analysis of the facts involved. Plaintiff submits that its regulatory takings claim is so fact-specific and multifaceted, hinging on numerous economic, demographic, environmental, and transportation-related factors, that it must be resolved at trial. Dismissal of plaintiff's takings count on the pleadings would deprive plaintiff of a full and fair opportunity to present its claim and be wholly improper. As the court held in *Mekuria v. Washington Metropolitan Area Transit Auth.*, 975 F. Supp. 1, 7 (D.D.C. 1997):

> It is axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. This admonition is perhaps nowhere so apt as in cases involving claims of inverse condemnation where the Supreme Court has admitted its inability to develop any "set formula" for determining when compensation should be paid resorting instead to essentially "ad hoc, factual inquiries" to resolve this difficult question. While dismissal of a complaint for inverse condemnation is not always inappropriate, such a dismissal must be reviewed with particular skepticism to assure that plaintiffs are not denied a full and fair opportunity to present their claims. (internal marks and citation omitted)

*Accord Hornstein v. Barry*, 560 A.2d 530, 538 (D.C. 1989) (reversing grant of summary judgment on regulatory takings count because "the record as to uncompensated taking is deficient, which is problematical in a situation in which . . . an *ad hoc* case by case inquiry is called for."); *Silverman*, 727 F.2d 1126 (reversing trial court's dismissal of regulatory takings case and stating that in light of the Supreme Court's "emphasis upon an individualized inquiry in takings clause cases, this claim should not be dismissed on jurisdictional grounds").

Defendants' contention that there can be no taking of plaintiff's property as a result of the District's failure to enforce the zoning laws against GW, because the District's actions do not deny plaintiff all economically viable use of its land (Def.'s Mot. to Dismiss, at 16), reflects a fundamental misconception of the Supreme Court's regulatory takings doctrine announced in

*Penn Central* and its progeny.  The very same argument raised by the District here was rejected in *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), where the Supreme Court held:  "Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action."  *Id.* at 617.  In *Palazzolo*, the Supreme Court found that there was no regulatory taking under *Lucas* when the government regulation precluding the owner from constructing a beach club on 18 acres of wetlands did not deprive him all economically viable use of his land (despite its diminution in value from $3.5 million to $200,000).  The Supreme Court, nonetheless, remanded the case to the trial court because it had failed to examine whether a regulatory taking had occurred under *Penn Central*.  *Id.* at 632.

Defendants have also mischaracterized plaintiff's takings claim by stating that it merely alleges diminution of value of plaintiff's property.  Plaintiff's complaint (and First Amended Complaint), however, indicate that plaintiff's takings claim concerns the increasing inability of plaintiff to use its property for its intended purpose—residential use—by the District's failure to halt GW from increasingly transforming Foggy Bottom to a university campus.  Comp. ¶¶ 94, 96-98; First Amend. Comp. ¶¶ 87-93.

Plaintiff's First Amended Complaint further alleges that the District's failure to enforce its own regulations has resulted in a physical invasion of plaintiff's property amounting to a taking under *Loretto*, 458 U.S. 419.  First Amend. Comp. ¶¶ 90-93.  In *Loretto*, the Supreme Court held that New York's law requiring landlords to allow television cable companies to emplace cable facilities in their apartment buildings constituted a taking even though the

12

facilities occupied at most 1.5 cubic feet of the landlord's property. *Id.* at 435-440. The District's failure in this case to enforce the Final Order against GW despite its continuing violations of the same and invasion of plaintiff's property similarly amounts to a taking. *See, e.g., United States v. Causby*, 328 U.S. 256, 265 (1946) (government regulation authorizing military aircraft to fly over plaintiff's chicken farm constituted a taking because it deprived the owner of the intended use of his land and resulted in "an intrusion so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it") (cited in *Lucas*, 505 U.S. at 1015); *Kaiser Aetna*, 444 U.S. at 178 (imposition of navigational servitude on private marina was a regulatory taking, as "the Government's attempt to create a public right of access to the improved pond goes so far beyond ordinary regulation or improvement for navigation as to amount to a taking").

Defendants' contention that because GW's takings claim against the District was ultimately rejected by the federal courts, plaintiff's takings claim must outright be rejected, highlights the District's simplistic and inapt analysis of the Supreme Court's takings jurisprudence. GW, a university subject to the District's zoning laws, clearly occupies a different position than plaintiff, an association composed of owners and lessors of residential property in a neighborhood threatened by GW's continuing violations of the zoning laws and campus expansion. The District's utter inaction and favoritism of GW despite its egregious disregard of the Final Order are among reasons why plaintiff has been compelled to institute this action. Defendants' argument that "the results of that regulation" (the Final Order) cannot "constitute a taking of the neighbor's property," underscores the District's failure to acknowledge GW's continuing violations of the Final Order and the District's zoning laws. Plaintiff does not argue that the "results" of the Final Order have amounted to a taking of its

property. Instead, plaintiff alleges that the District's *failure to enforce* the Final Order against GW, despite its egregious violation of the same, has deprived plaintiff of the intended use of its property (residential use), conflicted with plaintiff's reasonable investment-backed expectations, and resulted in diminution of value of plaintiff's property, which together constitute a regulatory taking under *Penn Central*. And as discussed above, plaintiff's First Amended Complaint alleges a partial physical invasion amounting to a taking under *Loretto*.

