## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| FOGGY BOTTOM ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )  Court No. 06 Civ. 0746 (PLF) |
| DISTRICT OF COLUMBIA OFFICE OF | ) |
| PLANNING, *et al.*, | ) |
| | ) |
| Defendants. | ) |

_____)

### PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY
### AND OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY


Dated: May 26, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Ave, NW, 9th Fl.
Washington, DC 20036
Tel: (202) 862-4300

*Attorneys for Foggy Bottom Ass'n*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCOVERY ..................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCOVERY ..................................................3

STATEMENT OF FACTS ...............................................................................4

    GW's Violations of the Final Order...........................................................4

    GW's Inconsistent "Headcount" Statistics ...............................................6

    Defendants' Unlawful Conduct ...............................................................7

    Plaintiff's Request for Expedited Discovery ...............................................8

ARGUMENT ...............................................................................................9

    I.    Plaintiff is Entitled to Expedited Discovery ................................9

        A.    Standard for Expedited Discovery .............................9

        B.    Plaintiff is Entitled to Expedited Discovery Regarding
            GW's Violations of the Final Order ...........................10

        C.    Plaintiff is Entitled to Expedited Discovery Regarding the
            Environmental Impact of GW's Application
            and New Campus Plan .............................................12

        D.    Plaintiff Is Entitled To Expedited Discovery Because It Is
            In All Parties' Best Interest To Expeditiously Resolve
            Plaintiff's Motion For A Preliminary Injunction ...............14

    II.    Defendants' Request for A Stay of Discovery Should Be Denied.........16

        A.    Defendants' Motion to Dismiss is Moot ...................17

        B.    Plaintiff's Regulatory Takings Count Cannot Be Resolved
            On The Pleadings........................................................18

C.    Plaintiff Will Be Harmed If Discovery is Stayed...............................20

## **TABLE OF AUTHORITIES**

### **CASES**

*Autozone Development Corp., et al. v. The District of Columbia, et al.*, 2006 U.S. Dist. LEXIS 11731, 14 (D.D.C. 2006) ....................................................................................17

*Chavous v. D.C. Financial Responsibility & Management Assistance Authority*, 201 F.R.D. 1, 3 (D.D.C. 2001) ...................................................................................16,19,20

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720-21 (1999) ......................................................................................18

*Ellsworth Associates, Inc., et al. v. United States of America, et al.*, 917 F. Supp. 841 (D.D.C. 1996) ................................................................................8,9,15

*Foggy Bottom Association v. D.C. Board of Zoning Adjustment*, 791 A.2d 64, 73 (D.C. 2002) ...........................................................................12

*Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979)...............................................18

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)...........................18

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) .........................18

*Mekuria v. Washington Metropolitan Area Transit Auth.*, 975 F. Supp. 1, 7 (D.D.C. 1997) ....................................................................................19

*Optic-Electronic Corp. v. United States of America, et al.*, 683 F. Supp. 269, 271 (D.D.C. 1987) ..........................................................................14

*Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, 1998 U.S. Dist. LEXIS 10511, 4 (E.D. Pa. 1998) ...........................................9

*The George Washington University v. District of Columbia, et al.*, 391 F. Supp.2d 109 (D.D.C. 2005) ..................................................................................18

*The George Washington University v. District of Columbia*, 318 F.3d 203 (D.C. Cir. 2003) ......................................................................................18

*The George Washington University v. District of Columbia, et al.*, 148 F. Supp. 2d 15 (D.D.C. 2001) ..................................................................................18

### **STATUTES**

DC ST. § 8-109..............................................................................................12

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOGGY BOTTOM ASSOCIATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) Court No. 06 Civ. 0746 (PLF) | |
| DISTRICT OF COLUMBIA OFFICE OF ) | |
| PLANNING, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY
AND OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY**

The Foggy Bottom Association ("FBA"), through its counsel, Bode & Grenier,

LLP, respectfully requests that the Court grant its motion for expedited discovery.

Specifically, Plaintiff asks the Court:

1) to adopt the Proposed Expedited Discovery Schedule set forth below and reflected
   in the attached Proposed Order;

2) to hold that Plaintiff's proposed expedited discovery, attached to this motion as
   *Exhibits* 1 through 8, shall be governed by the Proposed Expedited Discovery
   Schedule; and

3) to grant Plaintiff an extension of time to file its reply to Defendants' May 19,
   2006 Opposition to Preliminary Injunction, so that Plaintiff may pursue expedited
   discovery in furtherance of said reply.

