UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
FOGGY BOTTOM ASSOCIATION            )
                                                               )
                    Plaintiff,                          )
                                                               )
        v.                                                  )        Civil Action No. 06-746 (PLF)
                                                               )
DISTRICT OF COLUMBIA, *et al*.,          )
                                                               )
                    Defendants.                      )
_____ )

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and LCvR 15.1, the defendants (collectively, "the District"), by and through counsel, respectfully move to dismiss plaintiff's First Amended Complaint herein. The grounds and the reasons are set forth in the accompanying Memorandum of Points and Authorities. A proposed Order has also been provided.


DATE: July 13, 2006            Respectfully submitted,

                                              ROBERT J. SPAGNOLETTI
                                              Attorney General for the District of Columbia

                                              GEORGE C. VALENTINE
                                              Deputy Attorney General
                                              Civil Litigation Division


                                              _____/s/ Richard S. Love_____
                                              RICHARD S. LOVE, D.C. Bar No. 340455
                                              Chief, Equity I Section
                                              Office of the Attorney General for the District of Columbia
                                              441 Fourth Street, N.W., 6th Floor South
                                              Washington, D.C. 20001
                                              Telephone: (202) 724-6635
                                              Facsimile: (202) 727-0431

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431


_____/s/ John D. Dodge_____
JOHN D. DODGE, D.C. Bar No. 451305
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6627
Facsimile: (202) 727-0431

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                          )
FOGGY BOTTOM ASSOCIATION                  )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )        Civil Action No. 06-746 (PLF)
                                          )
DISTRICT OF COLUMBIA, et al.,             )
                                          )
            Defendants.                   )
_____  )
```

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants herein (collectively, "the District"), by and through undersigned counsel, hereby submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss the First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and LCvR 15.1.

**Introduction**

On or about April 24, 2006, plaintiff filed its original Complaint and Motion for a Preliminary Injunction, seeking declaratory and injunctive relief. The District filed a Motion to Dismiss (and Opposition to the Motion for Preliminary Injunction) on May 19, 2006, which is incorporated by reference herein.[1]

On May 26, 2006, plaintiff filed its Motion for Leave to Amend Complaint, which the Court granted by Order of June 28, 2006.

---

[1]    Also incorporated by reference herein is the District's Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, filed on June 16, 2006.

The First Amended Complaint ("FAC") adds the District of Columbia and Mayor Anthony Williams as defendants, and drops the Historic Preservation Review Board and the District of Columbia Public Schools as defendants. The FAC also adds a demand for monetary damages, and adds allegations that defendants' "failure to enforce" the District's zoning laws and regulations against George Washington University ("GWU") has resulted in a "physical invasion of plaintiff's property" [sic] as a "consequenc[e] of GW's campus expansion[,]" which amounts to a government taking requiring just compensation under the Fifth Amendment. FAC ¶¶ 90–93.

## Argument

Plaintiff's additional allegations do not change the outcome here—the FAC should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff's assertion of an actual "physical invasion" of its members' properties by the effects of GWU's expansion, allegedly facilitated by the District's "failure to enforce" its laws, demonstrates the desperation of plaintiff's claims. The minimal impacts on plaintiff's members' property rights, even if assumed true, fall far short of the substantial impacts elucidated in case law as the equivalent of a "physical invasion" and hence a "taking" of property requiring compensation. Contrary to the implications of plaintiff, the Constitution does not require the District to protect plaintiff's members from mere annoyance by a neighboring property owner.

*1. There is No "Taking" Here.*

The FAC continues to reflect a profound misunderstanding of takings jurisprudence, and constitutional law in general.

Plaintiff now asserts that, pursuant to the Supreme Court's seminal takings case *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the District's allegedly lax enforcement of its zoning law against GWU has resulted in a "physical invasion" of its members' properties from the consequences of GWU's operations. That case, and subsequent cases, easily refute plaintiff's peculiar new theory.

It appears that plaintiff's new allegation is based solely on the statement in *Loretto* that "a 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . . ." *Id*. at 426 (quoting *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)). Of course, there has been no "physical invasion" by the District here of any property.

