UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOGGY BOTTOM ASSOCIATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) Court No. 06 Civ. 0746 (RJL) | |
| DISTRICT OF COLUMBIA OFFICE OF ) | |
| PLANNING, *ET AL.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY TO MOTION FOR PRELIMINARY INJUNCTION**

Dated: July 18, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Ave, NW, 9th Fl.
Washington, DC 20036
Tel: (202) 862-4300

*Attorneys for Foggy Bottom Ass'n*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOGGY BOTTOM ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Court No. 06 Civ. 0746 (RJL) |
| DISTRICT OF COLUMBIA OFFICE OF PLANNING, *ET AL.*, | ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S REPLY TO MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, the Foggy Bottom Association ("FBA"), respectfully submits its reply to the motion for a preliminary injunction. As discussed in plaintiff's motion for a preliminary injunction, the elements for imposition of a preliminary injunction have been satisfied in this case. As further discussed below, the District of Columbia has waived the requirement for a showing of irreparable harm and is judicially estopped from arguing that plaintiff must show irreparable harm in order to obtain a preliminary injunction. The Court should therefore issue a preliminary injunction pursuant to DC ST. § 6-641.09 directing the District to take prompt action to curtail the George Washington University's ("GW") past and continuing violations of the District's zoning laws and to enforce the Board of Zoning Adjustment's January 23, 2002 Corrected Final Order on Remand ("Final Order") against GW.

**DISCUSSION**

**I.    The District Has Waived The Irreparable Harm Requirement**

In administrative proceedings pertaining to GW's existing campus plan, the District repeatedly asserted that if GW were not in compliance with the conditions of the Final Order, the District would not entertain new rezoning applications from GW. This is reflected in the

2

language of the Final Order, which is designed to be self-enforcing. *See* Final Order, Conditions 9(e) and 20; *accord* 11 DCMR § 3205. Similarly, at the April 20, 2006 regular meeting of the Zoning Commission, the District stated that it would not consider GW's rezoning application and proposed text amendment to the District's zoning regulations if GW were not in compliance with the Final Order. *See* Ex. A to Declaration of Stefan Shaibani, at 27-29.[1] The Zoning Administrator was to conduct an independent audit of GW's student and faculty headcounts to determine if GW is in compliance with Conditions 8 and 9(a)-(b) of the Final Order governing GW's student and faculty headcount caps and the minimum number of on-campus beds GW is required to provide to its undergraduate students. *See id.* at 15-16, 27-28.[2] This independent audit was to have been completed by mid-June 2006. *Id.* at 29.

Clearly, the District has unequivocally stated in public proceedings that it will not consider GW's rezoning application and proposed text amendment if GW is not in compliance with the Final Order. In so doing, the District has waived the requirement that plaintiff show irreparable harm in obtaining a preliminary injunction compelling the District to suspend its consideration of GW's rezoning application and proposed text amendment until GW becomes compliant with the Final Order. *See Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 996 (5th Cir. 2001) ("Because Dr. Goel promised to cancel his Paul Revere coverage after receiving

---

[1] *See* Transcript of April 20, 2006 regular meeting of the Zoning Commission, at 28 ("So, if it turns out that they're not in compliance, then the hearing gets postponed and the university has to go back into compliance before they could proceed with the PUDs"). (attached to Declaration of Stefan Shaibani).

[2] *See* Transcript of April 20, 2006 regular meeting of the Zoning Commission, at 15-16 ("GW has agreed to voluntarily participate in an independent audit of their enrollment numbers to insure compliance with the 2000 plan prior to approval of the proposed plan. The Zoning Administrator is in the process of procuring an audit firm and intends to have an audit completed prior to public hearing on this case."); *id.* at 27 ("Let's talk about the audit results from the Office of the Zoning Administrator. . . . I think the goal is to have it done by early June"). (attached to Declaration of Stefan Shaibani).

3

the Provident policy, the equitable doctrines of waiver and estoppel do not permit him to 'benefit from his own dereliction'"); *United States v. Philip Morris, Inc.*, 300 F. Supp.2d 61, 68 (D.D.C. 2004) (defining waiver as "the intentional relinquishment or abandonment of a known right").[3] Interestingly, the District has neither commissioned nor conducted its independent audit of GW, which was supposed to have been completed by mid-June prior to the September 2006 set down hearing for GW's rezoning application and proposed text amendment. *See* Declaration of Jeremy Tishler. The District has failed to commission the audit because it knows that GW is in violation of Conditions 8 and 9(a)-(b) of the Final Order.

