**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

FOGGY BOTTOM ASSOCIATION,      )
                                )
         Plaintiff,             )
                                )
             vs.                )
                                )  Court No. 06 Civ. 0746 (RJL)
DISTRICT OF COLUMBIA OFFICE OF  )
PLANNING, *et al.*,             )
                                )
         Defendants.            )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS FIRST AMENDED COMPLAINT


Dated: July 24, 2006                    /s/ William Bode
                                        William H. Bode (Bar No. 113308)
                                        Peter Grenier (Bar No. 418570)
                                        Stefan Shaibani (Bar No. 490024)
                                        BODE & GRENIER, LLP
                                        1150 Connecticut Ave, NW, 9th Fl.
                                        Washington, DC 20036
                                        Tel:  (202) 862-4300

                                        *Attorneys for Foggy Bottom Ass'n*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………...ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT………………………………………….....................1

BACKGROUND……………………………………………………………………….2

ARGUMENT………………………………………………………………………...4

    I.   Defendants Contest The Factual Bases Of Plaintiff's Takings Count And
Thus Concede That It Cannot Be Resolved On The Pleadings……………   5

    II.  Plaintiff Alleges A Viable Physical Takings Claim Under *Loretto*.....................8

    III.  Defendants Misconstrue The *Penn Central* Inquiry For Regulatory Takings
Claims………………………………………………………………… ..10

    IV.  Defendants' Reliance On Due Process Precedent To Argue That Plaintiff
Has No Constitutional Interest In The District's Enforcement Of The Zoning
Laws Is Misplaced…………………………………………………………..13

CONCLUSION………………………………………………………………………..17

i

## TABLE OF AUTHORITIES

### CASES

*Brown v. Legal Foundation of Washington, et al.*, 538 U.S. 216 (2003)…………………………..13

*Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003)………………………………11

*Citizens Accord, Inc. v. Town of Rochester*, 2000 WL 504132 (N.D.N.Y. 2000)……….…..…….15

*City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488 (1986)…………………..6

*City of Monterey v. Del Monte Dunes* 526 U.S. 687 (1999)………………………………………10

*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998)…………….16

*Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989)………………..14

*District Intown Properties Ltd. Partnership v. District of Columbia*,
23 F. Supp.2d 30 (D.D.C. 1998)………………………………………………………………15

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998)…………………………………………………11

*Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d. Cir. 1994)……………………..……...14, 15

*Heckler v. Chaney*, 470 U.S. 821 (1985)……………………………………………………...14

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)………………………………………………6

*Hornstein v. Barry*, 560 A.2d 530 (D.C. 1989)…………………………………………………13

*In re U.S. Office Products Co. Securities Litigation*, 251 F. Supp .2d 77 (D.D.C. 2003)……...…6

*Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1256 (D.C. Cir. 2005)…………….…14

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979)……………………………………………..12

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)…………………………………………7

*Leland v. Moran*, 80 Fed. Appx. 133 (2d. Cir. 2003)……………………..……………………14, 15

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982…………………1, 8, 9, 10

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)…………………………………11

*Mekuria v. Washington Metropolitan Area Transit Auth.*, 975 F. Supp. 1 (D.D.C. 1997)……8, 12

*Mekuria v. Washington Metropolitan Area Transit Authority,*
45 F. Supp.2d 19 (D.D.C. 1999).......................................................................12

*NRG Co. v. United States,* 24 Cl. Ct. 51 (Ct. Fed. Cl. 1991)...........................................16

*Palazzolo v. Rhode Island,* 533 U.S. 606 (2001)...........................................................10

*Penn Central Transportation Co. v. New York City,* 438 U.S. 104 (1978)......................1, 10

*Roth v. King,* 449 F.3d 1272 (D.C. Cir. 2006)...............................................16

*Silverman v. Barry,* 727 F.2d 1121 (D.C. Cir. 1984)......................................................13

*Town of Castle Rock v. Gonzales,* 125 S. Ct. 2796 (2005)..........................................14

*Turner Broadcasting System v. FCC,* 512 U.S. 622 (1994)..........................................6

*United Nuclear Corp. v. United States,* 912 F.2d 1432 (Fed. Cir. 1990)..........................16

