UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
FOGGY BOTTOM ASSOCIATION,           )
                                    )
       Plaintiff,                )
   v.                               )
                                    )    Civil Action No. 06-0746
DISTRICT OF COLUMBIA OFFICE OF      )
PLANNING, et al.,                   )
                                    )
       Defendants.               )
                                    )
_____ )

OPINION

       This matter is before the Court on defendants' motion to dismiss the first amended complaint for failure to state a claim.[1] Plaintiff's action arises out of George Washington University's ("GWU") alleged violation of a final order, dated January 23, 2002, from the District of Columbia Board of Zoning Adjustment ("BZA") and GWU's February 16, 2006 submission of "an application to the District of Columbia Zoning Commission for first stage

---

[1] After defendant filed its motion to dismiss, plaintiff filed a motion for leave to amend its complaint, which defendant opposed. The Court indicated at the June 13, 2006 status conference that the plaintiff would be permitted to file the amended complaint, and the parties agreed that the motion to dismiss, opposition and reply previously filed sufficed to state their respective positions, without the need for supplemental briefing, respecting the appropriateness of dismissing the amended complaint. This Court granted plaintiff's motion for leave to amend the complaint on June 28, 2006.

       On July 13, 2006, despite their representations at the June 13, 2006 status conference, defendants filed a motion to dismiss the first amended complaint, raising additional legal arguments. Plaintiff filed an opposition on July 24, 2006 and defendants filed a reply on July 25, 2006. These filings incorporate by reference the previous motion to dismiss, opposition, and reply. The Court treats all of these filings as part of a consolidated motion to dismiss the first amended complaint.

review and approval of a planned unit development and zoning map amendment for the Foggy Bottom Campus" and "the Foggy Bottom Campus Plan: 2006-2025." Amended Complaint ("Am. Compl.") ¶ 1.

## I.  BACKGROUND

Over the past two decades GWU has expanded dramatically its presence in the Foggy Bottom area. Am. Compl. ¶ 21. In a report dated April 21, 2000, the District of Columbia Office of Planning found that "if the University continues to purchase land outside the campus plan boundaries and the number of students living in the small, constrained Foggy Bottom community continues to increase, the residential community will reach a 'tipping point' where the Foggy Bottom community simply transforms into a 'University area.'" Am. Compl. ¶ 22. Acknowledging these concerns, the BZA placed several limitations in its January 23, 2002 Corrected Final Order on remand ("Final Order") on GWU's 2000-2010 campus plan. Am. Compl. ¶ 35. Several of the conditions in that Final Order are relevant to plaintiff's claims here.

The first is Condition 9, which required that the University provide housing on-campus or outside of Foggy Bottom for 70% (5,600) of the first 8,000 undergraduate students, plus one on-campus or non-Foggy Bottom bed for every full-time undergraduate student over 8,000. Am. Compl. ¶ 38. After August 31, 2006, the 5,600 beds were to be entirely located on campus. Id. The Final Order prohibited the issuance of any new special exceptions and permits to GWU if it was not in compliance with Condition 9. Am. Compl. ¶ 39. GWU challenged the constitutionality of the special exception condition in both the D.C. Circuit and the District of Columbia Court of Appeals shortly after the BZA's Final Order, but both courts rejected GWU's

2

claims. Am. Compl. ¶ 40; see George Washington Univ. v. District of Columbia, 318 F.3d 203 (D.C. Cir. 2003); George Washington Univ. v. District of Columbia Board of Zoning Adjustment, 831 A.2d 921 (D.C. 2003).

The Final Order, in Condition 8, also placed caps on student enrollment and the employment of faculty and staff at GWU. Am. Compl. ¶ 41. Student enrollment was not to exceed 20,000, and the number of full-time employees was not to exceed 1,550 faculty members and 9,000 staff members. Id. In addition, the BZA directed GWU to require all full-time freshman and sophomore students to reside in University housing located within the campus boundary and to provide at least 2,800 off-street parking spaces within the campus boundary. Am. Compl. ¶¶ 43, 44.

Four years after the BZA's order, on February 16, 2006, GWU submitted "an application to the District of Columbia Zoning Commission for first stage review and approval of a planned unit development and zoning map amendment for the Foggy Bottom Campus" in conjunction with "the Foggy Bottom Campus Plan: 2006-2025." Am. Compl. ¶ 70. GWU asked the BZA for consolidated review and approval of significant zoning amendments and university use of 7,346,577 square feet of floor area, compared to the 5,613,986 square feet approved in the existing Campus Plan in Foggy Bottom. Id. This application excluded Squares 54 and 80 of the campus area, which are the subject of separate consolidated planned unit development and rezoning application. Am. Compl. ¶ 72. When it submitted this application, GWU allegedly was, and continues to be, in violation of several conditions in the BZA Final Order. Am. Compl. ¶¶ 47-69. Furthermore, according to plaintiff, GWU's application and new campus plan seek to substantially alter the residential character of Foggy Bottom. Am. Compl. ¶ 75.