Plaintiff further alleges significant violations of the zoning laws that are actionable under DC ST. § 6-641.09, authorizing plaintiff to seek injunctive relief to halt GW's continuing violations of the Final Order. Contrary to defendants' contention, the locality of zoning does not deprive this Court of jurisdiction when federal jurisdiction already exists by virtue of plaintiff's takings claim. *See Silverman*, 727 F.2d 1124 n.4; *District Properties Assocs.*, 743 F.2d 21, 29 & n. 5. *See also First English Evangelical Lutheran Church of Glendale v. Los Angeles*, 482 U.S. 304, 318 (1987) (land-use regulation temporarily depriving owner all economically viable use of his property constituted a taking). This court may exercise supplemental jurisdiction over plaintiff' non-federal claims because they "are so related" to the federal claims that "they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a); *accord Lerner v. Fleet Bank,* 318 F.3d 113, 125 (2nd Cir. 2003).[3]

### 3.    Plaintiff Possesses Associational Standing

Defendants' contention that plaintiff lacks standing is even more tenuous than its claim that plaintiff's suit is barred by *Younger* abstention. Plaintiff is an association composed of

---

[3] Nor does section 6-641.09 limit plaintiff's right of action to the Superior Court. Instead, the statute provides that the District may institute *criminal prosecution* at the Superior Court against those violating the zoning laws. The private right of action contemplated by this statute does not vest the Superior Court with exclusive jurisdiction over section 6-641.09. This Court's supplemental jurisdiction clearly extends to plaintiff's section 6-641.09 claim.

owners and lessors of property in Foggy Bottom, the neighborhood in which GW is located and where it has violated the zoning laws and announced its intent to pursue major construction. Plaintiff clearly has organizational standing to maintain this action on behalf of its members who daily suffer the adverse consequences of GW's violations of the zoning laws and the District's failure to enforce the Final Order. *See National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995) (taxpayer organization challenging constitutionality of statute raising maximum federal and state gift tax rates had associational standing to bring suit on behalf of its members); *accord Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977) (associational standing exists where an organization's members would otherwise have standing to sue on their own right, the interests sought to be protected by the organization are germane to its purpose, and the claim asserted does not require participation of individual members in the lawsuit). Should GW's campus expansion proceed further in a neighborhood already acknowledged by the District to be beyond "the tipping point" (despite GW's continuing violations of the Final Order), plaintiff's members would suffer further and increasing injury. Indeed, if residents living next to a construction project cannot maintain an action alleging injuries suffered from the effects of the construction on their properties, the doctrine of standing would be a jurisdictional bar to every suit brought by a private party. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n. 7 (1992). There can be no doubt that plaintiff possesses associational standing to maintain this action on behalf of its members. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 126 S. Ct. 1297, 1303 n. 2 (2006) (association composed of law schools had standing to maintain constitutional challenge to Solomon Amendment on behalf of its members).

The injuries suffered by plaintiff are also concrete and individualized. As a result of GW's violations of Condition 8 of the Final Order, GW enrolls and employs thousands more students and faculty than those permitted by the Campus Plan. These violations cause enormous increases in pedestrian and automobile traffic in Foggy Bottom, increase pollution and noise, and degrade the character of this residential neighborhood. As a result of GW's violations of Conditions 9(a) and 9(b) of the Final Order, GW fails to provide the requisite on-campus housing for its vastly over-enrolled student body. These violations place tremendous pressure on the Foggy Bottom housing market, which is not zoned for such institutional dormitory use, and unable to sufficiently absorb the students. *See* BZA March 29, 2001 Order ("student renters have flooded the private market, turning apartment houses into *de facto* dorms, and row houses into informal frat houses"), Ex. A to Shaibani Affid. at 9.

Defendants' contention that plaintiff's injuries are generalized because they are suffered by "everyone in the neighborhood," including GW's students and staff, office workers, and tourists (Def.'s Mot. to Dismiss, at 15) is without merit. *See United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688 (1973) ("To deny standing to persons who are in fact injured because many others are also injured, would mean that the most injurious and widespread government actions could be questioned by nobody. We cannot accept that conclusion"). The doctrine of generalized grievances is pertinent to cases in which plaintiffs assert standing as taxpayers to object to governmental expenditure of funds. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, -- S. Ct. -- 2006 WL 1310731 (May 15, 2006). In contrast, plaintiff's members here occupy a distinct position because they reside in Foggy Bottom and have statutory and property rights recognized by the District's zoning laws, regulations, and the Comprehensive Plan. The violation of these statutory and constitutional rights gives plaintiff

standing. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing"). For this reason alone, defendants' contention that plaintiff does not have a right to be free from increased traffic, noise, or incursion on open space (Def.'s Mot. to Dismiss, at 19) lacks merit. Plaintiff's injuries arise, in part, because of GW's violations of the District's regulations and laws governing universities, and the District's failure to enforce its laws against GW. Plaintiff's deprivation to use its residential property for its intended purpose as a result of GW's violations of the zoning laws is clearly sufficient to confer standing upon plaintiff.

## CONCLUSION

For the above reasons, plaintiff respectfully requests the Court to grant its motion for leave to amend.

Respectfully submitted,

Dated: May 26, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Ave, NW, 9th Fl.
Washington, DC 20036
Tel: (202) 862-4300

*Attorneys for Foggy Bottom Ass'n*

17

CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2006, I electronically filed "PLAINTIFF'S MOTION

FOR LEAVE TO AMEND COMPLAINT" and its attached "FIRST AMENDED

COMPLAINT," and that service was thus effected upon defendants' counsels in accordance with

Local Civil Rule 5.4(d).


/s/ William Bode