Furthermore, Plaintiff requests that the Court deny Defendants' May 23, 2006

Motion to Stay Discovery.

In support of this motion and opposition, Plaintiff relies upon the attached

memorandum of points and authorities.

ORAL ARGUMENT REQUESTED.

1

## PROPOSED EXPEDITED DISCOVERY SCHEDULE

For all discovery served pursuant to this expedited discovery schedule, the following conditions apply:

1. The party upon whom interrogatories are served pursuant to Fed. R. Civ. P. 33 shall serve a copy of the answers, and objections if any, within <u>14 days</u> after the service of the interrogatories.

2. The party upon whom requests for admission are served pursuant to Fed. R. Civ. P. 36 shall serve a copy of the answers, and objections if any, within <u>14 days</u> after the service of the request.

3. The party upon whom a request for production of documents and things is served pursuant to Fed. R. Civ. P. 34 shall serve a written response within <u>14 days</u> after the service of the request.

4. 14 days shall be considered a "reasonable time for compliance" with subpoenas issued pursuant to Fed. R. Civ. P. 30(b)(6) and/or Fed. R. Civ. P. 45.

5. Expedited Discovery shall close thirty (30) days after the date of the Court's Order regarding Plaintiff's Motion for Expedited Discovery.

Respectfully submitted,

Dated: May 26, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Ave, NW, 9th Fl.
Washington, DC 20036
Tel:  (202) 862-4300

*Attorneys for Foggy Bottom Ass'n*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND
## OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

Plaintiff, the Foggy Bottom Association ("FBA"), respectfully requests that the Court grant its motion for expedited discovery ("Plaintiff's Motion") because:

1.      Plaintiff requires the proposed expedited discovery to ensure a full and fair hearing on the merits of Plaintiff's pending Motion for Preliminary Injunction, particularly given the inconsistent information published by the George Washington University ("GW") relating to the extent of its unlawful conduct, Defendants' failure to audit such information despite public promises to do so, and Plaintiff's need to certify the veracity of published information so as to establish an admissible evidentiary record;

2.      Plaintiff's proposed expedited discovery is narrowly tailored to the issues relating to Plaintiff's pending Motion for Preliminary Injunction, and such discovery does not unduly burden Defendants or third-parties;

3.      Plaintiff's proposed expedited discovery will better enable the court to judge the parties' interests and respective chances for success on the merits at the hearing on Plaintiff's pending Motion for Preliminary Injunction; and

4.      It is in all parties' best interest to expeditiously resolve Plaintiff's pending Motion for Preliminary Injunction, given the upcoming September 14, 2006 Zoning Commission hearing as well as the complex and long-term nature of GW's application and new campus plan.

Furthermore, Plaintiff requests the Court to deny Defendants' May 23, 2006 Motion to Stay Discovery ("Defendants' Motion") because:

1.      Defendants' Motion to Dismiss, the alleged success of which constitutes the primary basis for Defendants' Motion, is moot as a result of Plaintiff's First Amended Complaint;

2.      Plaintiff's regulatory takings count cannot be resolved on the pleadings, and Defendants' Motion to Dismiss is unlikely to succeed on the merits, because regulatory takings claims require individualized, fact-specific analysis; and

3.      Plaintiff will be seriously and irreparably harmed if discovery is stayed.

## STATEMENT OF FACTS

This action arises from The George Washington University's violations of the District of Columbia Board of Zoning Adjustment's ("BZA's") Corrected Final Order on Remand dated January 23, 2002 (the "Final Order"), and GW's February 16, 2006 submission of "an application to the District of Columbia Zoning Commission for first stage review and approval of a planned unit development and zoning map amendment for the Foggy Bottom Campus" and "the Foggy Bottom Campus Plan:  2006-2025" ("application and new campus plan").