The *Loretto* court began its analysis by discussing the takings found in the so-called flooding cases, where a private party (with the government's authority) or the government itself constructed a dam which permanently flooded another's property. *Loretto*, 458 U.S. at 426. Those cases, which involved "a permanent physical occupation," were distinguished by the Court from "cases involving a more temporary invasion, or government action outside the owner's property *that causes consequential damages within* . . . ." *Id*. at 428 (emphasis added). "A taking has always been found only in the former situation." *Id*.

The taking ultimately found in *Loretto* was the result of a New York law requiring landlords to allow cable-television companies to install equipment on the landlords' properties. The Supreme Court there noted the similarity between that situation and the flooding cases, "where real estate is actually invaded . . . ." *Id*. at 427. The Court had little difficulty in concluding that the facts there constituted a taking, because of the permanent physical occupation of the landlords' properties by the cable equipment, as distinguished from "a physical

- 3 -

invasion short of an occupation, and a regulation that merely restricts the use of property." *Id*. at
430.

Here, there are no allegations of a physical occupation of plaintiff's members' properties,
but a "physical invasion" manifested by the unbridled expansion of GWU, which allegedly
negatively impacts the members' residential use of their properties. FAC ¶ 90. In other words,
the District's lack of enforcement against GWI has allegedly resulted in some types of
"consequential damages" to plaintiff's members' properties.

There are only two situations which qualify as *per se* takings—where the government
requires an owner to suffer a permanent physical invasion of property, or where a regulation
deprives an owner of all economically beneficial use of the property. *Lingle v. Chevron U.S.A.,
Inc.*, 544 U.S. 528, 538 (2005) (*unanimous decision*) (citing *Loretto* and *Lucas v. South Carolina
Coastal Council*, 505 U.S. 1003, 1019) (1992)).

Because neither of those two situations obtains here, the alleged taking must be analyzed
under the multi-factor inquiry required of "regulatory takings" under *Penn Central*. That inquiry
"turns in large part . . . upon the magnitude of a regulation's economic impact and the degree to
which it interferes with legitimate property interests." *Lingle*, 544 U.S. at 540. In other words,
regulatory actions will be more likely to be "functionally equivalent to the classic taking" if a
court finds a severe burden imposed on private property rights. *Id*. at 539. Plaintiff cannot meet
that test here.

Plaintiff here only complains that GWU's expansion, felt through "increased population
density, noise, pollution, traffic, and parking congestion[,]" has impeded its members' use and
enjoyment of their residential property rights. FAC ¶ 90. "However, 'not every destruction or
injury to property by governmental action has been held to be a 'taking' in the constitutional

sense.'" *Szymkowicz v. District of Columbia*, 814 F.Supp. 124, 128 (D.D.C. 1993) (quoting *Armstrong v. United States*, 364 U.S. 40, 48 (1960)).

Plaintiff cites *United States v. Causby*, 328 U.S. 256 (1946) in support of its theory of a "physical invasion" of its members' property rights. Plaintiff's Motion for Leave to Amend Complaint, at 13. But that case is easily distinguished. In *Causby*, a taking was found due to government planes flying over plaintiff's land, which prevented plaintiff's continued operation of his chicken farm. *See also Eyherabide v. United States*, 345 F.2d 565, 569 (Ct.Cl. 1965) (taking found from operation of government gunnery range adjacent to plaintiffs' property, which caused physical damage to that property).

"[T]he harm suffered by plaintiff[] in the present case is markedly less severe. Crucial to the holdings in *Causby* and *Eyherabide* was that the governmental action destroyed the landowner's ability to use the land for its intended purpose." *Szymkowicz*, 814 F.Supp. at 128. *See also Penn Central*, 438 U.S. at 128 ("*Causby* emphasized that Government had not 'merely destroyed property [but was] using a part of it for the flight of its planes.'") (alteration in original) (quoting *Causby*, 328 U.S. at 262–63 n.7).