## II.     The District Is Judicially Estopped From Arguing That Irreparable Harm Need Be Shown To Obtain A Preliminary Injunction Pursuant To Section 6-641.09

In *President & Directors of Georgetown College for Georgetown University v. Diavatis*, 470 A.2d 1248 (D.C. 1983), a zoning dispute involving the Georgetown University, the District argued before the District of Columbia Court of Appeals that "a showing that a zoning ordinance has been violated [under § 6-641.09] is tantamount to a showing of irreparable injury." *Amicus Curiae* Brief of the Corporation Counsel (Ex. M to Shaibani Affid. dated April 24, 2006, at 3). Despite its previous position that a neighboring property owner need not show irreparable harm to enjoin zoning violations under section 6-641.09, the District now argues to the contrary that plaintiff must establish irreparable harm to obtain a preliminary injunction in this case. This Court should reject the District's adoption of wholly inconsistent positions in two litigations involving construction of section 6-641.09 in the context of preliminary injunction motions.

---

[3] *See also Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 235 F.3d 1184, 1195 (9th Cir. 2000) (applying equitable doctrine of waiver); *Hermes Consol., Inc. v. United States*, 58 Fed. Cl. 3, at *4 (2003) (discussing equitable doctrine of waiver).

The doctrine of judicial estoppel "generally prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 *Moore's Federal Practice*, § 134.30, at 134-62 (3d ed. 2000)). Its purpose is to "prevent the perversion of the judicial process" by precluding parties from deliberately changing positions according to the exigencies of the moment. *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). Judicial estoppel forbids use of "intentional self-contradiction . . . as a means of obtaining an unfair advantage." *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d. Cir. 1953). In determining whether to apply judicial estoppel, the pertinent factors are (1) whether a party's later position is "clearly inconsistent" with its earlier position, (2) whether the party has succeeded in persuading a court to accept its earlier position, such that "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. *New Hampshire*, 532 U.S. 750-51.

In *New Hampshire v. Maine*, a boundary dispute between the States of New Hampshire and Maine, the Supreme Court applied the doctrine of judicial estoppel against New Hampshire for advocating an inconsistent construction of the phrase "Middle of the River" than it had done in a litigation 30 years earlier involving the same river. The Supreme Court held that New Hampshire's inconsistent construction of the phrase "Middle of the River" in the previous boundary dispute "firmly tips the balance of equities in favor of barring New Hampshire's present complaint." *New Hampshire*, 532 U.S. 751.[4]

---

[4] Judicial estoppel was recently applied by the District of Columbia Court of Appeals. *See Prince Const. Co., Inc. v. District of Columbia Contract Appeals Board*, 892 A.2d 380, 387 (D.C. 2006) ("Because Prince's claim that it was paid under valid contracts is 'clearly

5

Similarly, here, the District's contention in *Diavatis* that "a showing that a zoning ordinance has been violated [under § 6-641.09] is tantamount to a showing of irreparable injury" should preclude the District from arguing the contrary in this case. The District's instant position—that plaintiff must show irreparable harm to obtain a preliminary injunction under section 6-641.09—is clearly inconsistent the District's position in *Diavatis*, where the Corporation Counsel argued that violation of the statute was "tantamount to a showing of irreparable injury." The District would obtain an unfair advantage if not estopped from arguing the contrary proposition in this case. This is particularly so because the District has announced in public proceedings that it would not consider GW's rezoning application and proposed text amendment if GW were in violation of the Final Order, the very same relief that plaintiff seeks in its motion for a preliminary injunction. Consequently, the Court should apply judicial estoppel against the District. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999) (applying judicial estoppel against bankruptcy debtor when it intentionally failed to disclose all its assets in prior proceeding and the bankruptcy court accepted its position that it had no assets in prior proceeding); *Scarano*, 203 F.3d 513 (applying judicial estoppel against former railroad employee who was awarded lost wages in personal injury action and subsequently filed suit seeking to be reinstated on the basis that he was now rehabilitated).

### III. Irreparable Harm Need Not Be Shown To Obtain A Preliminary Injunction Because Section 6-641.09 Provides For Injunctive Relief To Prevent Violations

Where a statute provides for injunctive relief to prevent violations, irreparable harm to plaintiff need not be shown. *Atchison v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981) ("When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices

---

inconsistent' with its implicit earlier position that it accepted the payment in equity, judicial estoppel bars the contrary claim.").

prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown"). This rule has been followed in numerous decisions involving statutory violations. *See, e.g.*, *Commodity Futures Trading Comm'n v. Wall Street Underground, Inc.*, 128 Fed. Appx. 726, 729 (10th Cir. 2005) (granting preliminary injunction when defendants were engaged in acts prohibited by the Commodity Exchange Act which provided for injunctive relief to prevent the violations); *Burlington Northern R. Co. v. Bair*, 957 F.2d 599, 601 (8th Cir. 1992) ("It is a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need demonstrate irreparable harm to secure an injunction."); *Illinois Bell Tel. Co. v. Commerce Comm'n,* 740 F.2d 566, 571 (7th Cir.1984) ("[W]here the plaintiff seeks an injunction to prevent the violation of a statute that specifically provides for injunctive relief, it need not show irreparable harm. . . . This rule has been applied to private plaintiffs seeking an injunction").[5]