*United States v. Causby,* 328 U.S. 256 (1946)..............................................................7

*United States v. Ritchie,* 342 F.3d 903 (9th Cir. 2003)....................................................7

*Wayte v. United States,* 470 U.S. 598 (1985)...............................................................14

*Williamson County Regional Planning Comm'n v. Hamilton Bank,*
473 U.S. 172 (1985)....................................................................................15

## STATUTES & REGULATIONS

DC ST. § 6-641.09.....................................................................................8, 17

11 DCMR § 210.3..........................................................................................4

11 DCMR § 210.4..........................................................................................5

11 DCMR § 507.3..........................................................................................5

Federal Rule of Evidence 201(b)......................................................................6

## TREATISE

2 JAMES MOORE, ET AL., MOORE'S FEDERAL PRACTICE (3d ed. 2003)..............................6

iii

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------

FOGGY BOTTOM ASSOCIATION,    )
                                         )

        Plaintiff,            )
                                         )

          vs.               )
                                       )  Court No. 06 Civ. 0746 (RJL)

DISTRICT OF COLUMBIA OFFICE OF  )
PLANNING, *et al.*,               )
                                       )

        Defendants.     )

---------------------------------------------------------)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Plaintiff, the Foggy Bottom Association ("FBA"), respectfully submits its opposition to defendants' motion to dismiss the First Amended Complaint ("FAC"). As discussed below, defendants' motion to dismiss should be denied because: (1) plaintiff has suffered a regulatory taking cognizable under *Penn Central* and its progeny, and determination of this claim requires an individualized *ad-hoc* inquiry that simply cannot be resolved "as a matter of law;" and (2) plaintiff's First Amended Complaint alleges a viable physical takings claim under *Loretto*.

In support of this opposition, plaintiff incorporates by reference its memorandum of points and authorities filed (on June 9, 2006) in opposition to defendants' motion to dismiss the original complaint, the memorandum of points and authorities filed (on April 25, 2006) in support of plaintiff's motion for a preliminary injunction, and the reply memorandum filed (on July 18, 2006) in support of plaintiff's motion for a preliminary injunction.

## BACKGROUND

The procedural history preceding this Opposition has been set forth in other filings, including plaintiff's opposition to defendants' motion to dismiss and plaintiff's motion for leave to file a reply memorandum to the motion for preliminary injunction.

Through their violations of the District of Columbia zoning laws, defendants have unlawfully permitted, aided, and encouraged the George Washington University's ("GW's") unlawful expansion into the Foggy Bottom neighborhood. Defendants' improper consideration of GW's rezoning application and new campus plan has removed nearly all incentive for GW to comply with the Conditions of the Board of Zoning Adjustment's Corrected Final Order on Remand dated January 23, 2002 ("Final Order") governing GW's present campus plan. Defendants' actions have resulted in the continued occupation of plaintiff's property and interfere with plaintiff's property rights.

As set forth more fully in Plaintiff's June 9, 2006 opposition to defendants' motion to dismiss the original complaint, GW has, with the assistance of defendants, unlawfully transformed the Foggy Bottom neighborhood into a *de facto* university campus. Defendants' actions have resulted in the overpopulation of the neighborhood with student tenants, who physically occupy plaintiff's property. The GW students' physical occupations are permanent, because their occupations are unceasing and continuous, despite periodic changes in the identities of the occupying students.

GW students physically occupy residential units within the Foggy Bottom neighborhood. The students' occupation of these units displaces non-student residents. GW students also congregate in and physically occupy residential common areas, such as stairs, foyers, and

courtyards.  Such physical occupation prevents plaintiff's members from utilizing the benefits of such common areas.

Most units occupied by GW students contain more adults than comparable units occupied by non-student residents (e.g., four GW students occupying a two-bedroom unit, compared to one non-student resident occupying a comparable two-bedroom unit).  GW students physically occupy residential parking spaces on private property.  As a result of the greater per-unit density of GW students relative to non-student residents, GW students' physical occupation deprives plaintiff's members of access to parking spaces.  Significantly, the noise and pollution generated by GW students physically occupies plaintiff's homes and private property.  As a result of defendants' unlawful conduct, GW students generate tremendous levels of noise and pollution in the Foggy Bottom neighborhood.  Such noise and pollution physically invades plaintiff's property through windows, walls, and other avenues.