Shortly after the submission of its application, on March 23, 2006, GWU announced that it would be partnering with the District of Columbia Public Schools to purchase a piece of property, known as the School Without Walls, adjacent to a GWU residence hall on Square 80.  Am. Compl. ¶¶ 81-82.  GWU intends to erect a new structure on the parcel as well as modernize and expand the remaining structures of the School Without Walls.  Id.  GWU excluded these plans from its February 16, 2006 application to the District of Columbia Zoning Commission.  Am. Compl. ¶ 83.

## II.  DISCUSSION

The Amended Complaint raises one federal and four state law claims, all generally related to plaintiff's allegation that GWU's violation of the BZA Final Order and its actions in the Foggy Bottom area are causing increased noise and traffic and altering the character of the neighborhood.  Plaintiff's federal claim is that the District's failure to enforce zoning regulations and the conditions in GWU's current campus plan is unconstitutional under the Takings Clause of the Fifth Amendment to the United States Constitution.  Plaintiff's state law claims, which are all related to either GWU's alleged violations of the January 23, 2002 BZA Final Order or GWU's February 16, 2006 application, arise under various provisions of the District of Columbia Code and Municipal Regulations.  See D.C. CODE §§ 6-641.09, 8-109.03; 11 D.C. CODE MUN. REGS. §§ 210.2, 210.4, 507.3.  Defendants have moved to dismiss all five counts for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Standard of Review

On a motion to dismiss for failure to state a claim, the Court must assume the truth of the facts alleged in the complaint, and may grant the motion only if it appears beyond doubt that the complainant will be unable to prove any set of facts that would justify relief. Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint is construed liberally in plaintiff's favor, and the Court must grant plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); accord Andrx Pharms. v. Biovail Corp. Int'l, 256 F.3d 799, 805 (D.C. Cir. 2001). Nonetheless, the Court need not accept factual inferences suggested by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the complainant's legal conclusions. See Western Associates, Ltd. v. Market Square Associates, 235 F.3d 629, 634 (D.C. Cir. 2001); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d at 1276.

### B. *Non Sui Juris*

As a preliminary matter, defendants assert that certain parties named in this suit are non sui juris, that is, that they lack the legal capacity to sue or be sued. Specifically, defendants argue, and the Court agrees, that agencies and departments of the District of Columbia government are not amenable to suit. See Community Housing Trust v. Dep't of Consumer and Regulatory Affairs, 257 F. Supp. 2d 208, 217 (D.D.C. 2003) ("The law is clear

that 'agencies and departments within the District of Columbia government are not suable as separate entities.'") (quoting Does I through III v. District of Columbia, 238 F. Supp. 2d 212, 222 (D.D.C. 2002) (citations omitted)). The plaintiff's claims against the District of Columbia Office of Planning, the District of Columbia Zoning Commission, the District of Columbia Department of Health and the District of Columbia Department of Consumer and Regulatory Affairs therefore will be dismissed from this case.

The Mayor of the District of Columbia, Anthony Williams, sued in his official capacity, is a proper defendant, and the suit against Mayor Williams shall be treated as a suit against the District of Columbia. Arnold v. Moore, 980 F. Supp. 28, 36 (D.D.C. 1997) ("It is well settled that if the plaintiff is suing the defendants in their official capacities, the suit is to be treated as a suit against the District of Columbia."). Thus, the Court may proceed to consider the merits of the claims against the District of Columbia itself (a named defendant) and the Mayor of the District of Columbia in his official capacity.

C. Constitutional Takings Claim

Plaintiff claims that it has been subject to a Fifth Amendment taking without just compensation as a result of the District's failure to bring a zoning enforcement action against GWU. Specifically, plaintiff claims that it has been subject to two types of Fifth Amendment regulatory takings: (1) a taking as a result of a permanent physical invasion of its property, otherwise known as a Loretto taking, see Loretto v Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982); and (2) a regulatory taking based on the three factors set forth in Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978). The basis of each claim is that defendants'

failure to enforce BZA's Final Order has reduced plaintiff's property value and dramatically limited plaintiff's ability to utilize its property for its intended purpose – residential occupancy. See Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.") at 18-21. Plaintiff further asserts that GWU's February 2006 application and new campus plan, if approved, would result in further deprivation of its property rights.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." The Supreme Court has articulated four theories of takings claims, two of which the plaintiff proceeds under in this case. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 548 (2005).[2] A Loretto taking occurs when the government's actions cause the owner to suffer a permanent physical invasion of his or her property. See Loretto v Teleprompter Manhattan CATV Corp., 458 U.S. at 435-40 (holding that New York's law requiring landlords to allow television cable companies to install cable facilities in apartment buildings was a permanent physical invasion of property that constituted a taking). In contrast, a taking as set forth in Penn Central Transp. Co. v. New York City, 438 U.S. at 124, is governed by a consideration of three primary factors: (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action." "[T]he Penn Central inquiry turns in large part . . . upon the magnitude of a regulation's economic