**GW's Violations of the Final Order**

The Final Order caps the number of GW students and faculty, and requires GW to provide on-campus housing for a significant  percentage of enrolled students.  The Final Order also prohibits Defendant Office of Planning and Defendant Zoning Commission from processing applications by GW unless GW is in substantial compliance with the student/faculty caps and the on-campus housing requirement.  Ellen M. McCarthy, Director of Defendant Office of Planning, states that Defendant Office of Planning "can't proceed with further action ... on GW's part if they're not in compliance [with the Final

Order]." *Exhibit* 9 at 28.  Ms. McCarthy also states that "*if it turns out that [GW is] not in compliance, then ... the university has to go back into compliance before they could proceed with [the application and new campus plan].*" *Id.* (emphasis added).  The Final Order's student/faculty caps seek to limit the negative environmental impact on the Foggy Bottom neighborhood caused by increased GW-related traffic, pollution, noise, and overpopulation.  The Final Order also seeks to protect the residential character of the residentially-zoned Foggy Bottom neighborhood, which is threatened by GW's extensive growth.  The Final Order's restrictions on Defendant Office of Planning and Defendant Zoning Commission are intended to provide the primary incentives for GW's compliance with the Final Order's conditions.

As set forth more fully in Plaintiff's April 15, 2006 Motion for Preliminary Injunction, the Final Order caps GW's student headcount at 20,000 students, limits GW's faculty to 2,236 faculty members, and requires GW to provide at least 7,190 beds on campus or outside of Foggy Bottom for its full-time undergraduate students.  The student-housing requirement is numerically linked to the student headcount – as headcount increases, so does the student-housing requirement.

Despite these plain requirements, GW's present student headcount exceeds the 20,000-student cap by more than 7,000 students, and GW employed approximately 4,500 faculty in Fall 2005 – *more than double* the permissible number of faculty.  In addition, GW currently provides only 5,580 on-campus beds and no university-supplied beds outside of Foggy Bottom to its full-time undergraduate students.  GW is unquestionably not in substantial compliance with the requirements of the Final Order.  As set forth more fully in Plaintiff's April 15, 2006 Motion for Preliminary Injunction, GW has failed to

comply with the Final Order for several years. See Motion for Preliminary Injunction at 5-6. Therefore, Defendant Office of Planning and Defendant Zoning Commission are prohibited from processing GW's applications.

## GW's Inconsistent "Headcount" Statistics

GW reports contradictory "headcount" statistics in various publications. For example, GW's Office of Institutional Research ("OIR"), the GW office responsible for compiling statistics, issued in Fall 2005 "Enrollment and Persistence" statistics which indicate that GW enrolls 27,051 students – more than 7,000 in excess of the Final Order's cap. Elsewhere, OIR states that GW's "unduplicated enrollment" in Fall 2005 was 24,099, and that GW's "on-campus enrollment" for the same period was 20,318. GW states, in a document filed with the United States Department of Education, that its enrollment for the same period was 24,092. In its proposed campus plan, GW alleges that the "Total GW Student Body" in Fall 2005 was 24,099. GW also reports student headcount statistics to the United States Internal Revenue Service on the IRS Form 990. GW's 2003 IRS Form 990 indicates that GW enrolled 23,417 students. Such statistics are not publicly available for the 2005-2006 academic year – such data is sought by Plaintiff in its proposed expedited discovery. Even these contradictory calculations exclude various categories of students who number in the thousands, *e.g.* foreign exchange students, English as a second language students, School Without Walls students, students abroad, continuous enrollment students, and Mt. Vernon housed students.

**Defendants' Unlawful Conduct**

On April 10, 2006, Defendant Office of Planning recommended that Defendant Zoning Commission approve and set down for public hearing GW's application and new campus plan. Defendant Office of Planning made this recommendation without requiring the development of an Environmental Impact Statement ("EIS") for GW's proposed multi-million dollar development. GW's proposed major development, as set forth in the application and new campus plan, seeks to permanently alter the scale and character of the Foggy Bottom neighborhood. This proposed development encompasses six square blocks in Foggy Bottom. The application and new campus plan increase population density, and dramatically increase commercial and institutional land use in Foggy Bottom. GW's proposed development essentially transforms Foggy Bottom from a residential neighborhood to a huge college campus. Defendant Zoning Commission set down for public hearing GW's application. The hearing is scheduled for four days, beginning on September 14, 2006.

Defendants took these actions despite GW's clear violations of the Final Order, and the Final Order's explicit prohibitions of such actions by Defendants. Defendants also took these actions despite objections from the Advisory Neighborhood Council, the Foggy Bottom Association, and other citizen groups.