Here, of course, the District itself is not directly acting on or using any part of any members' property, and the disputed expansion by GWU into the Foggy Bottom neighborhood has not *destroyed* plaintiff's members' ability to use their land for residential purposes. At most, the secondary results of GWU's expansion has possibly negatively impacted some minor aspects of plaintiff's members' use of their residential properties, at some times. Such a result—even if proven—is insufficient as a matter of law to find a taking. The District's alleged lack of enforcement of the zoning laws "may cause plaintiffs substantial inconvenience, but because

plaintiffs are not prevented from continuing to use their property as they always have, the District's action is not a taking." *Szymkowicz*, 814 F.Supp. at 128.

Plaintiff's new allegation of a "physical invasion" here "is merely an attempt to convert a regulatory takings claim, governed by *Penn Central* . . . into a *per se* taking governed by the more generous rule of *Loretto*." *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1354 (Fed. Cir. 2002). As such, plaintiff fails.

Regulatory takings of the kind plaintiff alleges here must be analyzed under the factors set forth in *Penn Central. Brown v. Legal Found. of Washington*, 538 U.S. 216, 234 (2003); *District Intown Prop. L.P. v. District of Columbia*, 198 F.3d 874, 879 (D.C. Cir. 1999). To decide if there has been a taking, courts must examine a "complex of factors," public and private, including, *inter alia*, (1) the regulation's economic effect on the property owner; (2) the extent to which the regulation interferes with reasonable investment-backed expectations; and (3) the character of the government action. *Penn Central*, 438 U.S. at 124; *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001); *District Intown*, 198 F.3d at 879.

The "primary" factor to be analyzed in a takings case is the economic impact on the claimant. *Lingle*, 544 U.S. at 538. Even assuming the truth of the FAC's allegations, plaintiff would be hard-pressed to show even a negligible economic effect on *some* members' properties directly adjacent to GWU at *some* limited times, depending on the nature of the uses of those facilities. But surely that minimal impact—even if proven—is vastly eclipsed by the unprecedented growth in housing prices experienced in this area over the last decade.[2] And such

---

[2]    *See, e.g.*, Peter A. Tatian & G. Thomas Kingsley, "The District of Columbia Housing Monitor," at 4 (The Urban Institute, June 29, 2006) (by the end of 2005, average sales prices for single-family homes and condominiums in the District were 217 percent higher than at the start of 1995) (*available at* http://www.urban.org/UploadedPDF/1001000_housingmonitor.pdf).

proximity to a major university in an urban center near public transportation could just as easily be seen to *enhance* the value of nearby residential properties.[3] Such an equivocal—at best—situation utterly fails to meet the demanding standard here to show a taking, "a substantial loss of property value." *George Washington Univ. v. District of Columbia*, 391 F.Supp.2d 109, 113 (D.D.C. 2005). *See also, e.g., Merkuria v. WMATA*, 45 F.Supp.2d 19, 28–29 (D.D.C. 1999) (taking found on showing, *inter alia*, of "serious economic harm" and "significant economic losses").

To prevail in a regulatory takings claim, "a claimant must put forth striking evidence of economic effects to prevail even under an *ad hoc* inquiry." *District Intown*, 198 F.3d at 883 (citing *Penn Central*, which discussed cases upholding regulations despite diminution of a property's value by more than 75%); *George Washington Univ.*, 391 F.Supp.2d at 113 (same). "[M]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 645 (1993) (loss of 46% of shareholder equity not a taking) (*citing Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (same; 92.5% diminution)).[4]

---

[3]      Moreover, even if plaintiff had been able to show such economic effects, it would still lack standing here, as the potential "injuries" suffered by its members would presumably vary based on the members' distance from GWU. *See Warth v. Seldin*, 422 U.S. 490, 515–16 (1975) ("[T]he damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof.")

[4]      To the extent plaintiff alleges a negative impact on the resale value of its members' properties, that, too, fails to state a takings claim. *See Andrus v. Allard*, 444 U.S. 51, 66 (1979) ("When we review regulation, a reduction in the value of property is not necessarily equated with a taking. [L]oss of future profits—unaccompanied by any physical property restriction—provides a slender reed upon which to rest a takings claim.").