The applicable statute in this case is DC ST. § 6-641.09. This statute provides that "any neighboring property owner or occupant who would be specially damaged by any such [zoning] violation may, in addition to all other remedies provided by law, *institute injunction*, mandamus, or other appropriate action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use, or to correct or abate such violation or to prevent the occupancy of such building, structure, or land." (emphasis added) *Id.*

Plaintiff seeks a preliminary injunction pursuant to DC ST. § 6-641.09, which empowers neighboring property owners (such as plaintiff's members) to seek injunctive relief to prevent

---

[5] *See also Mical Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1035 (10th Cir. 1993) ("we agree with Mical that irreparable harm need not be shown in this case"); *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984) ("where an injunction is authorized by statute and the statutory conditions are satisfied the usual prerequisite of irreparable injury need not be established.") (quoting *United States v. Hayes Int'l Corp.,* 415 F.2d 1038, 1045 (5th Cir. 1969)).

7

violation of the District's zoning laws. Because section 6-641.09 provides for injunctive relief to prohibit violations of the zoning laws, plaintiff need not show irreparable harm to obtain a preliminary injunction. Instead, irreparable harm must be presumed from GW's violations of the Final Order and the District's zoning laws, and plaintiff is simply required to show that GW is in violation of the Final Order. *See Bair*, 957 F.2d at 601 (under "the reasonable cause" standard, the "proper role of the courts is simply to determine whether a violation of the statute has or is about to occur.")

As demonstrated in plaintiff's motion for a preliminary injunction and the supporting affidavits, and as further discussed in the expert declaration of George Oberlander attached to this reply memorandum, GW has long violated Conditions 8 and 9(a)-(b) of the Final Order governing GW's student and faculty headcount caps and the minimum number of on-campus beds that GW must provide to its undergraduate students. *See* Declaration of George Oberlander. The Court should therefore issue a preliminary injunction to prevent GW's continuing violations of the Final Order in light of the District's complete failure to enforce the Final Order against GW.

**IV.     Even If Irreparable Harm Need Be Shown, Plaintiff Has Satisfied Its Burden**

Even if zoning violations are not sufficient, as a matter of law, to establish irreparable harm, plaintiff has satisfied its burden in this case. GW enrolls and employs thousands more students and faculty than those permitted by the existing Campus Plan in violation of Condition 8 of the Final Order. These violations cause enormous increases in pedestrian and automobile traffic in the Foggy Bottom residential neighborhood. The violations further overburden Foggy Bottom's infrastructure, increase pollution, create unbearable noise, and degrade the character of this residential neighborhood. To make matters worse, GW fails to provide the requisite on-

8

campus housing for its vastly over-enrolled undergraduate student body in violation of Conditions 9(a)-(b) of the Final Order. This places tremendous pressure on the Foggy Bottom housing market, which is not zoned for such institutional dormitory use, and unable to sufficiently absorb the students.

These violations constitute irreparable harm, as they are suffered by plaintiff on a daily basis and preclude its members from enjoying their property for the purpose for which it was intended, residential use. *See Lund v. Watergate Investors Ltd. Partnership*, 728 A.2d 77, 83 (D.C. 1999) ("unreasonable or increased parking rate … [and] denial of a right to a parking space at a reasonable rate in reasonable proximity to [the plaintiffs'] apartment" were irreparable harm); *Retter v. Russo, et al.*, 2000 Conn. Super. LEXIS 2879, at 6 (Conn. 2000) ("inconvenience, annoyance, and disturbance … [as well as] excess vehicular and pedestrian traffic" is irreparable harm to property owners when abutting property owner violates zoning regulations by engaging in commercial activity in a residential zone); *Cummings. v. Tripp*, 527 A.2d 230, 241-42 (Conn. 1987) (residents suffered irreparable harm when adjacent property owner undertook commercial operations in a residential zone, resulting in "annoyance, personal inconvenience . . . [and substantial] traffic and noise"); *See also Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732-33 (9th Cir. 1999) (reversing denial of motion for preliminary injunction seeking to prohibit enforcement of zoning ordinance barring methadone clinics in proximity to residential areas); *Hanly v. Mitchell*, 460 F.2d 640, 648 (2d Cir. 1972) (reversing denial of motion for preliminary injunction seeking to halt construction of a courthouse jail annex when the agency in charge failed to consider the environmental impacts of the construction on nearby properties).

## CONCLUSION

For the above reasons, plaintiff respectfully requests the Court to grant its motion for a preliminary injunction.

Respectfully submitted,

Dated: July 18, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Ave, NW, 9th Fl.
Washington, DC 20036
Tel:  (202) 862-4300

*Attorneys for Foggy Bottom Ass'n*

CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2006, I electronically filed "PLAINTIFF'S REPLY TO MOTION FOR PRELIMINARY INJUNCTION" and that service was thus effected upon defendants' counsels in accordance with Local Civil Rule 5.4(d).

/s/ William Bode