Defendants' unlawful actions interfere with plaintiff's property rights.  The combined effect of the multiple physical invasions results in increased population density, noise, pollution, traffic, and parking congestion in Foggy Bottom, all of which are consequences of defendants' failure to enforce the Final Order which has resulted in GW's unlawful campus expansion in the Foggy Bottom neighborhood.  These factors combine to deprive plaintiff's members of their ability to use their property for its intended purpose – residential use.

Since plaintiff's June 9, 2006 opposition to defendants' motion to dismiss the original complaint, defendants have continued to take actions that permit and encourage GW's violations of the District's zoning laws and takings of plaintiff's property.  Defendants continue to consider GW's rezoning application and proposed new campus plan, despite GW's noncompliance with the Conditions governing its present campus plan.  Defendants have repeatedly acknowledged

that they may not lawfully consider GW's new campus plan during a period of noncompliance. Yet, defendants have failed to fulfill their promises to audit GW's compliance with the Final Order, knowing full well that the result of such an audit would confirm GW's egregious violations of the student enrollment caps, faculty employment caps, and student housing requirements.

Defendants recently began to separately consider GW's multi-million dollar proposed development of Square 54.   The Square 54 proposal involves GW's development of a significant portion of its campus, and is intrinsically linked to its new campus plan.  However, GW disingenuously presented the Square 54 proposal as separate and distinct from GW's new campus plan.  GW's improper splitting of its campus development proposals threatens to obscure the true magnitude of its commercial and institutional development in the Foggy Bottom neighborhood.  The District's zoning regulations limit the total bulk of all buildings in residential areas (including Foggy Bottom and Square 54) to a 3.5 gross floor area (FAR).  GW's new campus plan seeks permission for a 4.5 FAR with respect to universities.  This request runs afoul of the zoning regulations' specific goal of  "prevent[ing] unreasonable campus expansion into improved low-density districts."  11 DCMR § 210.3 (2005).  Even more troubling, GW's application for the Square 54 development requests a re-zoning of Square 54 from residential to commercial status so that the property can support a 7.5 FAR.  The dramatic disparity between the FARs requested in the Square 54 development proposal and GW's new campus plan reveals how GW's unlawful split development proposals obscure the true extent of its proposed commercial expansion in Foggy Bottom.

The District of Columbia Zoning Commission (the "Zoning Commission") will hold four days of public hearings, beginning on September 14, 2006, regarding the new campus plan, but

will not consider any aspect of GW's Square 54 proposal at the hearings.  In fact, defendants

failed to grant plaintiff's request to consolidate consideration of GW's Square 54 proposal and

new campus plan.  GW's Square 54 proposal highlights defendants' unlawful consideration of

the new campus plan, because the new campus plan omits the massive Square 54 development

and does not describe the "development of the campus as a whole," as required by 11 DCMR §§

210.4 and 507.3.

**ARGUMENT**

**I.     Defendants Contest The Factual Bases Of Plaintiff's Takings Count And Thus
        Concede That It Cannot Be Resolved On The Pleadings**

        In its motion to dismiss the FAC, the District contests the factual bases for plaintiff's

takings count, in effect "testifying" to the Court without presenting any evidence and before any

discovery has been conducted in this case.  The District contends that: (1) plaintiff's property has

not been physically invaded (Motion to Dismiss, at 3-4), contrary to plaintiff's allegations in the

FAC that excessive noise, pollution, student over-population, and parking congestion in a

residentially zoned area have, in fact, physically invaded plaintiff's property in Foggy Bottom;

(2) the value of plaintiff's property has grown, rather than diminished, as a result of GW's

violation of the Final Order and campus expansion in Foggy Bottom (Motion to Dismiss, at 6-7),

contrary to plaintiff's allegations in the FAC that GW's continuous violation of the zoning laws

and unbridled campus expansion in Foggy Bottom have significantly diminished the value of

plaintiff's property; and (3) plaintiff's investment-backed expectations contemplated GW's

unending campus expansion in Foggy Bottom and violation of the Final Order (Motion to

Dismiss, at 8), contrary to plaintiff's allegations in the FAC that plaintiff's investment-backed

expectations contemplated GW's abidance of the zoning laws and plaintiff's ability to use its

property for its intended purpose, residential use.