---

[2] The two theories of takings articulated in Lingle, but not alleged by the plaintiff are: (1) a taking from government action that completely deprives an owner of all economically beneficial use of her property (Lucas v. South Carolina Coastal Council, 555 U.S. 1003, 1014 (1994)); and (2) a taking from a land-use exaction. Lingle v. Chevron U.S.A., Inc., 544 U.S. at 548.

impact and the degree to which it interferes with legitimate property interests." Lingle v. Chevron U.S.A., Inc., 544 U.S. at 540.

In order to prevail under any type of takings claim, plaintiff must first establish that it had a protectable property interest cognizable under the Fifth Amendment. See Penn Central Transp. Co. v. New York City, 438 U.S. at 125 (explaining that the Takings Clause is not implicated unless the plaintiff demonstrates that it possesses a constitutionally protected property interest); e.spire Communications, Inc. v. New Mexico Pub. Regulation Comm'n, 392 F.3d 1204, 1210 (10th Cir. 2004) (finding that in order to prevail on a takings claim, plaintiff must establish "1) that it had a protectable property interest and 2) that the governmental action is a taking without just compensation").  Plaintiff asserts that its members possess legitimate property interests in their residential properties in Foggy Bottom and in their desire to enjoy the residential use of their property without unlawful interference by the District of Columbia. Am. Compl. ¶¶ 87-88.  It further asserts that the failure of the Zoning Commission and the Office of Planning to enforce their regulations and the Final Order amounts to a regulatory taking of plaintiff's property without just compensation. Am. Compl. ¶ 93.

In assessing this necessary predicate to any takings claim, the District of Columbia Circuit follows the majority approach of the Second, Fourth, Eighth, Tenth, and Eleventh Circuits to determine whether the plaintiff has established a property interest cognizable under the Fifth Amendment in the land-use context. George Washington Univ. v. District of Columbia,

318 F.3d at 207.³  This approach focuses on the structure of the land-use regulatory process and looks to the "degree of discretion to be exercised by state officials in granting or withholding relevant permission."  Id. (citations omitted).  The courts have recognized a variety of methodologies for determining how severely official discretion must be constrained to establish a property interest.  Id.  The D.C. Circuit has adopted the Eighth Circuit's approach, which inquires whether the "statute or regulation places substantial limits on the government's exercise of its licensing discretion," finding a property interest if the agency is so constrained.  Id. (quoting Bituminous Materials v. Rice County, 126 F.3d 1068, 1070 (8th Cir. 1997)); see also Littlefield v. Afton, 785 F.2d 596, 602 (8th Cir. 1986) (asking whether "the City's decision making power is significantly and substantially restricted.")).

The plaintiff has failed to state a claim for a property interest in having the D.C. zoning laws and regulations and the BZA's Final Order enforced against GWU because no "substantial limits" exist that constrain the District of Columbia's discretion in exercising its regulatory power.  George Washington Univ. v. District of Columbia, 318 F.3d at 207 (quoting Bituminous Materials v. Rice County, 126 F.3d at 1070).  The Supreme Court has long recognized that government officials are given broad discretion in determining whether to

---

³   Plaintiff asserts that decisions pertaining to Fifth Amendment substantive due process claims, such as George Washington University v. District of Columbia, are irrelevant to determining whether plaintiff has a property interest for the purposes of a Fifth Amendment takings claim.  This argument is misguided.  A property interest is the same under the Fifth Amendment due process clause as under the Fifth Amendment takings clause.  See Roth v. King, 449 F.3d 1272, 1286 (D.C. Cir. 2006) ("the invalidity of a takings claim follows *a fortiori* from . . . [the] failure to establish any entitlement that would qualify as property under the Due Process Clause.").