As a result of GW's serious discrepancies regarding its reported "student headcount," Defendant Office of Planning and Defendant Zoning Commission stated that it would employ "independent auditor" to audit GW's headcount statistics, and that Defendants "can't proceed with further action [on the application and new campus plan]

7

... if [GW is] not in compliance [with the Final Order]." *Exhibit* 9 at 28, 30.  Despite the passage of more than one month since the, April 20, 2006 acknowledgement of the necessity of an independent auditor, Defendants have failed to take steps to perform such an audit.  Instead, it appears that defendants prefer to ignore GW's violations of the Final Order by contending that the order was ambiguous as to the meaning of the phrase "student headcount."  However, no such ambiguity exists in the Final Order.  GW's attempted redefinition of the phrase student headcount in its application and new campus plan makes a mockery of the Final Order.  The Court should not allow defendants to acquiesce in GW's violations of the Final Order by redefining its terms.

**Plaintiff's Request for Expedited Discovery**

Plaintiff seeks expedited discovery, as set forth more fully below, so that the Court may adjudicate Plaintiff's Motion for Preliminary Injunction with full knowledge of GW's true student headcount.  Plaintiff also seeks expedited discovery so that documents can be certified and authenticated, thus developing a full and admissible evidentiary record for the hearing on Plaintiff's Motion for Preliminary Injunction.  An accurate headcount is essential to determine the extent of GW's violations of the Final Order.  An accurate headcount is also necessary to determine the degree of the negative environmental impacts caused by the GW student population.  Such environmental impacts are relevant to the EIS-related portions of Plaintiff's Motion for Preliminary Injunction.

## ARGUMENT

**I.      Plaintiff is Entitled to Expedited Discovery**

**A.      Standard for Expedited Discovery**

"Courts have wide discretion with respect to discovery, and Federal Rule of Civil Procedure 34(b) expressly provides that courts may expedite discovery." *Ellsworth Associates, Inc., et al. v. United States of America, et al.*, 917 F. Supp. 841, 844 (D.D.C. 1996).  "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Id*.  Further, "courts have routinely granted expedited discovery in cases involving challenges to [the] constitutionality of government actions." *Id*.

"Expedited discovery has been ordered where it would better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, 1998 U.S. Dist. LEXIS 10511, 4 (E.D. Pa. 1998) (internal quotations and citations omitted) (attached hereto as *Exhibit* 10).  Expedited discovery is appropriate when the requesting party narrowly tailors the requested discovery to the specific issues that will be determined at the preliminary injunction hearing. *See Ellsworth*, 917 F. Supp. at 844; *cf. Philadelphia Newspapers*, 1998 U.S. Dist. LEXIS 10511 at 6.

**B.**    **Plaintiff is Entitled to Expedited Discovery Regarding GW's Violations of the Final Order**

The Final Order places caps on student enrollment and the employment of faculty and staff at GW.  Pursuant to Condition 8 of the Final Order:

> Student enrollment (headcount) over the life of the plan shall not exceed 20,000 students and the student full-time equivalent shall not exceed 16,553.  The number of full-time equivalent faculty and staff shall not exceed 1,550 and 9,000 respectively, while the headcounts for faculty and staff shall not exceed 2,236 and 10,293 respectively.

BZA Order dated March 29, 2001.

Noting the "adverse consequences of [GW's] failure to supply sufficient housing for its full-time undergraduate students on campus," the Final Order requires that GW provide housing on-campus or outside of Foggy Bottom for 70% (5,600) of the first 8,000 undergraduate students, and that the university provide one on-campus or non-Foggy Bottom bed for every full-time undergraduate student over 8,000.  Currently, these provisions require that GW provide at least 7,190 beds on campus or outside of Foggy Bottom for its full-time undergraduate students.

Plaintiff requires expedited discovery so that the Court may fully and fairly consider Plaintiff's Motion for Preliminary Injunction.  There is no question that GW is in gross violation of the Final Order's caps on student and faculty headcounts, as well as the Final Order's student-housing requirements.  However, the precise degree of GW's violations is unclear.  This uncertainty is wholly the result of GW's inconsistent public reporting of its student headcount.  Defendants have failed to audit GW's contradictory "headcount" statistics, and have not attached certified copies of any GW "headcount" statistics to any filings in this matter.  Therefore, Plaintiff requires expedited discovery so

that it can: 1) adduce GW's true student headcount; and 2) determine the veracity of the various documents published by GW that refer to "headcount."

Plaintiff seeks injunctive relief partly because of GW's violations of the student headcount and housing requirements set forth in the Final Order. Given the uncertainty created by GW's inconsistent headcount reporting, Plaintiff requires expedited discovery to determine the true GW student headcount, and thereby determine: 1) the degree of GW's non-compliance with the Final Order's student headcount cap; and 2) the degree of GW's non-compliance with the Final Order's student-housing requirement, which is contingent upon the student headcount. Both factual determinations bear directly on specific issues that will be determined at the preliminary injunction hearing.