Claimants cannot establish a takings claim "simply by showing that they were denied the ability to exploit a property interest that they heretofore had believed was available for development." *District Intown*, 198 F.3d at 879 (quoting *Penn Central*, 438 U.S. at 130). In other words, "a buyer's reasonable expectations must be put in the context of the underlying regulatory regime." *Id*. at 883 (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030 (1992)).

The District avers that, because GWU has been at its present location since at least 1912, plaintiff's members purchased their properties (in the heart of a major urban area) with knowledge of GWU's location and function. *See* http://www.gwu.edu/~newsctr/newscenter/guide/1_tour/history.html (last visited July 11, 2006). There can thus be no interference *by the District* with plaintiffs' members' investment-backed expectations, as those members bought property in an evolving city subject to extensive zoning and changing land uses.

Zoning has long been recognized as an appropriate exercise of the police power of a local government to balance the competing needs of neighboring properties and protect the public welfare. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387 (1926). "The necessity and desirability of zoning and city planning can no longer be subject to debate. [A]ccordingly, Congress has given considerable discretion to the Zoning Commission for the establishment of a comprehensive zoning plan, so that the public welfare may dominate the development of the capital city." *Lewis v. District of Columbia*, 190 F.2d 25, 27 (D.C. Cir. 1951) (citations and footnotes omitted). *See also Lingle*, 544 U.S. at 541 (*Village of Euclid* was "a historic decision" upholding the power of local governments to zone, so long as the exercise of that power was not "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.")

The "character of government action" element of a takings analysis depends primarily on whether the action "has a legitimate public purpose," *District Intown*, 198 F.3d at 879 (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485 (1987)). *See also George Washington Univ.*, 391 F.Supp.2d at 113–114 ("To assess the character of the government's action, the central question is whether the regulation advances a "common good" or "public purpose.") (citing, *inter alia*, *Penn Central*, 438 U.S. at 124, and *Keystone*, 480 U.S. at 485–93).

As noted above, it can no longer be reasonably doubted that zoning serves an important public interest. Consequently, this element of the takings analysis is overwhelmingly in the District's favor. *See, e.g., JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1126 (D.C. Cir. 2004) (The Supreme Court has "found that the enforcement of zoning regulations, like those at issue here, constitutes an important state interest.") (citations omitted). *See also Kelo v. City of New London*, 544 U.S. ___, 126 S.Ct. 2655, 2667(2005) ("When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings . . . are not to be carried out in the federal courts.") (citations and internal quotations omitted).

Plaintiff cannot show a taking here, and its claims must be dismissed.


*2. Plaintiff Has No Constitutional Interest in the Enforcement of Zoning Law.*

Underlying plaintiff's takings claim is its argument that the District's failure to enforce the zoning laws has allowed GWU to impermissibly encroach on the neighborhood.

The District noted previously that plaintiff has no protected property right in the uses of neighboring property. District's Motion to Dismiss, at 18–19. Similarly, in light of plaintiff's new allegations, "nothing in the [Constitution] requires the State to protect the life, liberty, and

property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). *See also id.* at 193 (the language limiting government power in the Constitution "was to protect the people from the State, not to ensure that the State protected them from each other . . . ."); *Town of Castle Rock v. Gonzales*, ___ U.S. ___, 125 S.Ct. 2796, n.13 (2005) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Moreover, government officials are generally given broad discretion in decisions whether—and how—to undertake enforcement of the law. *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Wayte v. United States*, 470 U.S. 598, 607 (1985) ("Government retains broad discretion as to whom to prosecute" because such decisions "are particularly ill-suited to judicial review") (internal quotations omitted).[5]

"This presumption of unreviewability may be overcome 'where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers . . . .'" *Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1249, 1257 (D.C. Cir. 2005) (citations omitted).[6]

---

[5]     This discretion has been specifically recognized as to District officials and local land-use laws:

> But nothing in the [relevant statute] entitles a private party to compel the Mayor to act if the Mayor is not of a mind to do so. In the absence of such an express legal entitlement, the decision of the Mayor, or his agent [DCRA], is not subject to judicial—or, we think, quasi-judicial—oversight.