5

These (and other) factual disputes between the parties necessitate the denial of defendants' motion to dismiss. It is axiomatic that in resolving a 12(b)(6) motion to dismiss, the factual allegations in plaintiff's complaint must be assumed to be true. *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ("At this stage of the litigation, we must accept petitioner's allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *accord In re U.S. Office Products Co. Securities Litigation*, 251 F. Supp.2d 77, 88 (D.D.C. 2003) ("A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim"). The District cannot seek dismissal of the FAC by contesting the factual bases for plaintiff's takings claim. *See City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 493-96 (1986) (reversing dismissal of complaint on the pleadings because "material factual disputes between the parties [had not been] resolved"); *accord Turner Broadcasting System v. FCC*, 512 U.S. 622, 668 (1994) (reversing grant of summary judgment "to permit the parties to develop a more thorough factual record, and to allow the District Court to resolve any factual disputes remaining"). As explained by Professor Moore in his treatise:

> Under Rule 12(b)(6), the party moving for dismissal has the burden of proving that no claim has been stated. To prevail, the movant must show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. . . . [D]uring this threshold review, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. (internal markings omitted)

2 JAMES MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 12.34[1][a] (3d ed. 2003).

Nor are the factual allegations contested by defendants subject to judicial notice so as to allow dismissal of plaintiff's FAC based on adoption of "facts" proposed by defendants without the aid of discovery. "Courts may only take judicial notice of adjudicative facts that are 'not

subject to reasonable dispute.'  Fed. R. Evid. 201(b).  Facts are indisputable, and thus subject to judicial notice, only if they are either 'generally known' . . . or 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' "  *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).  Whether the District's failure to enforce the Final Order has resulted in growth rather than diminution of the value of plaintiff's Foggy Bottom property is clearly a "fact" subject to reasonable dispute.  Similarly, whether the noise and pollution engendered by GW's unbridled campus expansion and violations of the Final Order have not physically invaded plaintiff's Foggy Bottom property is a "fact" subject to reasonable dispute.  Nor is defendants' contrived assertion of plaintiff's "intent" and reasonable investment-backed expectations in purchasing their Foggy Bottom property a "fact" subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may not take judicial notice of a fact that is subject to reasonable dispute").  None of the aforementioned "facts" proposed by defendants is readily ascertainable from sources whose accuracy cannot reasonably be questioned, and plaintiff's FAC clearly presents facts that are contrary to them.  Consequently, defendants' motion to dismiss should be denied because it contests the factual bases for plaintiff's takings count.

Plaintiff intends to present fact and expert testimony to establish the factual underpinnings for its takings count.  Specifically, plaintiff will present: (1) fact and scientific testimony concerning the actual physical invasion of plaintiff's property through the excessive noise, pollution, and over-population engendered by GW's violation of the Final Order and unbridled campus expansion in Foggy Bottom; (2) expert testimony from an economist and a real estate broker concerning the diminution of plaintiff's property values as a direct result of GW's violations of the zoning laws in Foggy Bottom; and (3) factual testimony concerning

7

plaintiff's investment-backed expectations relating to its members' property purchases in Foggy Bottom. Upon conducting discovery, plaintiff will further prove beyond doubt that GW has been in violation of the Final Order since 2002. The egregious extent of GW's violations of the District's zoning laws cannot be understated.

It comes as no surprise that in all its filings to date, the District has not claimed that GW is in compliance with the Final Order and the District's zoning laws. Instead, the District now contends that plaintiff has no constitutional interest in the District's enforcement of its own zoning laws (Motion to Dismiss, at 9-12), despite promulgation of DC ST. § 6.641.09, which gives rise to a private right of action by neighboring property owners who are specially harmed by zoning violations in the District. The District clearly knows that GW is in violation of the Final Order but seeks to conceal its favoritism of GW and selective enforcement of zoning laws by raising mertiless arguments designed to preclude plaintiff from having the opportunity to prove its claims. The District's attempt to persuade the Court to dismiss this action by contesting the factual bases for plaintiff's takings count should fail.