undertake enforcement actions. See Heckler v. Chaney, 470 U.S. 821, 831 (1985) ("decision not to prosecute or enforce, whether civil or criminal process, is a decision generally committed to an agency's absolute discretion."). "[T]he determination whether and when to institute enforcement proceedings against a specific individual is a core executive responsibility which may reasonably be viewed as having been committed to agency discretion so as to preclude substantive judicial review." District of Columbia v. Sierra Club, 670 A.2d 354, 360 (D.C. 1996); cf. J.C. & Assocs. v. District of Columbia Bd. of Appeals & Review, 778 A.2d 296, 309 (D.C. 2001) ("[i]n the absence of . . . an express legal entitlement, the decision of the Mayor, or his agent . . . , is not subject to judicial – or, we think, quasi-judicial – oversight."). This Court can find no language in the laws of the District of Columbia that limits this discretion or the power of the Mayor to enforce zoning laws or regulations as he sees fit. See D.C. CODE § 6-641.10 (conferring on the Mayor of the District of Columbia the duty of enforcing zoning regulations). For instance, the D.C. Code does not mandate any particular enforcement action or outcome in a given case. See Leland v. Moran, 80 Fed. Appx. 133, 135 (2d Cir. 2003) (holding that because the law at issue did not mandate any particular enforcement action, it did not confer entitlement to federal due process protections).

Plaintiff nevertheless purports to find such a limitation on the power of the executive in D.C. CODE § 6-641.09, which grants standing to parties specially damaged by certain violations of the zoning laws to seek injunctive relief. Plaintiff argues that this provision somehow demonstrates that plaintiff has a "constitutional interest" in the District's enforcement of its zoning laws. Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Pl.'s Second Opp.") at 17. While plaintiff does not specify what this "constitutional

interest" is, the Court reasonably assumes that plaintiff is referring to a property interest. The legislature's creation of a private right of action, however, does not either create a substantive right not provided by the Constitution or specific statute or substantially limit the discretion of the Mayor to enforce zoning laws and regulations. The existence of this provision in the D.C. Code does not affect the foregoing analysis that in the absence of such limitation no property interest is created.[4] The Court concludes that because the zoning laws of the District of Columbia, including D.C. CODE § 6-641.09, do not place "substantial limits" on the government's discretion, plaintiff has no property interest in having GWU's zoning order enforced. Cf. Penn Central Transp. Co. v. New York City, 438 U.S. at 125-26 (explaining that "zoning laws generally do not affect existing uses or real property").

    The Court notes that although its decision is limited to the allegations in the amended complaint, it would be reluctant to find a property interest in the enforcement of zoning regulations in any case. Finding such an interest would result in the federal courts being "inundated with challenges to local zoning laws," Restifo v. Magill, Civil Action No. 94-7347, 1995 U.S. Dist. LEXIS 17309, at *6-7 (E.D. Pa. 1995), and "it is not the function of federal district courts to serve as zoning appeals boards." Id. at *7 (quoting Scudder v. Town of

---

[4]  Not only does D.C. CODE § 6-641.09 fail to limit the discretion of the District of Columbia to enforce its laws, it appears to grant standing to homeowners or other parties to sue a violator of the zoning law such as an apartment complex or restaurant owner, not to sue the District of Columbia. See Lund v. Watergate Investors Ltd. P'ship, 728 A.2d 77 (D.C. 1999) (plaintiffs, building residents and the building's owner, sued owner of building complex and the manager of the complex parking lot who were in violation of zoning law); President and Dirs. of Georgetown Coll. for Georgetown Univ. v. Diavatis, 470 A.2d 1248 (D.C. 1983) (property owners sought injunction against restaurant that was allegedly in violation of zoning code).

Greendale, 704 F.2d 999, 1003 (7th Cir. 1983) (citations omitted)); see also Sullivan v. Salem, 805 F.2d 81, 82 (2d Cir. 1986) ("federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations by the circuit's many local legislative and administrative agencies.").

        Finally, the Court need not address plaintiff's allegation that if the Zoning Commission approves GWU's February 16, 2006 application the approval would "increase" the taking of its property. Am. Compl. ¶ 95. Since the Court already has found that no property interest has been shown with respect to the lack of enforcement of zoning laws and regulations and the BZA Final Order, and therefore that there could be no taking, the February 16, 2006 application could only be relevant if viewed as a separate taking and not an "increase" in the taking of this non-existent property interest. But the application remains pending; it has not yet been approved and may never be. The issue of whether the possible future approval of GWU's application would constitute a taking therefore is not yet ripe. "A claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985). Accordingly, the Court dismisses plaintiff's Fifth Amendment takings claim.

### D. District of Columbia Claims

        The only question remaining, then, is whether the Court should exercise supplemental jurisdiction over the District of Columbia law claims. The supplemental jurisdiction statute provides that this Court may decline to exercise supplemental jurisdiction over a claim if "the district court

has dismissed all the claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because plaintiff has failed to state a federal claim, the Court will not exercise supplemental jurisdiction over the state law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Again, "it is not the function of federal district courts to serve as zoning appeals boards." Restifo v. Magill, 1995 U.S. Dist. LEXIS 17309, at *7 (citations omitted).

### III.  CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss. Plaintiff's other pending motions will be denied as moot. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 28, 2006