Indeed, all of Plaintiff's proposed expedited discovery, attached hereto as *Exhibits* 1 through 8, consist of interrogatories, document production requests, and subpoenas narrowly tailored to identify facts regarding the specific issues that will be determined at the hearing on Plaintiff's Motion for Preliminary Injunction. Plaintiff's proposed expedited discovery includes interrogatories, document production requests, and subpoenas narrowly tailored to identify GW's true student and faculty headcounts, as well as the factual bases for such calculations. Such information will better enable the Court to judges the parties' interests and respective chances for success on the merits.

For example, Plaintiff seeks documents relating to GW's numerous inconsistent student "headcounts," as well as information regarding the calculation of such "headcounts," including GW's current filings with the U.S. Internal Revenue Service and the U.S. Department of Education. Plaintiff also seeks to depose individuals who have knowledge of GW's various "headcounts." Such information relates directly to

11

Plaintiff's Motion for Preliminary Injunction, because GW's violations of the Final Order constitute major bases for Plaintiff's request for preliminary injunctive relief.  As a result of Defendant Office of Planning's failure to audit GW's inconsistent "headcount" calculations, and its adoption of GW's redefinition of the phrase "student headcount" in the Final Order, Plaintiff's proposed expedited discovery is the sole avenue by which the Court can ascertain GW's true headcount, and therefore the extent of the university's violations of the Final Order.

Plaintiff's proposed expedited discovery schedule provides ample time for Defendants and third-parties to provide the requested information. *See Plaintiff's Proposed Discovery Schedule*, *supra* at 2 (providing 14 days for parties to respond to interrogatories, requests for production of documents, and interrogatories, and providing 14 days notice of all depositions and subpoenas).

### C.    Plaintiff is Entitled to Expedited Discovery Regarding the Environmental Impact of GW's Application and New Campus Plan

The requirement for submission of an EIS is grounded in the District of Columbia Environmental Policy Act, DC ST. § 8-109 *et seq.*, which requires the District to "prepare or cause to be prepared . . . a detailed EIS at least 60 days prior to implementation of the proposed major action" whenever it "proposes or approves a major action that is likely to have substantial negative impact on the environment."  DC ST. § 8-109.03(a).  A "major action" is "any action that costs over $1,000,000 and that may have a significant impact on the environment."  *Id.* § 8-109.02(2).

Defendant Office of Planning failed to require an EIS regarding GW's application and new campus plan, despite the fact that GW's proposals cost well in excess of $1,000,000 and will surely have a negative impact on the environment of Foggy Bottom.

The District of Columbia Department of Health and the D.C. Court of Appeals have acknowledged that "there [i]s no remaining 'air margin'" in the Foggy Bottom neighborhood. *Foggy Bottom Association v. D.C. Board of Zoning Adjustment*, 791 A.2d 64, 73 (D.C. 2002). Increased population density, and the conversion of residential property to institutional uses, degrades the environmental quality, including the air quality, of Foggy Bottom. GW's violations of the Final Order's headcount caps, and the additional population density increases contemplated in the application and new campus plan, threaten the fragile environmental quality of the Foggy Bottom neighborhood.

Plaintiff requires expedited discovery so that the Court may fully and fairly consider Plaintiff's Motion for Preliminary Injunction. Plaintiff seeks injunctive relief partly based upon Defendant Office of Planning's failure to require an environmental impact screening form for GW's proposed long-term, multi-million dollar project. GW's unlawful growth has negatively impacted the Foggy Bottom neighborhood through increased traffic, pollution, noise, and other factors. As a result of GW's contradictory "headcount" statistics, it is impossible, without expedited discovery, to assess the extent of GW's present and future environmental impacts on Foggy Bottom. Plaintiff therefore requires expedited discovery to: 1) determine the true GW headcount; 2) determine the degree of GW's present environmental impacts; and 3) estimate the degree of GW's likely future environmental impacts. These factual determinations bear directly on specific issues that will be determined at the preliminary injunction hearing, including the classification of the application and new campus plan as a "major action," and the impropriety of Defendant Office of Planning's failure to require an environmental impact screening form.

Plaintiff's proposed expedited discovery includes interrogatories, document production requests, and subpoenas narrowly tailored to identify GW's present and future environmental impacts on Foggy Bottom.  Such information will better enable the Court to judges the parties' interests and respective chances for success on the merits.