*J.C. & Assoc. v. District of Columbia Bd. of App. & Review*, 778 A.2d 296, 309 (D.C. 2001) (citing, *inter alia, Heckler*).

[6]     This presumption has been justified on several grounds, including the regulating agency's expertise in determining whether a violation has occurred, and whether it is a

Plaintiff has not (because it cannot) show any substantive limitations in the zoning laws (or anywhere else) on the District's discretion to enforce those laws. As such, plaintiff cannot have a constitutional interest in the enforcement of those laws.

As the District noted previously, the paucity of case law supporting plaintiff's novel theories here reflects the illegitimacy of its claims. What little case law exists entirely supports dismissal here. *See, e.g., Leland v. Moran*, 80 Fed. Appx. 133, 135–36 (2nd Cir. 2003) (rejecting residents' constitutional claim based on officials' alleged failure to enforce local zoning and environmental laws against neighboring "scrap yard") (no deprivation of liberty or property interests because officials "enjoy considerable discretion in the exercise of their enforcement duties" and government has "no affirmative duty" to guarantee a minimal level of safety or well-being) (citing, *inter alia, Heckler* and *DeShaney*); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2nd Cir. 1994) (rejecting residents' "rather unique" claim regarding town's failure to enforce zoning laws against adjacent industrial property owner; residents did not have a property interest in the proper enforcement of the zoning laws); *Citizens Accord, Inc. v. Town of Rochester*, 2000 WL 504132 (N.D.N.Y. 2000) (rejecting plaintiff association's claim that the town's failure to enforce noise limits against a racetrack was a taking of its members' property; "any physical intrusion (to the extent that it has even been caused by the municipal defendants) has not reached such an 'extreme form of physical occupation' to constitute an unconstitutional taking.") (quoting *Loretto*); *id*. ("the nature of the interference with [plaintiff's] (and its members') use

---

worthwhile expenditure of the agency's resources to undertake enforcement. *Oil, Chemical & Atomic Workers Int'l Union, AFL-CIO v. Richardson*, 214 F.3d 1379, 1382 (D.C. Cir. 2000). *See also Heckler*, 470 U.S. at 831 ("An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved with the proper ordering of its priorities.").

and enjoyment of their property is limited, and there is no actual physical invasion of property.")
(citation and footnote omitted)).

It should be clear from the above discussion, then, that plaintiff here has no protected
interest in the enforcement of the zoning laws, which are generally enforced at the discretion of
the District.[7] *See Roth v. King*, 449 F.3d 1272, 1285 (D.C. Cir. June 9, 2006) (when a statute
leaves a "benefit" to the discretion of a government official, no protected property interest in that
benefit can arise) (citing *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C.Cir. 2003)). *See also Town
of Castle Rock v. Gonzales*, ___ U.S. ____, ____, 125 S.Ct. 2796, 2803 (2005) (noting that "a
benefit is not a protected entitlement if government officials may grant or deny it in their
discretion"); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462–63 (1989) (protected
liberty interests are only created when a state places substantive limitations on official
discretion).

## Conclusion

For the foregoing reasons, the District moves to dismiss the First Amended Complaint. A
proposed Order is attached hereto.


DATE: July 13, 2006              Respectfully submitted,

                                 ROBERT J. SPAGNOLETTI
                                 Attorney General for the District of Columbia

                                 GEORGE C. VALENTINE
                                 Deputy Attorney General
                                 Civil Litigation Division

---

[7]      *See also, e.g., Rose Lees Hardy Home and School Ass'n v. District of Columbia
Bd. of Zoning Adjustment*, 324 A.2d 701, 706 (D.C. 1974) (the BZA is "a creature of statute with
discretionary and fact-finding authority").

_____/s/ Richard S. Love_____
RICHARD S. LOVE, D.C. Bar No. 340455
Chief, Equity I Section
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6635
Facsimile: (202) 727-0431


_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431


_____/s/ John D. Dodge_____
JOHN D. DODGE, D.C. Bar No. 451305
Assistant Attorney General
Equity 1 Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6627
Facsimile: (202) 727-0431