II.    **Plaintiff Alleges A Viable Physical Takings Claim Under *Loretto***

A taking may occur when government regulation results in a third-party's physical invasion of another's property. The physical invasion need not be by the government itself, and the magnitude of the physical invasion is immaterial to the determination of whether a taking has occurred. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 438 and n. 16 (1982); *Mekuria v. Washington Metropolitan Area Transit Auth.*, 975 F. Supp. 1, 4 (D.D.C. 1997) ("*Mekuria I*"). A physical invasion occurs whenever "an intrusion [is] so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it." *United States v. Causby*, 328 U.S. 256, 265 (1946) (cited in *Lucas*, 505 U.S. at 1015).

Loretto holds that once physical occupation is shown, there is "less need to consider the extent of the occupation in determining whether there is a taking in the first instance." Loretto, 458 U.S. at 438. This is so because the physical invasion of property, no matter how small, effectively destroys the owner's rights to "possess, use, and dispose of" his property. Id. at 435. Indeed, "the power to exclude [others from occupying one's property] has traditionally been one of the most treasured strands in an owner's bundle of property rights." Id.

The District incorrectly contends that Loretto is inapplicable because there has been no physical invasion of plaintiff's property by the District. Loretto, however, involved the physical invasion of a landlord's property by cable television companies through a government regulation. Loretto, 458 U.S. at 421 (characterizing the facts at issue as the "physical occupation of an owner's property authorized by government") (emphasis added). The District need not itself physically invade plaintiff's property for there to be a physical taking under Loretto.

Plaintiff's FAC alleges that the District's failure to enforce the Final Order, which was designed to curtail GW's expansion of its university campus in Foggy Bottom, has resulted in a physical invasion of plaintiff's property amounting to a taking under Loretto. FAC, ¶¶ 90-93. The FAC describes the Final Order's on-campus housing requirements and student enrollment and faculty employment caps. The physical invasion of plaintiff's property in Foggy Bottom results from unauthorized off-campus GW student housing and increased population density, noise, pollution, traffic, and parking congestion in Foggy Bottom, all of which are consequences of GW's campus expansion in the neighborhood. Contrary to defendants' contentions, the excessive noise, pollution, and congestion engendered by GW's unlawful campus expansion in Foggy Bottom has, in fact, physically occupied plaintiff's property through the air, ground, and other means of intrusion. Plaintiff intends to present expert scientific and factual testimony to

substantiate these claims.  These physical intrusions constitute a taking of plaintiff's Foggy

Bottom property.  The District's failure to enforce the Final Order against GW despite its

invasion of plaintiff's Foggy Bottom property therefore amounts to a physical taking.

The District next contends that *Loretto* is inapplicable because there is no permanent

physical invasion of plaintiff's property.  However, the taking alleged by plaintiff is not

temporary.  GW's unlawful occupation of plaintiff's Foggy Bottom property is ceaseless and

ongoing.  Indeed, the District has completely failed to enforce the Final Order since 2002, and

there is no indication that GW will halt its violations of the zoning laws in the future.  Unless the

District directs GW to correct its violations of the Final Order, the physical taking alleged by

plaintiff will continue and its extent will increase with no end in sight.

### III.    Defendants Misconstrue The *Penn Central* Inquiry For Regulatory Takings Claims

The District contends that the "primary factor to be analyzed in a takings case is the

economic impact on the claimant."  (Motion to Dismiss, at 6-7).  It then proceeds to quantify the

level of diminution of value that, in the District's view, would not amount to a taking.  In so

doing, the District misconstrues the legal standard for determining whether there has been a

regulatory taking under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

*Penn Central* and its progeny, however, set forth three factors pertinent to determination of

whether there has been a regulatory taking.  The District's position that the economic impact of

the regulation can be quantified was rejected in *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001),

where the Supreme Court held:  "Where a regulation places limitations on land that fall short of

eliminating all economically beneficial use, a taking nonetheless may have occurred, depending

on a complex of factors including the regulation's economic effect on the landowner, the extent

to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *Id.* at 617.