For example, Plaintiff seeks information regarding the December 7, 1999 Department of Health memorandum which determined that the Foggy Bottom neighborhood is at an environmental "tipping point," as well as documents regarding that memorandum's supporting documentation.  Plaintiff also seeks documents relating to GW's numerous inconsistent "headcounts," which relate to the impact of GW's students and faculty on the Foggy Bottom neighborhood.  Plaintiff further seeks information regarding any recent environmental studies relating to the GW campus and Foggy Bottom.  Such information relates directly to Plaintiff's Motion for Preliminary Injunction, because Defendant Office of Planning's failure to require an environmental impact screening form constitutes a major basis for Plaintiff's request for preliminary injunctive relief.  Plaintiff's proposed expedited discovery will assist the Court's determination of this claim.

> **D.      Plaintiff Is Entitled To Expedited Discovery Because It Is In All Parties' Best Interest To Expeditiously Resolve Plaintiff's Motion For A Preliminary Injunction**

The Court should grant Plaintiff's motion for expedited discovery because "it is in the best interest of all parties to have this case resolved as soon as possible." *Optic-Electronic Corp. v. United States of America, et al.*, 683 F. Supp. 269, 271 (D.D.C. 1987).  Like the circumstances at issue in *Optic-Electronic*, the expeditious resolution of the present dispute is in the best interest of all parties.

14

GW's improper application and new campus plan is scheduled to be heard before the Zoning Commission over the course of four days, beginning on September 14, 2006. Plaintiff's Motion for Preliminary Injunction asks the Court, *inter alia*, to enjoin the Zoning Commission from considering or approving GW's application and new campus plan until GW complies with the Final Order, and an environmental impact screening form is issued. As the Office of Planning has publicly announced, the Final Order precludes the District from entertaining GW's application and new campus plan if GW is in violation of the order. Plaintiff has submitted evidence to the Court indicating that GW is in gross violation of the Final Order. It is therefore in all parties' best interest to resolve Plaintiff's Motion for a Preliminary Injunction well in advance of the Zoning Commission hearing date.

As set forth above, Plaintiff's proposed expedited discovery includes interrogatories, document production requests, and subpoenas narrowly tailored to identify facts that are relevant to the Court's adjudication of Plaintiff's Motion for a Preliminary Injunction. Plaintiff seeks discovery which will shed light upon GW's true student and faculty headcounts (and thus GW's compliance with the Final Order), as well as the environmental impacts of GW's present violations and proposed future increases in population density and major construction in Foggy Bottom. Such information relates directly to Plaintiff's Motion for a Preliminary Injunction, because GW's violations of the Final Order and the Office of Planning's failure to follow the District's environmental regulations constitute major bases for Plaintiff's request for preliminary injunctive relief. Therefore, the Court should grant Plaintiff's request for expedited discovery to ensure

that Plaintiff's Motion for a Preliminary Injunction is fairly adjudicated well in advance

of the September 14, 2006 hearing.

## II.     Defendants' Request for A Stay of Discovery Should Be Denied

"A party opposing discovery bears the burden of showing why discovery should be

denied." *Ellsworth*, 917 F. Supp. at 845.  Opposition to discovery is premature when it "delves

into the merits of [a plaintiff's] claims." *Ellsworth*, 917 F. Supp. 841 at 845.  Discovery may be

limited only when "good cause" is established by the requesting party.  *See Id*.; *see also*

Defendants' Motion at 2.  "A bald assertion by a defendant that its motion to dismiss will be

granted, or that discovery would be burdensome, is generally insufficient to justify the entry of

an order staying discovery." *Chavous v. D.C. Financial Responsibility & Management*

*Assistance Authority*, 201 F.R.D. 1, 3 (D.D.C. 2001) (internal quotations and citations omitted).

Defendants' Motion to Stay prematurely and improperly seeks to stay discovery in this

matter.  If Defendants' Motion is granted, it will deprive Plaintiff and the Court of vital

information regarding GW's violations of the Final Order, as well as GW's tremendous negative

environmental impacts upon the Foggy Bottom neighborhood.  Such a deprivation would prevent

the Court from undertaking a full and fair hearing on Plaintiff's Motion for Preliminary

Injunction, because it would permit GW to continue its obfuscation of the university's true

student headcount.  Such a deprivation would also prevent Plaintiff from presenting to the Court

the full and precise extent of Defendants' wrongful behavior in processing GW's application and

new campus plan, and in failing to follow the District's environmental regulations.  Plaintiff's

narrowly tailored discovery is material and directly relevant to the issues before the Court on

Plaintiff's Motion for a Preliminary Injunction.  The Court should not stay discovery, but rather

expedite the process to have a complete and reliable factual record for the hearing on Plaintiff's Motion for a Preliminary Injunction.