Diminution of property values is simply one factor. There is no *per se* rule on what constitutes a regulatory taking, and an *ad hoc* factual inquiry must be conducted. *See, e.g., Cienega Gardens v. United States*, 331 F.3d 1319, 1340 (Fed. Cir. 2003) ("There is not, however, an automatic numerical barrier preventing compensation, as a matter of law, in cases involving a smaller percentage diminution in value"). Defendants' reliance on cases denying takings claims when diminution in value was significant—in an attempt to quantify what does and does not constitute a regulatory taking—should fail.

Contrary to defendants' contention, disposition of plaintiff's regulatory takings count requires a highly fact-specific and individualized inquiry that simply cannot be resolved as a matter of law. Defendants' contention to the contrary was rejected by the Supreme Court in *City of Monterey*, where the Court held that disposition of a plaintiff's regulatory takings claim "is a predominantly factual question . . . for the jury." *City of Monterey v. Del Monte Dunes* 526 U.S. 687, 721 (1999). The court explained:

> Almost from the inception of our regulatory takings doctrine, we have held that whether a regulation of property goes so far that there must be an exercise of eminent domain and compensation to sustain the act depends upon the particular facts. Consistent with this understanding, we have described determinations of liability in regulatory takings cases as essentially "ad hoc, factual inquiries," requiring complex factual assessments of the purposes and economic effects of government actions. (internal marks and citations omitted)

*Id.* at 720.

The Supreme Court has consistently followed this mandate. *See, e.g., Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998) (the taking "inquiry, by its nature, does not lend itself to any set formula, and . . . is essentially *ad hoc* and fact intensive"); *Lucas v. South*

*Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) ("In 70-odd years of succeeding

regulatory takings jurisprudence, we have generally eschewed any set formula . . . , preferring to

engage in essentially *ad hoc*, factual inquiries"); *Kaiser Aetna v. United States*, 444 U.S. 164,

175 (1979) (the Supreme Court "has examined the 'taking' question by engaging in essentially

*ad hoc*, factual inquiries").

Pursuant to the Supreme Court's mandate, this Court has held that a regulatory takings

claim cannot be disposed on the pleadings.  In *Mekuria I*, the Court denied the defendant's

motion to dismiss a regulatory takings claim and subsequently found the District liable for the

unlawful taking of the plaintiffs' property without just compensation.  *See Mekuria v.

Washington Metropolitan Area Transit Authority*, 45 F. Supp.2d 19 (D.D.C. 1999) ("*Mekuria

II*").  The plaintiffs in *Mekuria* alleged that the transit authority's construction of a new metrorail

station adjacent to their property resulted in the temporary taking of their leasehold interests in

commercial buildings by partially blocking vehicular and pedestrian access to their properties.

*Mekuria II*, 45 F. Supp.2d at 28.  The District moved to dismiss the plaintiffs' takings count on

the grounds that there was neither a physical nor a regulatory taking, and that the "pre-existing

case law" strongly favored dismissal of the complaint.  *Mekuria I*, 975 F. Supp. at 6.  In denying

the District's motion to dismiss, the Court explained:

> It is axiomatic that the motion to dismiss for failure to state a claim is viewed with
> disfavor . . . .  This admonition is perhaps nowhere so apt as in cases involving
> claims of inverse condemnation where the Supreme Court has admitted its
> inability to develop any "set formula" for determining when compensation should
> be paid resorting instead to essentially "ad hoc, factual inquiries" to resolve this
> difficult question.  (internal marks and citation omitted)

*Mekuria I*, at 7.

Similarly, this Court cannot resolve plaintiff's regulatory takings claim without the

benefit of fact and expert witness testimony concerning the effect of GW's campus expansion in

Foggy Bottom and an individualized analysis of plaintiff's claim. Plaintiff's regulatory takings claim is highly fact-specific. It implicates multiple economic, demographic, environmental, and transportation-related factors, and it must be resolved after a thorough presentation of evidence. Dismissal of plaintiff's takings count prior to trial would deprive plaintiff of a full and fair opportunity to present its claim. Such a dismissal on the pleadings would be highly prejudicial. *See Silverman*, 727 F.2d 1121, 1126 (reversing trial court's dismissal of regulatory takings count and stating that in light of the Supreme Court's "emphasis upon an individualized inquiry in takings clause cases, this claim should not be dismissed on jurisdictional grounds"); *Hornstein v. Barry*, 560 A.2d 530, 538 (D.C. 1989) (reversing grant of summary judgment on regulatory takings count because "the record as to uncompensated taking is deficient, which is problematical in a situation in which . . . an *ad hoc* case by case inquiry is called for").