As set forth below, Plaintiff's motion for leave to amend (attaching the First Amended Complaint) is concurrently filed on May 26, 2006, and will likely render moot Defendants' Motion to Dismiss. In any event, Defendants' Motion to Dismiss is unlikely to succeed, because the issues raised in the motion are without merit, highly factual in nature, and therefore not amendable to disposition on a motion to dismiss. Defendants' Motion to Stay amounts to nothing more than a series of conclusory and presumptive assertions that they will succeed on their motion to dismiss, and that Defendants will be inconvenienced by discovery. Plaintiff, meanwhile, would be substantially and irreparably harmed by any stay of discovery.

### A.    Defendants' Motion to Dismiss is Moot

An amended complaint supersedes the prior complaint, and becomes the operative pleading upon adoption by the Court. *See Autozone Development Corp., et al. v. The District of Columbia, et al.*, 2006 U.S. Dist. LEXIS 11731, 14 (D.D.C. 2006) (citing *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884)) (attached hereto as *Exhibit* 11). Discovery may be stayed only when the discovery request is "immaterial to the issue before the Court." Defendants' Motion at 2.

Plaintiff's motion for leave to amend (attaching the First Amended Complaint) are concurrently being filed on May 26, 2006. Should the Court grant plaintiff's motion for leave, the First Amended Complaint will be the operative pleading, superseding Plaintiff's original Complaint. Because Defendants' Motion to Dismiss pertains to the superseded pleading, it must be dismissed as moot. *See Autozone,* 2006 U.S. Dist. LEXIS 11731, 14. Defendants' Motion relies heavily upon the unfounded assumption that the Court will dismiss all of Plaintiff's claims.

However, as discussed in Plaintiff's motion for leave to amend, Defendants' challenge to the

Court's jurisdiction is without merit.  Plaintiff's First Amended Complaint, once filed by leave of

Court, would moot Defendants' Motion to Dismiss, and the Court should therefore deny

Defendants' Motion to Stay, which is based on moot arguments.

>    **B.    Plaintiff's Regulatory Takings Count Cannot Be Resolved On The Pleadings**

Defendants' Motion to Dismiss attacks the Court's jurisdiction by improperly

alleging that Plaintiff fails to state a claim under the Takings Clause of the Fifth

Amendment of the U.S. Constitution.  Defendants' jurisdictional attack is unlikely to

succeed on the merits, because federal courts regularly exercise jurisdiction over zoning

disputes when such disputes result in Constitutional takings.  In fact, this very court

exercised jurisdiction over GW and the District of Columbia in a recent litigation

regarding constitutional takings allegations arising from, *inter alia*, the Final Order's

student headcount cap. *See The George Washington University v. District of Columbia, et

al.*, 391 F. Supp.2d 109 (D.D.C. 2005); *The George Washington University v. District of

Columbia*, 318 F.3d 203 (D.C. Cir. 2003); *The George Washington University v. District

of Columbia, et al.*, 148 F. Supp. 2d 15 (D.D.C. 2001).  In addition, the primary inquiry

into the sufficiency of Plaintiff's takings claim is highly fact-specific, and relates to 1) the

extent of interference with Plaintiff's residential use of its property caused by

Defendants; and 2) the extent of the physical invasion of Plaintiff's property caused by

Defendants.

Plaintiff's takings claim concerns the increasing inability of Plaintiff to use its

property for its intended purpose – residential use – as a result of the District's failure to

prevent GW from increasingly transforming Foggy Bottom into a university campus.

18

Complaint at ¶¶ 94, 96-98. Plaintiff's First Amended Complaint further alleges that the District's failure to enforce its own regulations has resulted in a physical invasion of plaintiff's property amounting to a taking under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

As more fully discussed in plaintiff's motion for leave to amend, disposition of Plaintiff's takings count requires a fact-specific and individualized inquiry that simply cannot be resolved as a matter of law. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720-21 (1999); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979).