As discussed in plaintiff's opposition to defendants' motion to dismiss the original complaint, the District's failure to enforce the Final Order against GW has resulted in substantial interference with plaintiff's property rights by increasing population density, noise, pollution, traffic, and parking congestion in Foggy Bottom. These factors infringe on plaintiff's property rights and deprive plaintiff of its ability to use its property for its intended purpose—residential use—to such a degree as to constitute a regulatory taking.

## IV.    Defendants' Reliance On Due Process Precedent To Argue That Plaintiff Has No Constitutional Interest In The District's Enforcement Of Zoning Laws Is Misplaced

The District contends plaintiff has no constitutional interest in the District's enforcement of its zoning laws, and that the District's failure to enforce the Final Order therefore does not give rise to a takings claim. (Motion to Dismiss, at 9-12). In support of its contention, the District largely relies on due process precedent which is inapposite, as plaintiff alleges a takings, not a due process, violation. The constitutional standards governing due process and takings

claims are entirely different. *Compare Brown v. Legal Foundation of Washington*, 538 U.S. 216,

233 (2003) ("When the government physically takes possession of an interest in property for

some public purpose, it has a categorical duty to compensate the former owner") (citation

omitted), *with Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195

(1989) (the Due Process Clause "is phrased as a limitation on the State's power to act, not as a

guarantee of certain minimal levels of safety and security.")

      The precedent cited by defendants pertain to due process claims and are entirely

irrelevant to this case. *Deshaney* involved a social worker's failure to remove a child from the

father's custody despite repeated warnings of violence. The Supreme Court rejected the

plaintiff's due process claim, stating that "nothing in the language of the Due Process Clause

itself requires the State to protect the life, liberty, and property of its citizens against invasion by

private actors." *Id.* at 195. *Town of Castle Rock v. Gonzales*, 125 S. Ct. 2796 (2005), involved a

due process claim against the state police for its failure to enforce a restraining order. The

Supreme Court rejected the plaintiff's due process claim, stating that "respondent did not, for

purposes of the Due Process Clause, have a property interest in police enforcement of the

restraining order against her husband." *Id.* at 2810. *Wayte v. United States*, 470 U.S. 598

(1985), involved an equal protection challenge to the government's prosecutorial discretion.[1]

---

[1] Defendants' reliance on *Heckler v. Chaney*, 470 U.S. 821 (1985), *Jerome Stevens Pharmaceuticals., Inc. v. FDA*, 402 F.3d 1256 (DC Cir. 2005), *Leland v. Moran*, 80 Fed. Appx. 133 (2d Cir. 2003), and *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994), is similarly misplaced. *Heckler* involved an Administrative Procedure Act challenge to the FDA's decision not to institute enforcement actions against makers of drugs ultimately used to carry out the death penalty. The Supreme Court held that the FDA's decision not to institute enforcement actions is not subject to judicial review under the Administrative Procedure Act. *Heckler*, 470 U.S. at 838. *Jerome Stevens Pharmaceuticals* also involved a Administrative Procedure Act challenge to the FDA's extension deadlines. The District of Columbia Circuit held that the FDA's decision to extend approval deadlines for certain drugs was an enforcement decision not reviewable under the Administrative Procedure Act. *Jerome*, 402 F.3d at 1257. In *Leland* and

14

The Supreme Court held that although "[s]electivity in the enforcement of criminal laws is subject to constitutional constraints," the government's decision only to prosecute vocal objectors to selective service laws did not amount to an equal protection violation. *Id.* at 608-610.  Defendants' citation to this wholly separate and inapplicable line of precedent is a red herring.