This Court cannot resolve Plaintiff's takings claim without the benefit of discovery, consideration of expert reports, and an individualized analysis of the facts involved. Plaintiff submits that its regulatory takings claim is so fact-specific and multifaceted, hinging on numerous economic, demographic, environmental, and transportation-related factors, that it must proceed to trial. Dismissal of Plaintiff's takings count on the pleadings would deprive Plaintiff of a full and fair opportunity to present its claim and be wholly improper. *See Mekuria v. Washington Metropolitan Area Transit Auth.*, 975 F. Supp. 1, 7 (D.D.C. 1997).

Because Defendants' Motion to Dismiss wrongfully seeks dismissal of Plaintiff's takings claim, and because analysis of such claims are highly fact-based, the motion should be denied. Consequently, Defendants' Motion to Stay Discovery, which assumes the success of Defendants' meritless motion to dismiss, should also be denied.

**C.     Plaintiff Will Be Harmed If Discovery is Stayed**

"In the determination of whether to stay discovery while pending dispositive motions are decided, the trial court inevitably must balance the harm produced by a delay in discovery against the possibility that [a dispositive] motion will be granted and entirely eliminate the need for such discovery." *Chavous*, 201 F.R.D. at 3.

As set forth more fully above, Plaintiff requires its proposed discovery to adduce facts relevant to claims which will be heard at the hearing on Plaintiff's Motion for a Preliminary Injunction.  If discovery is stayed, Plaintiff will suffer severe, irreparable harm.  Defendants' Motion is patently incorrect when it wrongly alleges that Plaintiff will suffer no harm because "the administrative processes that will ... determine the future course of events here, are ongoing." Defendants' Motion at 4.  This statements belies Defendants' utter misunderstanding of the major issues in this litigation.  Plaintiff's harm cannot possibly be assuaged by the administrative process, because many of Plaintiff's complaints arise directly from the fact that the administrative process is, in fact, ongoing.  Plaintiff's Complaint and Motion for Preliminary Injunction are, in significant part, based upon violations that have occurred in the past and continue to occur on a daily basis.  It is against this backdrop that Defendants' wrongful administrative consideration of GW's application and new campus plan must be considered, as the Final Order clearly precludes the District from entertaining new special permits and campus plan proposals by GW when it is in violation of the Final Order.

In contrast, Defendants will suffer no harm if discovery proceeds.  As discussed above, Plaintiff's proposed expedited discovery is limited in scope, and narrowly tailored to address issues before the Court on Plaintiff's Motion for a Preliminary Injunction.  Defendants will

suffer no legally cognizable harm in responding to Plaintiff's narrowly tailored and highly

relevant discovery requests.

Plaintiff's substantial harm must be balanced against the lack of harm suffered by

Defendants.  The present case is quite dissimilar from *Chavous*, which serves as the primary

authority cited in Defendants' Motion for the proposition that discovery may be stayed on the

basis of pending dispositive motions.  In *Chavous*, unlike in the present action, the parties filed

cross-dispositive motions.  In *Chavous*, unlike in the present action, the parties agreed that

"either plaintiffs' motion for summary judgment or defendant['s] ... motion to dismiss, if

granted, would be 'thoroughly dispositive.'" *Chavous*, 201 F.R.D. at 3.  Thus, the court in

*Chavous* stayed discovery on the basis of the parties' agreement, and the plaintiffs' explicit

assertions, that their claims were amenable to summary adjudication without the benefit of

discovery.  In the present action, Plaintiff has set forth its substantial and pressing need for

expedited discovery in support of its motion for a preliminary injunction.  Defendants' Motion to

Stay should therefore be denied.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests the Court to grant its Motion

for Expedited Discovery, and deny Defendant's Motion to Stay Discovery, as reflected in

the attached proposed order.

Respectfully submitted,

Dated: May 26, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, DC 20036
Tel:  (202) 862-4300
Fax: (202) 828-4130

*Attorneys for Foggy Bottom Ass'n*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2006, I electronically filed and thereby caused to

be served true and correct copies of "PLAINTIFF'S MOTION FOR EXPEDITED

DISCOVERY AND OPPOSITION TO DEFENDANTS' MOTION TO STAY

DISCOVERY" upon:

> Richard S. Love
> Andrew J. Saindow
> John D. Dodge
> Office of the Attorney General for the District of Columbia
> 441 4th Street, NW
> 6th Floor South
> Washington, DC 20001
> Tel: (202) 724-6635

> <u>/s/ William Bode</u>