        *Citizens Accord, Inc. v. Town of Rochester*, 2000 WL 504132 (N.D.N.Y. 2000), relied upon by defendants is similarly unavailing.  The Court in *Citizens Accord* dismissed the plaintiff's takings count on ripeness grounds because the plaintiff did not pursue the inverse condemnation procedures available to it under New York law.  *Id.* at 10 ("because New York provides a mechanism for awarding compensation, and CAI failed to seek compensation through this mechanism, CAI's takings claim . . . must be dismissed as unripe").  As discussed in plaintiff's opposition to defendants' motion to dismiss, however, District of Columbia law makes no inverse condemnation procedure available to plaintiff here (see Plaintiff's Opposition to Motion to Dismiss, at 22-24).  Consequently, plaintiff's takings count is ripe, and *Citizens Accord* is inapposite.  *See Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985); *District Intown Properties Ltd. Partnership v. District of Columbia*, 23 F. Supp.2d 30, 35 (D.D.C. 1998) ("District law does not provide a procedure to compensate plaintiffs for denial of their building permit applications.  Their claim that such denial amounts to an unconstitutional taking is thus ripe for review in this forum").

---

*Gagliardi*, the respective plaintiffs alleged due process violations, and did not allege any constitutional takings. *Leland*, 80 Fed. Appx. at 136 ("Plaintiffs have failed to adduce evidence that could support either a procedural or substantive due process claim"); *Gagliardi*, 18 F.3d at 189 (plaintiffs allege deprivations "of their constitutional rights to substantive and procedural due process, equal protection and free speech").

Defendants' reliance on *Roth v. King*, 449 F.3d 1272 (DC Cir. 2006), is also unavailing. In *Roth*, the plaintiffs' claims were dismissed because they failed to show a legitimate property interest in being selected among attorneys eligible to receive compensation under the Criminal Justice Act in juvenile delinquency cases, because the selection of attorneys was a discretionary function of the Superior Court. *Id.* at 1285. Unlike the plaintiff-attorneys in *Roth*, the Foggy Bottom Association's members have clear and substantial property interests in their homes and rental property. The plaintiffs in *Roth* further brought a due process claim, which was rejected by the court. *Id.* at 1284.

The District's contention that plaintiff has no constitutional interest in the enforcement of zoning laws is therefore misplaced. The absence of any precedent to support defendants' constitutional argument highlights the tenuous nature of defendants' position. Plaintiff's alleged lack of a due process interest in the District's enforcement of the zoning laws is irrelevant to plaintiff's takings claim. The FAC alleges a takings, not a due process violation. Further, contrary to defendants' contention, courts have previously found the government's failure to act in a given situation to constitute a regulatory taking. *See, e.g., United Nuclear Corp. v. United States*, 912 F.2d 1432, 1433 (Fed. Cir. 1990) (the government's refusal to issue a mining permit to plaintiff in the absence of Indian tribal approval constituted a regulatory taking); *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362-67 (Fed. Cir. 1998) (the government's denial of drilling permits to plaintiff in the absence of obtaining right-of-way easements from Indian tribe constituted a regulatory taking); *NRG Co. v. United States*, 24 Cl. Ct. 51, 52 (Ct. Fed. Cl. 1991) (finding a regulatory taking when the government canceled mineral prospecting permits issued to plaintiff on Indian lands).

The District's contention that plaintiff has no constitutional interest in the District's enforcement of the zoning laws is also disingenuous in light of the District's promulgation of DC ST. § 6.641.09. This statute specifically grants plaintiff standing to seek injunctive and monetary relief for GW's violations of the District's zoning laws. The District completely fails to recognize the significance of this statute, and instead focuses its efforts on attempting to deprive plaintiff of federal jurisdiction in order to avoid reaching the merits of plaintiff's claims under DC ST. § 6.641.09.

## CONCLUSION

For the above reasons, plaintiff respectfully requests the Court to deny defendants' Motion to Dismiss the First Amended Complaint.

Respectfully submitted,

Dated: July 24, 2006

/s/ William Bode
William H. Bode (Bar No. 113308)
Peter Grenier (Bar No. 418570)
Stefan Shaibani (Bar No. 490024)
BODE & GRENIER, LLP
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, DC 20036
Tel: (202) 862-4300
Fax: (202) 828-4130

*Attorneys for Foggy Bottom Ass'n*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2006, I electronically filed "PLAINTIFF'S

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED

COMPLAINT," and that service was thus effected upon defendants' counsel in accordance with

Local Civil Rule 5.4(d).

<u>/s/ William Bode</u>

18